IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | ) ) ) | |
| *Plaintiff*, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | 10-CV-1842-G (JURY DEMANDED) |
| VERIZON COMMUNICATIONS INC., VERIZON FINANCIAL SERVICES, LLC, GTE CORPORATION and JOHN W. DIERCKSEN, | ) ) ) ) ) | ECF |
| *Defendants*. | ) | |

### GTE CORPORATION'S ANSWER, DEFENSES, AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT

Defendant GTE Corporation ("GTE") files this, its Answer, Defenses, and Affirmative Defenses to Plaintiff's Original Complaint (the "Complaint"), and respectfully states as follows:

### I.   ANSWER[1]

#### NATURE OF THE ACTION[2]

1.   GTE admits that Verizon Communications Inc. ("VCI"), through its subsidiaries, provides telecommunications, broadband video, and broadband data services in the United States but denies any remaining allegations contained in the first sentence of Paragraph 1. GTE denies the allegations contained in the second, third, fifth, ninth, tenth, eleventh, and twelfth sentences

---

[1]   GTE expressly reserves the right to amend and/or supplement its Answer, Defenses, and Affirmative Defenses as may be necessary.

[2]   The heading "Nature of the Action," and all other headings or subheadings included in the Complaint, are not allegations and as such, require no response under the Federal Rules of Civil Procedure. Nevertheless, to the extent any response is required, GTE denies any and all allegations included in the headings or subheadings of the Complaint.

of Paragraph 1.  GTE admits that Idearc Inc. ("Idearc") reported on December 31, 2006 that revenue from the print products segment was $2.978 billion (a decline of $169 million from 2005), but denies the remainder of the allegations contained in the fourth sentence of Paragraph 1.  GTE further admits that, as part of VCI's directories business, VCI started an online directory website but denies the remaining allegations contained in the sixth sentence of Paragraph 1.  GTE admits that Idearc reported on December 31, 2006 that revenue from its internet segment was $230 million and that revenue from the print products segment was $2.978 billion, but denies the remaining allegations contained in the seventh sentence of Paragraph 1.  GTE admits that VCI (and later Idearc) faced competition in the print products and internet directory businesses but denies the remaining allegations contained in the eighth sentence of Paragraph 1.  GTE denies any remaining allegations contained in Paragraph 1.

2.  GTE admits that VCI participated in a spin-off transaction (the "Spin-Off") through which VCI's domestic print and online directories business became a stand-alone company, Idearc, but denies the remaining allegations contained in the first sentence of Paragraph 2.  GTE admits the allegations contained in the second and fourth sentences of Paragraph 2.  GTE denies the allegations contained in the third sentence of Paragraph 2.  GTE admits that, as part of the Spin-Off, the following occurred:  (a) Idearc transferred approximately $2.5 billion in cash to VCI's wholly owned subsidiary, Verizon Financial Services LLC ("VFS"), and (b) Idearc incurred approximately $9 billion of debt, but denies the remaining allegations contained in the fifth sentence of Paragraph 2.  GTE further admits that Idearc reported, on December 31, 2006, that Idearc's balance sheet reflected that its liabilities exceeded the net book value of its assets by approximately $9 billion but denies that this is a reflection of Idearc's real financial condition and denies the remaining allegations contained in the sixth

sentence of Paragraph 2.  GTE admits that, on March 31, 2009, Idearc and its subsidiaries filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") but denies the remaining allegations contained in the seventh sentence of Paragraph 2.  GTE denies any remaining allegations contained in Paragraph 2.

3. GTE admits that the authorization of the Idearc board of directors was required to complete the Spin-Off, but denies the remaining allegations contained in the first sentence of Paragraph 3.  GTE denies the allegations contained in the second, sixth, seventh, and eighth sentences of Paragraph 3.  GTE admits that John Diercksen ("Diercksen") had the title of "Executive Vice President – Strategy, Development, and Planning," for VCI in November 2006, but denies any remaining allegations contained in the third sentence of Paragraph 3.  GTE admits that Diercksen participated in the planning and execution of the Spin-Off but denies any remaining allegations contained in the fourth sentence of Paragraph 3.  GTE also admits that Diercksen was the sole board member of Idearc until November 16, 2006, but denies the remaining allegations contained in the fifth sentence of Paragraph 3.  The ninth sentence of Paragraph 3 purports to state a legal conclusion to which no answer is necessary.  To the extent a response is required, GTE denies the allegations contained in sentence 9.  GTE denies any remaining allegations contained in Paragraph 3.

4. GTE admits the allegations contained in the first sentence of Paragraph 4.  The *First Amended Plan of Reorganization of Idearc Inc., et al., Debtors* (the "Plan") speaks for itself.  GTE denies all remaining allegations contained in the second sentence of Paragraph 4.  GTE is without knowledge or information sufficient to form a belief as to the truth of, and thus denies, the allegations contained in the third sentence of Paragraph 4.

5. GTE denies the allegations contained in Paragraph 5.

6. GTE denies the allegations contained in Paragraph 6.

## JURISDICTION & VENUE

7. Paragraph 7 purports to state a legal conclusion to which no answer is necessary.

8. Paragraph 8 purports to state a legal conclusion to which no answer is necessary.

## THE PARTIES

9. GTE is without knowledge or information sufficient to form a belief as to the truth of, and thus denies, the allegations contained in the first, second, and fourth sentences of Paragraph 9.  GTE admits that U.S. Bank National Association is the Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust (the "Trust"), but denies any remaining allegations contained in the third sentence of Paragraph 9.

10. GTE admits that VCI is a Delaware corporation with its principal executive offices at 140 West Street, New York, New York 10007, but denies any remaining allegations contained in the first sentence of Paragraph 10.  GTE admits the allegations contained in the second and third sentences of Paragraph 10.

11. GTE admits the allegations contained in the first and second sentences of Paragraph 11.  The third sentence of Paragraph 11 purports to state a legal conclusion to which no answer is necessary, but, to the extent a response is required, GTE admits the allegations contained in the third sentence of Paragraph 11.  GTE admits that the registered agent for VFS is CT Corporation System, 1209 Orange Street, Wilmington, Delaware 19801, but denies any remaining allegations contained in the fourth sentence of Paragraph 11.

12. GTE admits the allegations contained in Paragraph 12.

13. GTE admits the allegations contained in Paragraph 13.

**FURTHER FACTUAL BACKGROUND**

14. GTE admits that, in October 2006, VCI's board of directors approved the Spin-Off but denies the remaining allegations contained in the first sentence of Paragraph 14. GTE denies the allegations contained in the second and third sentences of Paragraph 14.

15. GTE admits that VCI divested its interest in Hawaiian Telecom, and transferred its Northern New England operations to FairPoint Communications, Inc, but denies the remaining allegations contained in the first, second, and third sentences of Paragraph 15. GTE admits that by December 2008, Hawaiian Telecom and FairPoint Communications, Inc. had filed petitions for relief under chapter 11 of the Bankruptcy Code, but denies any remaining allegations contained in the fourth sentence of Paragraph 15.

16. GTE denies the allegations contained in Paragraph 16.

17. GTE denies the allegations contained in Paragraph 17.

18. GTE admits that, on November 17, 2006, VCI transferred to Idearc all of its ownership interest in Idearc Information Services LLC ("IIS") and other assets, liabilities, businesses, and employees primarily related to VCI's domestic print and online directories business and that Idearc: (i) issued to VCI 145,851,861 shares of Idearc's common stock, (ii) issued to VCI two unsecured notes in equal amounts totaling $2.850 billion in debt (the "Unsecured Notes"), (iii) became indebted to VCI in the amount of $4.3 billion pursuant to the Credit Agreement (the "Tranche B Facility"), and (iv) transferred to VFS $2,441,532,374.71 in cash, but denies the remaining allegations contained in the first sentence of Paragraph 18. GTE further admits that, on November 17, 2006, VCI distributed the 145,851,861 shares of Idearc common stock to VCI's shareholders but denies the remaining allegations contained in the second sentence of Paragraph 18. GTE admits that, following the Spin-Off, VCI exchanged with its debt holders the Unsecured Notes and the $4.3 billion Tranche B Facility for outstanding VCI

debt and that its outstanding indebtedness was reduced by approximately $7.1 billion, but denies any remaining allegations contained in the third sentence of Paragraph 18.

19.  GTE incorporates by reference its response to Paragraph 18 in response to Paragraph 19 and denies any remaining allegations contained in Paragraph 19.

20.  GTE admits that VCI transferred to Idearc all of its ownership interest in IIS and other assets, liabilities, businesses, and employees primarily related to VCI's domestic print and online directories business, but denies the remaining allegations contained in the first sentence of Paragraph 20.  GTE also admits that VCI and/or certain of its subsidiaries entered into agreements with Idearc, or its subsidiaries, including, but not limited to, a publishing agreement, a non-competition agreement, a branding agreement, a billing and collection agreement, a listing license agreement, an intellectual property agreement, a tax sharing agreement, an employee matters agreement, and a transition services agreement, but denies the remaining allegations contained in the second sentence of Paragraph 20.

21.  GTE admits that Diercksen, other officers of VCI, and others participated in the planning and execution of the Spin-Off but denies the remaining allegations contained in the first sentence of Paragraph 21.  GTE also admits that Diercksen resigned as director of Idearc on November 16, 2006 and continued his employment with VCI following the Spin-Off, but denies the remaining allegations contained in the second sentence of Paragraph 21.

22.  GTE denies the allegations contained in the first sentence of Paragraph 22.  GTE is without knowledge or information sufficient to form a belief as to the truth of, and thus denies, the allegations contained in the second and third sentences of Paragraph 22.

23.  GTE denies the allegations contained in Paragraph 23.

24.     GTE admits that the Unsecured Notes and the Tranche B Facility required Idearc to pay interest, but denies the remaining allegations contained in the first sentence of Paragraph 24.  GTE denies the allegations contained in the second and fifth sentences of Paragraph 24.  GTE admits that, following the Spin-Off, VCI exchanged with its debt holders the Unsecured Notes and the $4.3 billion Tranche B Facility for outstanding VCI debt, and VCI's indebtedness was reduced by approximately $7.1 billion, but denies the remaining allegations contained in the third sentence of Paragraph 24.  GTE is without knowledge or information sufficient to form a belief as to the truth of, and thus denies, the allegations contained in the fourth sentence of Paragraph 24.

25.     GTE admits that, on March 31, 2009, Idearc and its subsidiaries filed petitions for relief under chapter 11 of the Bankruptcy Code, but denies any remaining allegations contained in Paragraph 25.

26.     GTE admits that on May 7, 2009, an attorney representing Idearc was recorded as stating: "It's simply the company, when this spin occurred two and a half years ago it was saddled with too much debt.  And that became a problem that the company recognized proactively and very aggressively and moved to remedy in the context of filing this Chapter 11 case," but denies all remaining allegations contained in Paragraph 26.

27.     GTE admits that, on November 17, 2006, VCI transferred to Idearc all of its ownership interest in IIS and other assets, liabilities, businesses, and employees primarily related to VCI's domestic print and online directories business and that Idearc:  (i) issued to VCI 145,851,861 shares of Idearc's common stock, (ii) issued to VCI the Unsecured Notes, (iii) became indebted to VCI for the Tranche B Facility, and (iv) transferred to VFS

$2,441,532,374.71 in cash, but denies the remaining allegations contained in the first sentence of Paragraph 27. GTE also admits that VCI's 2006 Form 10-K includes the statement:

> On November 17, 2006 we completed the spin-off of Idearc to shareowners of Verizon. Verizon distributed a dividend of one share of Idearc common stock for every 20 shares of Verizon common stock. Cash was paid for fractional shares. The distribution of Idearc common stock is considered a tax free transaction for us and for our shareowners, except for the cash payments for fractional shares which are generally taxable. Idearc now owns what was the Verizon domestic print and Internet yellow pages directories publishing operations, which had been the principal component of our Information Services segment. This transaction resulted in an increase of nearly $9 billion in shareowners' equity, as well as a reduction of total debt by more than $7 billion and we received approximately $2 billion in cash.

GTE denies any remaining allegations contained in Paragraph 27.

28.     GTE admits that, on March 31, 2009, Idearc and its subsidiaries filed petitions for relief under chapter 11 of the Bankruptcy Code and, subsequently, the Plan, but denies any remaining allegations contained in the first sentence of Paragraph 28. GTE admits the allegations contained in the second sentence of Paragraph 28. GTE denies the allegations contained in the third sentence of Paragraph 28.

29.     GTE admits that the Trust was created pursuant to the Plan, but states that the Plan is the best evidence of its terms, and therefore denies the remaining allegations contained in the first sentence of Paragraph 29 and the allegations contained in the second sentence of Paragraph 29.

30.     Paragraph 30 purports to state a legal conclusion to which no answer is necessary. To the extent a response is required, GTE admits that the Plan provides the Trustee is "designated as the Debtors' and the Estates' representative and the successor in interest to the Debtors and the Estates for all purposes with respect to all Litigation Trust Rights, including,

without limitation, the commencement, prosecution, settlement and collection thereof," but denies the remaining allegations contained in Paragraph 30.

31. Paragraph 31 purports to state a legal conclusion to which no answer is necessary. To the extent a response is required, GTE denies the allegations contained in Paragraph 31.

## PURPORTED CAUSES OF ACTION

### COUNT 1

32. In response to Paragraph 32, GTE incorporates its responses to Paragraphs 1 through 31.

33. Paragraph 33 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 33.

34. Paragraph 34 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 34.

35. Paragraph 35 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 35.

36. Paragraph 36 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 36.

37. Paragraph 37 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 37.

38. Paragraph 38 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 38.

### COUNT 2

39. In response to Paragraph 39, GTE incorporates its responses to Paragraphs 1 to 38.

40. Paragraph 40 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 40.

41. Paragraph 41 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 41.

42. Paragraph 42 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 42.

43. Paragraph 43 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 43.

### COUNT 3

44. In response to Paragraph 44, GTE incorporates its responses to Paragraphs 1 to 43.

45. Paragraph 45 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 45.

46. Paragraph 46 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations and relief requested in Paragraph 46.

47. Paragraph 47 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations and relief requested in Paragraph 47.

## COUNT 4

48. In response to Paragraph 48, GTE incorporates its responses to Paragraphs 1 to 47.

49. Paragraph 49 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 49.

## COUNT 5

50. In response to Paragraph 50, GTE incorporates its responses to Paragraphs 1 to 49.

51. Paragraph 51 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 51.

52. Paragraph 52 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 52.

53. Paragraph 53 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 53.

54.     Paragraph 54 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 54.

55.     Paragraph 55 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 55.

56.     Paragraph 56 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 56.

57.     Paragraph 57 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 57.

58.     Paragraph 58 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 58.

59.     Paragraph 59 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 59.

## COUNT 6

60.     In response to Paragraph 60, GTE incorporates its responses to Paragraphs 1 to 59.

61.     GTE admits that, on November 16, 2006, IIS, one of the debtor subsidiaries of Idearc, distributed to GTE all right, title, and interest in (i) all of IIS's assets, including the outstanding stock held by IIS of Verizon International Holdings, Verizon GmbH and Verizon

International Telecom Services, IIS's interest in GTE Directories (B) Sdn. Bhd., and any remaining assets or liabilities held by IIS in TSI, any cash held by IIS, and all of IIS's rights with respect to any debt owed to it by VFS, other than the outstanding common stock of Idearc Media Corp. and License Application Corporation and any other Spinco Assets held by IIS ("<u>Contributed Assets</u>") and (ii) all of IIS's liabilities other than any Spinco Liabilities (the "<u>Assigned Liabilities</u>"), but denies the remaining allegations contained in the first sentence of Paragraph 61.  GTE denies the allegations contained in the second sentence of Paragraph 61.

62. GTE admits that IIS guaranteed Idearc's borrowings under the Credit Agreement but denies any remaining allegations contained in Paragraph 62.

63. GTE denies the allegations contained in Paragraph 63.

64. GTE denies the allegations contained in Paragraph 64.

65. GTE denies the allegations contained in Paragraph 65.

66. GTE denies the allegations contained in Paragraph 66.

67. GTE denies the allegations contained in Paragraph 67.

68. Paragraph 68 purports to state a legal conclusion to which no answer is necessary. To the extent a response is required, GTE is without knowledge or information sufficient to form a belief as to the truth of, and thus denies, the allegations contained in Paragraph 68.

69. Paragraph 69 does not contain allegations for which a response is required.  To the extent a response is required, GTE denies the allegations and relief requested in Paragraph 69.

## COUNT 7

70. In response to Paragraph 70, GTE incorporates its responses to Paragraphs 1 to 69.

71. Paragraph 71 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 71.

72. Paragraph 72 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 72.

73. Paragraph 73 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 73.

74. Paragraph 74 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 74.

75. Paragraph 75 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 75.

76. Paragraph 76 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 76.

## COUNT 8

77. In response to Paragraph 77, GTE incorporates its responses to Paragraphs 1 to 76.

78. Paragraph 78 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 78.

79.     Paragraph 79 contains allegations not directed toward GTE and thus no response is required. To the extent a response is required, GTE denies the allegations contained in Paragraph 79.

### ATTORNEY'S FEES

This is not an allegation for which a response is required. To the extent a response is required, GTE denies the relief requested.

### JURY TRIAL DEMAND

80.     Paragraph 80 does not contain allegations for which a response is required. To the extent a response is required, GTE denies the allegations and relief requested in Paragraph 80.

### PRAYER

GTE denies that Plaintiff is entitled to any of the relief requested.

## II.   DEFENSES AND AFFIRMATIVE DEFENSES

GTE asserts the following defenses and affirmative defenses and reserves the right to amend this Answer to assert other and further defenses and/or affirmative defenses when and if, in the course of its investigation, discovery, or preparation for trial, it becomes appropriate. By designating these matters "defenses," GTE does not intend to suggest either that Plaintiff does not bear the burden of proof as to such matters or that such matters are not elements of Plaintiff's *prima facie* case against GTE.

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred, in whole or in part, by applicable statute(s) of limitation.

3.     Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

4. GTE is entitled to indemnification from Idearc Inc., Idearc Information Services LLC, and/or Idearc Media Corp. for the damages sought in the Complaint and asserts all rights of recoupment and setoff pursuant to 11 U.S.C. § 553 and other applicable law.

5. Plaintiff's claims are barred, in whole or in part, by the failure to mitigate damages, if any, of Plaintiff and its predecessors in interest.

6. Plaintiff's claims are barred, in whole or in part, because GTE took any property transferred or obligation incurred (a) in good faith and for value, and/or (b) in good faith and for reasonably equivalent value, and/or (c) for fair consideration and without knowledge of any fraud.

7. Plaintiff's claims are barred, in whole or in part, because GTE acted in good faith and is entitled to retain any interest transferred or may enforce any obligation incurred, or may reduce any obligation to Plaintiff, as the case may be, to the extent that GTE gave value to Idearc Inc., Idearc Information Services LLC, and/or Idearc Media Corp. in exchange for the transfer.

8. Plaintiff's claims are barred, in whole or in part, because GTE acted without actual fraudulent intent and is entitled to retain the property transferred to the extent of the value provided to the transferor.

9. Plaintiff's claims are barred, in whole or part, because GTE took for value, in good faith, and without knowledge of the alleged voidability of the transfer.

10. Any transfer to GTE from Idearc Inc., Idearc Information Services LLC, and/or Idearc Media Corp. was part of a single integrated transaction and/or was in exchange for reasonably equivalent value.

11.	Any transfer to GTE from Idearc Inc., Idearc Information Services LLC, and/or Idearc Media Corp. was part of a single integrated transaction and/or was in exchange for fair consideration.

12.	Any recovery against GTE is limited by the single satisfaction rule in 11 U.S.C. § 550(d).

13.	Plaintiff's claims are barred, in whole or in part, to the extent the alleged transfers were not made to, on behalf of, or for the benefit of GTE.

14.	Plaintiff's claims are barred, in whole or part, by 11 U.S.C. § 546(e).

15.	Plaintiff's claims are barred, in whole or part, to the extent Idearc Inc., Idearc Information Services LLC, or Idearc Media Corp. did not have creditors holding unsecured claims.

16.	Plaintiff's claims are barred, in whole or part, to the extent Idearc Inc., Idearc Information Services LLC, or Idearc Media Corp. did not have creditors holding unsecured claims prior to the time of the challenged transfers and who still held such claims at the time of the bankruptcy filings.

17.	Plaintiff lacks standing as to one or more of its claims.

18.	Idearc Inc., Idearc Information Services LLC, and/or Idearc Media Corp. knowingly and intentionally waived their right to a trial by jury.

19.	Plaintiff's claims are barred, in whole or part, because GTE at all times acted in good faith, with reasonable care and diligence.

20.	Plaintiff's claims are barred, in whole or in part, to the extent that any of the alleged transfer(s) were authorized by law.

21. Plaintiff's claims are barred, in whole or part, to the extent the alleged injuries of Plaintiff or its predecessors in interest were not caused, actually or proximately, or contributed to by any acts on the part of GTE.

22. Plaintiff's claims are barred, in whole or in part, based on the doctrine of subsequent intervening cause.

23. Plaintiff's claims are barred, in whole or in part, by the business judgment rule.

24. Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands and/or *in pari delicto*.

25. Plaintiff's claims are barred, in whole or in part, by Plaintiff's, Idearc Inc.'s, Idearc Information Services LLC's, and/or Idearc Media Corp.'s own comparative fault or wrongdoing and GTE is entitled to have any alleged damages proportionately reduced.

26. Plaintiff's claims are barred because Idearc Inc., Idearc Information Services LLC, and Idearc Media Corp. were solvent at the time of the Spin-Off.

27. Plaintiff's claims are barred because Diercksen owed no fiduciary duties to Idearc Inc. or its creditors.

28. Plaintiff's claims are barred, in whole or in part, by the doctrines of accord and satisfaction, release, and/or payment.

29. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

## PRAYER FOR RELIEF

WHEREFORE, GTE respectfully requests that the Court dismiss Plaintiff's claims against it; enter a judgment that Plaintiff takes nothing; award costs, disbursements, and attorneys' fees to GTE; and grant GTE all such other and further relief, whether in law or equity, to which it is entitled and that the Court deems just and proper.

Dated: Dallas, Texas
November 22, 2010

                Respectfully submitted,

/s/ T. Ray Guy
T. Ray Guy
Texas Bar No. 08648500
*ray.guy@weil.com*
Paige Holden Montgomery
Texas Bar No. 24037131
*paige.montgomery@weil.com*
Benjamin L. Stewart
Texas Bar No. 24046917
*benjamin.stewart@weil.com*
WEIL, GOTSHAL & MANGES, LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone:    (214) 746-7700
Facsimile:    (214) 746-7777

John B. Strasburger
Texas Bar No. 19358335
*john.strasburger@weil.com*
Alfredo R. Pérez
Texas Bar No. 15776275
*alfredo.perez@weil.com*
WEIL, GOTSHAL & MANGES, LLP
700 Louisiana, Suite 1600
Houston, Texas  77002
Telephone:    (713) 546-5000
Facsimile:    (713) 224-9511

*Attorneys for Defendants Verizon Communications Inc., Verizon Financial Services LLC, GTE Corporation, and John W. Diercksen*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of **GTE CORPORATION'S ANSWER, DEFENSES, AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT** via the Court's CM/ECF system pursuant to the Court's Local Rules this 22nd day of November 2010. All other counsel will be served by United States mail, certified mail/return receipt requested.

| | |
|---|---|
| Werner A. Powers | Nicholas A. Foley |
| *werner.powers@haynesboone.com* | *nfoley@neliganlaw.com* |
| Robin Phelan | Douglas J. Buncher |
| *robin.phelan@haynesboone.com* | *dbuncher@neliganlaw.com* |
| Patrick D. Keating | John D. Gaither |
| *patrick.keating@haynesboone.com* | *jgaither@neliganlaw.com* |
| HAYNES & BOONE, LLP | NELIGAN FOLEY, LLP |
| 2323 Victory Avenue, Suite 700 | 325 N. St. Paul, Suite 3600 |
| Dallas, Texas 75219 | Dallas, Texas 75201 |
| Telephone:  (214) 651-5000 | Telephone:  (214) 840-5300 |
| Facsimile:  (214) 651-5940 | Facsimile:  (214) 840-5301 |

/s/ Paige Holden Montgomery
Paige Holden Montgomery