UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-1842-G |
| VERIZON COMMUNICATIONS INC., *et al.*, | § § § | |
| Defendants. | § § | |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS VERIZON COMMUNICATIONS INC., VERIZON FINANCIAL SERVICES LLC, GTE CORPORATION, AND JOHN W. DIERCKSEN'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**

---

Werner A. Powers
State Bar No. 16218800
Robin Phelan
State Bar No. 15903000
Patrick Keating
State Bar No. 00794074

HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7673
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

Nicholas A. Foley
Texas State Bar No. 07208620
Douglas J. Buncher
Texas State Bar No. 03342700
John D. Gaither
Texas State Bar No. 24055516

NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Telephone:     (214) 840-5300
Telecopier:    (214) 840-5301

**ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION as Litigation Trustee on Behalf of the Idearc Inc. et al. Litigation Trust**

# TABLE OF CONTENTS

I.  NO SECOND BITE OF THE 12(B)(6) APPLE .................................................................. 1

II.  ARGUMENT AND AUTHORITIES ................................................................................ 1

A.  Standard of Review .................................................................................................. 1

B.  Defendants' Motion to Dismiss Fraudulent Transfer Should be Denied ................. 2

1.  The $2.4 Billion Cash Transfer is Part of the Fraudulent Consideration .... 2

2.  The Substance of the Spin-off Resulted In Verizon Receiving
Billions of Dollars from Idearc That Can Be Recovered From Verizon .... 3

a.  Elements of the Spin-off Should not be Viewed in Isolation ......... 4

b.  The Debt and Contractual Obligations Were Transfers of
Property Subject to Avoidance Under Fraudulent Transfer Law ... 6

c.  Idearc's Bankruptcy Plan Does Not Bar the Trust's Fraudulent
Transfer Claims .......................................................................... 10

d.  The Trust Adequately Pled That Contracts are Part of the
Fraudulent Consideration ........................................................... 12

e.  The Trust Can Recover the Value of the Stock Issued
to Verizon ................................................................................... 14

C.  No Basis Exists to Dismiss Plaintiff's Claim for Promoter Liability in
Count Nine of the Amended Complaint ................................................................. 15

1.  Plaintiff Has Standing to Pursue a Promoter Liability Claim ................... 16

2.  Plaintiff's Promoter Liability Claim States a Valid Cause of Action ...... 17

D.  The Trust's Unjust Enrichment Count Should not be Dismissed ........................... 18

1.  The Trust's Unjust Enrichment Count is not Barred by Limitations ........ 18

2.  Contracts Do Not Bar the Trust's Unjust Enrichment Claim
Because They Are Void .............................................................................. 19

3.  The Trust's Unjust Enrichment Claim is not Preempted by the
Bankruptcy Code ....................................................................................... 20

E.  The Trust Adequately Pled Alter Ego .................................................................... 21

      1.     The Amended Complaint details Verizon's Misuse of Idearc in the Spin-off……. ......................................................................................... 21

          a.     Verizon and Idearc Were a Single Economic Unit in the Spin-off ............................................................................. 22

          b.     Verizon used Idearc to Engage in Unjust and Inequitable Conduct ..................................................................... 23

      2.     Verizon's Defense of Substantive Consolidation is Consistent With Alter Ego ........................................................................................... 24

III.    CONCLUSION ............................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acadian Energy Res., LLC v. Carpenter*, 2009 U.S. Dist. LEXIS 121603 (S.D.W.Va. Dec. 31, 2009)................................................................................................2

*Adams v. Montgomery College (Rockville)*, No. DKCO 9 – 2278, 2012 U.S. Dist. LEXIS 3290 (D. Md. Jan. 11, 2012) ...............................................................................19

*ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49 (S.D. Tex. 2007)...........................2, 21, 22, 24

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................................2

*Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971)...........................................16, 17, 18

*Barnhill v. Johnson*, 503 U.S. 393 (1992) ......................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................1

*Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st. Cir. 2000)....................................21

*CompuAdd Corp. v. Texas Instruments, Inc. (In re CompuAdd Corp.)*, 137 F.3d 880 (5th Cir. 1998) ...............................................................................................................4

*Covey v. Commercial National Bank of Peoria* 960 F.2d 657 (7th Cir. 1992)................8

*Diamante v. Solomon & Solomon, P.C.*, Case No. 99-cv-1339, 2001 WL 1217226 (N.D.N.Y. Sep. 18, 2001) ...............................................................................21

*Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245 (11th Cir. 1991)....................25

*Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) .........................................20

*Escuadra v. GeoVera Specialty Ins. Co.*, 739 F. Supp. 2d 967 (E.D. Tex. 2010) ........13

*Fish v. East*, 114 F.2d 177 (10th Cir. 1940) ..................................................................24

*Fisher v. Halliburton*, 2012 WL 90136 (5th Cir. Jan. 12, 2012)...................................20

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ......................................................22

*Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60 (1992) ......................................10

*GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 WL 5173954 (N.D. Tex. Dec. 31, 2009) ...............................................................12

*Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ...................................................................................................................4

*HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995) ............................................5

*Hill v. New Concept Energy (In re Yazoo Pipeline Co., L.P.)*, 448 B.R. 163 (Bankr. S.D. Tex. 2011) ...............................................................................................................5

*Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623 (5th Cir. 2002) .........................21

*In re Asia Global Crossing* 333 B.R. 199 (Bankr. S.D.N.Y. 2005).................................9

*In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988)...............................25

*In re Contemporary Indus. Corp. v. Frost*, 564 F.3d 981 (8th Cir. 2009)......................21

*In re Curry and Sorensen, Inc.*, 57 B.R. 824 (B.A.P. 9th Cir. 1986)............................14

*In re Decker*, 362 F.3d 593 (9th Cir. 2004) ................................................................14

*In re Drexel Burnham Lambert Group Inc.,* 138 B.R. 723 (Bankr. S.D.N.Y. 1992) ...................25

*In re DRW Prop. Co.*, 54 B.R. 489 (Bankr. N.D. Tex. 1985).......................................25

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2008 U.S. Dist. LEXIS 21560 (S.D. Tex. Mar. 19, 2008) .......................................................................................1

*In re FBN Food Services, Inc.* 175 B.R. 671 (Bankr. E.D. Ill. 1994)..............................4

*In re Foxmeyer Corp.,* 290 B.R. (Bankr. D. Del. 2003) ................................................9

*In re Hechinger Inv. Co. of Del.*, 274 B.R. 71 (D. Del. 2002).......................................21

*In re Houston Drywall, Inc.* Adv. No. 06-03415, 2008 Bankr. LEXIS 4060 (Bankr. S.D. Tex. July 10, 2008) .................................................................................................11

*In re M. Fabrikant & Sons, Inc*, 394 B.R (Bankr. S.D.N.Y 2008) .................................12

*In re Macmenamin's Grill Ltd.*, 450 B.R. 414 (Bankr. S.D.N.Y. 2011) ....................5, 9

*In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 617 F. Supp. 2d 700 (S.D. Ohio 2009)..............2

*In re Parmalat Sec. Litig.*, 684 F.Supp.2d 453 (S.D.N.Y. 2010), *aff'd* 423 Fed. App. 73 (2nd Cir. 2011) ...............................................................................................18

*In re Paso Del Norte Oil Co.*, 755 F.2d 421 (5th Cir. 1985) .......................................14

*In re Pitt Penn Holding Co., Inc.*, 2011 WL 4352373 (Bankr. D. Del. Sep. 16, 2011)...........14, 15

*In re Stanton*, 457 B.R. 80 (Bankr. D. Nev. 2011) .......................................................................5

*In re Supplement Spot*, 409 B.R. 187 (Bankr. S.D. Tex. 2009)...................................................10

*In re Tronox, Inc.,* 450 B. R. 432 (S.D.N.Y. 2011) ....................................................................18

*In re Trout*, 609 F.3d 1106 (10th Cir. 2010)...........................................................................4, 6

*In re U.S. Wireless Corp.*, 333 B.R. 688 (Bankr. D. Del. 2005)..................................................20

*In re Verestar, Inc.* 343 B.R. 444 (Bankr. S.D.N.Y 2006) .......................................................7, 8

*Ind. Bell Tel. co. Inc. v. Lovelady*, 2006 WL 485305 (W.D. Tex. Jan. 11, 2006) ........................12

*Janvey v. Alguire*, Case No. 3:09-cv-00724-N [Docket No. 696] at 15 (N.D. Tex. Sep. 6, 2011) .................................................................................................................................19

*Janvey v. Alguire*, No. 3:09–CV–0724–N, 2011 WL 7047035 (N.D. Tex. Sept. 6, 2011) ..........12

*Janvey v. Dem. Senatorial Campaign Comm.*, 793 F. Supp. 2d 825 (N.D. Tex. 2011) ...............18

*Kaliner v. MDC Sys. Corp.*, Civil Action No. 2:09-MC-00005-JD, 2011 U.S. Dist. LEXIS 5377 (E.D. Pa. Jan. 19, 2011) .....................................................................................10

*Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)........................................4

*Martinez v. Bally's Louisiana, Inc.,* 244 F.3d 474 (5th Cir. 2001) ................................................24

*Matter of Compton Corp.,* 831 F.2d 586 (5th Cir.1987)................................................................4

*Maule Indus., Inc. v. Gerstel,* 232 F.2d 294 (5th Cir. 1956)........................................................24

*McCandless v. Furlaud*, 296 U.S. 140, 56 S. Ct. 41 (1935) ..................................................16, 18

*McCullough v. Odeco., Inc.*, No. CIV.A. 90-3868, 1991 WL 99413 (E.D. La. May 30, 1991) ...................................................................................................................................24

*Morrison v. Amway Corp. (In re Morriso*n), 421 B.R. 381 (Bankr. S.D. Tex. 2009) .....................1

*Netjets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008) ..............................22

*Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 344 B.R. 340 (W.D. Pa. 2006) ...............................................................................5

*Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355 (Bankr. S.D.N.Y. 2002)..................................................5

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510 (Bankr. D. Del. 2006) ...............................................................................14

*Orr v. Kinderhill Corp*, 991 F.2d 31 (2d Cir. 1993) ........................................................5

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000) ................................21

*Pub. Inv. Ltd. v. Bandeirante Corp.*, 740 F.2d 1222 (D.C. Cir. 1983) ........................18

*Quilling v. Stark*, 2006 WL 485305 (N.D. Tex. June 19, 2006) ...................................12

*Soviero v. Franklin Nat'l Bank*, 328 F.2d 446 (2d Cir. 1964) .....................................25

*The Liquidation Trust of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537 (D. Del. 2005) .........................................5

*U.S. v. Tabor Court Realty Corp*, 803 F.2d 1288 (3d Cir. 1986) ...................................5

*Union Carbide Corp. v. Montell N.V., et al.*, 944 F.Supp 1119 (S.D.N.Y. 1996) ..................22, 24

*United States v. Golden Acres, Inc.*, 702 F. Supp. 1097 (D. Del. 1988) .......................23

*United States v. Heirs of Boisdoré,* 49 U.S.(8 How.) 113, 12 L.Ed. 1009 (1850) ........................4

*United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ........................................................................................4

*Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill. 2002) ........................................................................................1

*Warfield v. Carnie*, 2007 WL 1112591 (N.D. Tex. 2007) ......................................18, 19

*Weaver v. Kellogg*, 216 B.R. 563 (S.D. Tex. 1997) .....................................................8

*Weaver v. Kellogg*, Civil Action No. H-94-3703, 1997 U.S. Dist. LEXIS 22478 (S.D. Tex. May 22, 1997) ........................................................................11

*West v. Hsu (In re Advanced Modular Power Sys., Inc.)*, 413 B.R. 643 (Bankr. S.D. Tex. 2009) ........................................................................................4

## STATE CASES

*Aurora Petroleum, Inc. v. Cholla Petroleum, Inc.*, 2001 WL 652843 (Tex. App. – Amarillo Feb. 23, 2011, no pet.) ........................................................20

*Cristobal v. Allen*, 2010 WL 2873502 (Tex. App. – Houston [1st Dist.] Jul. 22, 2010, no pet.) ........................................................................................19

*ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867 (Tex. 2010) ........................19

*French v. Moore*, 169 S.W.3d 1 (Tex. App. – Houston [1st Dist.] 2004, no pet.) ........................20

*Geyer v. Ingersoll Publ. Co.,* 621 A.2d 784 (Del.Ch. 1992) ........................................................22

*Gladstone v. Bennett*, 153 A.2d 577 (Del. 1959) ...........................................................................17

*Harco Nat'l Ins. Co. v. Green Farm, Inc*., 1989 WL 110537 , at **4-5 (Del. Ch. 1989) .............23

*Reddy v. MBKS Co., Ltd.*, 945 A.2d 1080 (Del. 2008) .................................................................20

*Roni LLC v. Arfa*, 903 N.Y.S. 2d 352 (N.Y. App. Div.), *aff'd*, 2011 WL 6338906 (2011) ..........17

*SCI Texas Funeral Services, Inc. v. Hijar*, 214 S.W.3d 148 (Tex. App. – El Paso 2007, pet. denied)..............................................................................................................................20

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

11 U.S.C. §§ 105 and 502 ...............................................................................................................11

Bankruptcy Code (b)........................................................................................................................3

Bankruptcy Code § 101(49)............................................................................................................7

Bankruptcy Code § 105 .........................................................................................................4, 10, 21

Bankruptcy Code § 502(d)...............................................................................................................9

Bankruptcy Code § 524 ..................................................................................................................21

Bankruptcy Code § 546(e) .........................................................................................................9, 21

Bankruptcy Code § 547 ....................................................................................................................8

Bankruptcy Code § 550 ...........................................................................................................6, 10, 11

Fed. R. Bankr. P. 3007....................................................................................................................11

FED. R. CIV. P. 8(a)(2)................................................................................................................13, 14

Federal Rule of Civil Procedure 12(g)............................................................................................1

Internal Revenue Code § 355...........................................................................................................7

SECURITIES ACT OF 1933, 15 U.S.C. § 77a, *et seq.* ........................................................................8

## STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

TEX. BUS. & COM. CODE § 24.008(a)(3)(C) .......................................................................... passim

TEX. BUS. & COM. CODE § 24.010(a) (Vernon 2002)....................................................................19

TEX. BUS. CORP. ACT. ANN. Article 8.02 (West Supp.1994).......................................................22

TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (West 2002) ................................................19

## I.      NO SECOND BITE OF THE 12(B)(6) APPLE

The Court may deny the portions of the second motion to dismiss based upon grounds for dismissal Defendants could have raised in the original motion to dismiss filed in November 2010.  The Trust's Original Complaint identified the following items as part of the "Fraudulent Consideration" Idearc transferred to Verizon, but Defendants now belatedly seek dismissal related to these aspects of the fraudulent transfer claims: (1) the $4.3 billion in secured debt and $2.85 billion in unsecured debt and (2) the 145,851,861 shares of stock Idearc issued to Verizon. *Compare Original Compl.* (Doc. 1), ¶¶ 18-19 *with Motion to Dismiss* (Doc. 178), p. 8 & 14-15. Defendants are not entitled to seek dismissal of these aspects of the Trust's claims in a second motion to dismiss.  *See Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (N.D. Ill. 2002) (citing Federal Rule of Civil Procedure 12(g) and holding, "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment . . . Because Smithburg and Walter did not raise before the arguments they make now regarding counts one and two, Smithburg and Walter are precluded from raising these arguments in this their third motion to dismiss."); *see also*, *Morrison v. Amway Corp. (In re Morriso*n), 421 B.R. 381, 386 (Bankr. S.D. Tex. 2009).

## II.     ARGUMENT AND AUTHORITIES

## A.      Standard of Review

"Dismissal under Rule 12(b)(6) is disfavored, and a motion to dismiss under the rule is rarely granted."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2008 U.S. Dist. LEXIS 21560, at *25–26 (S.D. Tex. Mar. 19, 2008).   To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (plausibility requirement satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")  "The complaint need not, however, 'make a case' against a defendant or even 'forecast evidence sufficient to prove an element' of the claim." *Acadian Energy Res., LLC v. Carpenter*, 2009 U.S. Dist. LEXIS 121603, at *12 (S.D.W.Va. Dec. 31, 2009); *see also, e.g.*, *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 617 F. Supp. 2d 700, 717–22 (S.D. Ohio 2009). The Court should accept as true all allegations contained in the plaintiff's complaint, and all reasonable inferences are to be drawn in favor of the Trust's claims.  *See, e.g.*, *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007).

**B.     Defendants' Motion to Dismiss Fraudulent Transfer Should be Denied**

      **1.     The $2.4 Billion Cash Transfer is Part of the Fraudulent Consideration**

As explained more fully in the Trust's filing yesterday, when adding "contractual obligations" to the list of items identified as "Fraudulent Consideration" in paragraph 18 of the Amended Complaint, the Trust inadvertently did not update the parenthetical defining "Fraudulent Consideration" so that it would conform to the amended list of consideration transferred to Verizon (*i.e.* items "(i) – (v)" as opposed to the "(i) – (iv)" that appeared in the Original Complaint).  *Plaintiff's Motion to Conform Definition of Fraudulent Consideration in Plaintiff's Amended Complaint and Brief in Support.*  This is purely a mechanical error in the Amended Complaint that clearly does not indicate the Trust's intent to forgo recovery of the more than $2.4 billion in cash Verizon received during the Spin-off.  That transfer has been at issue in this case from the outset.  *Original Compl.* (Doc. 1), ¶1.

Plaintiff became aware of the error in the text of the Amended Complaint when reviewing footnote 7 of Defendants' second motion to dismiss.  Defendants would not agree to the Plaintiff correcting the Amended Complaint and apparently hope to capitalize upon the inadvertent error in its text.[1]  The Trust, therefore, filed its motion seeking leave to conform the complaint to the intent of the amendment.  The Trust incorporates that filing into this response by reference and asks the Court to construe the Amended Complaint as intended when considering Defendants' motion to dismiss.

> **2.     The Substance of the Spin-off Resulted In Verizon Receiving Billions of Dollars from Idearc That Can Be Recovered From Verizon**

The substance of the Spin-off  transaction is that $7.1 billion was borrowed by Idearc and transferred to Verizon, along with more than $2.4 billion in cash[2] and $4.1 billion in stock – leaving Idearc insolvent.  In denying Defendants' prior motion to dismiss, this Court concluded that the Trust's allegations provided an adequate basis for the fraudulent transfer causes of action.  *Memorandum Opinion* (Doc. 106), p. 13 ("these factual allegations are sufficient to plead a claim of actual fraudulent transfer").  The Defendants now contend that none of these transfers can be recovered from Verizon or VFC and seek to dismiss Counts 1 and 2 of the Amended Complaint.

Defendants' Motion to Dismiss should be denied because (a) the $2.4 billion of cash (the "Cash Transfer"), two unsecured notes totaling $2.85 billion (the "Unsecured Notes"), and the $4.3 billion of Tranche B debt pursuant to a Credit Agreement constituted transfers recoverable from the Defendants under both the Texas Uniform Fraudulent Transfer Statute ("TUFTA") and the Bankruptcy Code, (b) the Unsecured Notes and the Tranche B constituted both the incurrence

---

[1] Correcting the error will not cause prejudice to Defendants because they have known from the outset that the cash Idearc transferred to Verizon is at issue.
[2] Approximately $2 billon of the cash was also borrowed.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                    Page 3

of obligations and transfers of property recoverable from Defendants, (c) even when transfers are not involved in an avoidable fraudulent transaction, remedies can be crafted under both Section 24.008(a)(3)(C) of TUFTA and Section 105 of the Bankruptcy Code to restore the estate where a note, or its equivalent, has been issued to an initial transferee and then transferred by the initial transferee to a third party from whom the Plaintiff cannot obtain recovery and (d) any treatment of the Idearc bondholders and lenders pursuant to the Idearc plan of reorganization does not affect the right of Plaintiff to recover from Defendants since the transfers Plaintiff seeks to avoid are the transfers to Verizon and VFC, not the lenders or the bondholders.

###### a.    Elements of the Spin-off Should not be Viewed in Isolation

The circuitous route structured by Verizon should not result in a reading of a fraudulent transfer statute at odds with its purpose to "restore the estate to the position it would have been in" absent the fraudulent transaction.[3]  To do otherwise would be to allow clever parties to insulate themselves from avoidance actions.[4]  Instead of a debtor borrowing money from a lender and transferring it to the transferee, the transferee could escape liability by requiring the debtor to give the transferee a note, which would then be sold to lenders or other innocent third parties.[5]

Section 105 of the Bankruptcy Code allows the court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.  TUFTA Sections 24.011 and

---

[3] *CompuAdd Corp. v. Texas Instruments, Inc. (In re CompuAdd Corp.)*, 137 F.3d 880, 882 (5th Cir. 1998).  In *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986), the Supreme Court cautions against an overly literal interpretation of the Bankruptcy Code. "'[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Id.* (internal citations omitted) (quoting *United States v. Heirs of Boisdoré*, 49 U.S.(8 How.) 113, 122, 12 L.Ed. 1009 (1850)). The strict language of the Bankruptcy Code does not control, though the statutory language has a "plain" meaning, if the application of that language "will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)"); *West v. Hsu (In re Advanced Modular Power Sys., Inc.)*, 413 B.R. 643 (Bankr. S.D. Tex. 2009); *In re Trout*, 609 F.3d 1106 (10th Cir. 2010). TUFTA § 24.011 applies the principles of equity to avoidable transfers and obligations.

[4] *In re FBN Food Services, Inc.* 175 B.R. 671 (Bankr. E.D. Ill. 1994) (The term "transfer" as used in various bankruptcy statutes has been broad enough to cover indirect transfers and to catch various circuitous arrangements which have the effect of a fraudulent conveyance); *Matter of Compton Corp.,* 831 F.2d 586, 591-92 (5th Cir.1987).

[5] Commercial notes are often sold and traded in the marketplace.

24.008(a)(3)(C) apply principles of equity to fashion "any other relief the circumstances may require." When faced with clever financial transactions courts have often used their equitable jurisdiction to recognize the substance of a transaction rather than adhere to the form of the transaction. Thus, the individual steps of a complicated leveraged buy out, or other financial transaction, are subject to being collapsed so that fraudulent transfer avoidance objectives are obtained.[6] For example, the cause of action of the trustee in *Macmenamin's*, cited by the Defendants, rested on that theory.[7]

If the Court looks through the machinations of the Verizon structure to the practical effect of the transactions involved in the Spin-off, the net result is that (among other things) Idearc effectively borrowed $7.1 billion and transferred it to Verizon. Verizon used the funds to retire $7.1 billion of outstanding Verizon debt. Even if transfers were not involved, where avoidance of an obligation is inadequate to provide complete relief, the provisions of both the Bankruptcy

---

[6] When determining whether a transaction or series of transactions constitute a fraudulent transfer, courts frequently "collapse" multiple related transactions and consider the transactions as an integrated whole to determine their net effect. *See, e.g. Orr v. Kinderhill Corp*, 991 F.2d 31, 35 (2d Cir. 1993) ("Thus, an allegedly fraudulent conveyance must be evaluated in context; where a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications.") (citations and quotation omitted); *U.S. v. Tabor Court Realty Corp*, 803 F.2d 1288 (3d Cir. 1986) (applying collapsing analysis in the context of an LBO); *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995) ("It is well established that multilateral transactions may under appropriate circumstances be 'collapsed' and treated as phases of a single transaction for analysis under the [fraudulent conveyance statutes].");  *The Liquidation Trust of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537, 546 (D. Del. 2005) (when analyzing a transaction for fraudulent transfer purposes that a court should focus "not on the structure of the transaction but the knowledge and intent of the parties involved in the transaction"); *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 344 B.R. 340, 347 (W.D. Pa. 2006) ("It is now widely accepted that multilateral transactions may under appropriate circumstances be 'collapsed' and treated as phases of a single transaction for purposes of applying fraudulent conveyance principles."); *Hill v. New Concept Energy (In re Yazoo Pipeline Co., L.P.)*, 448 B.R. 163, 187 (Bankr. S.D. Tex. 2011) ("[M]ultistep transactions can be collapsed when the steps of the transaction are part of one integrated transaction."); *In re Stanton*, 457 B.R. 80, 91-92 (Bankr. D. Nev. 2011) ("Equitable considerations and fraudulent transfer law have often collapsed transactions when one of the purposes of the interposition of the parties has been to hinder, delay, or defraud the debtor's creditors"). Courts will collapse "a series of transactions into one transaction when it appears that despite the formal structure erected and the labels attached, the segments, in reality, comprise a single integrated scheme." *Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 370 (Bankr. S.D.N.Y. 2002).

[7] *In re Macmenamin's Grill Ltd.*, 450 B.R. 414 (Bankr. S.D.N.Y. 2011). The notes and liens in *Macmenamin's* , viewed in isolation, were issued for reasonably equivalent value (the loan proceeds) but if the transaction was collapsed, and the substance of the leveraged buyout analyzed, it was clear that the funds went to the former shareholders and the debtor received no value.

Code and TUFTA allow the court to craft a remedy to return the estate to its position prior to the avoided transaction.[8]

### b.  The Debt and Contractual Obligations Were Transfers of Property Subject to Avoidance Under Fraudulent Transfer Law

When Verizon transferred its yellow pages business to Idearc in November of 2006 Verizon received from Idearc over $13 billion of value, including the approximately $2.4 billion Cash Transfer, Idearc stock valued by the market at the time at approximately $4.1 billion, $2.85 billion in Unsecured Notes and $4.3 billion of Tranche B debt pursuant to a Credit Agreement. The Tranche B was secured by the assets of Idearc.[9]  Verizon immediately traded the Unsecured Notes and Tranche B to third parties for approximately $7.1 billion of outstanding commercial paper of Verizon (the "Verizon Exchange").[10]  The Unsecured Notes eventually became the bond debt of Idearc and the Tranche B eventually became part of the secured debt of Idearc held by its lenders.[11]

In the event of a fraudulent transfer of property by a debtor to a transferee who then sells the property to an innocent third party for value, the trustee for the debtor cannot recover from the innocent third party, but the value of the property transferred may be recovered by the trustee from the initial transferee pursuant to Section 550 of the Bankruptcy Code and section 24.009 of TUFTA.[12]  However, according to Defendants, if the debtor gives the transferee a note, which is then sold by the transferee for value to an innocent third party, the trustee can avoid the obligations of the note in the hands of the innocent third party, who would be unprotected, but

---

[8] *See infra* §II(B)(2)(c); TUFTA §24.008(a)(3)(C); *In re Trout, supra.*
[9] *Amended Compl.* (Doc. 161), ¶¶50-51, 60-61.
[10] *Amended Compl.* (Doc. 161), ¶18.
[11] *Amended Compl.* (Doc. 161), ¶¶ 21-24.
[12] The Court cannot make a factual determination from the allegations in the Complaint regarding whether the purchasers of the Tranche B or Unsecured Notes were innocent third parties, nor does the Trust know the scienter of all of those third parties.  Section 24.009(b)(2) prohibits recovery against a subsequent transferee which took for value and in good faith or from any subsequent transferee (from that transferee).  Defendants have not alleged that the bondholders or the lenders were not in good faith, which remains an issue to be determined at trial.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO
DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**          Page 6

the trustee cannot recover from the initial transferee.  This would be true, according to Defendants, even if the initial transferee is in bad faith and the transaction was with actual intent to defraud creditors.  Not only does the result posited by Defendants defy logical common sense, it is inconsistent with the language and purpose of TUFTA and the Bankruptcy Code.

Defendants first contend that the $7.1 billion of value that Verizon received in the form of the Unsecured Notes and the Tranche B, that Verizon then effectively traded for $7.1 billion, was not a transfer by Idearc of an interest in property.  Section 24.002 of TUFTA defines the term "transfer" to include every mode, direct or indirect, of departing with an interest in an asset.  In turn, Section 24.002 of TUFTA defines "asset" as property of the debtor.  Section 101(49) of the Bankruptcy Code defines the term "security" to include not only stocks and bonds, but also notes.  The Unsecured Notes and the Tranche B were required to be "securities" for the Spin-off to be tax free under Section 355 of the Internal Revenue Code.  When a company sells its stock, bonds, or notes (securities), property of the company is transferred to the buyer.[13]  In addition, both Section 24.002 of TUFTA and Section 101 (54) of the Bankruptcy Code specifically state that "transfer" includes the creation of a lien.  Since the issuance of the Tranche B, a secured debt, created liens on the assets of Idearc pursuant to the Credit Agreement that governed the Tranche B, a transfer clearly took place.[14]  Courts have recognized that execution of notes can also constitute transfers of an interest in property.  In *In re Verestar, Inc.* 343 B.R. 444 (Bankr. S.D.N.Y 2006) the court stated "Execution of the Note constitutes a transfer subject to avoidance

---

[13] *In re Pitt Penn Holding Company, Inc.* 2011 Bankr. LEXIS 3560 (Bankr. D. Del. 2011); *Global Crossing Estate Representative v Gary Winnick, et. al.*., 2006 U.S. Dist. LEXIS 53785 (S.D.N.Y 2006).

[14] *See Form 10* (Defendants' Appendix (Doc. 179)), at App. 20 ("In connection with the spin-off, we expect to enter into new credit facilities, which we refer to as the new credit facilities, providing for an aggregate amount of approximately $6,515 million, consisting of (i) a senior secured five-year revolving credit facility in a principal amount of $250 million and (ii) senior secured term loan facilities in an aggregate amount of approximately $6,265 million consisting of (a) a tranche A term loan facility of approximately $1,515 million (the tranche A facility) and (b) a tranche B term loan facility of approximately $4,750 million (the tranche B facility, and together with the tranche A facility, the term loan facilities).").

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                    Page 7

as a fraudulent transfer under the Bankruptcy Code . . . ."  *Verestar* quoted from an earlier

decision from the Southern District of Texas:

> In *Weaver v. Kellogg*, 216 B.R. 563, 573-74 (S.D. Tex. 1997), the Court held that
> a debtor's execution of promissory notes constituted a transfer for purposes of §
> 548, even though the notes were not paid down, because the notes altered the
> debtor's rights by documenting changes in interest rates and payment deadlines.

*In re Verestar, Inc.* 343 B.R. at 469.

It defies common sense to conclude that Verizon somehow obtained $7.1 billion of value

out of thin air and that delivering $2.85 billion of Unsecured Notes to Verizon and issuing the

$4.3 billion Tranche B with its liens does not involve a transfer of property (securities) from

Idearc to Verizon.  In fact, Verizon, in its Form 10 filed with the Securities and Exchange

Commission, referred to these transactions as "exempt from registration under the Securities

Act."[15]  Unless the transaction involves securities, it doesn't need to fall within an exemption

from registration of a security under the Securities Act.[16]

None of the cases cited by Defendants in support of their position that delivery of the

Unsecured Notes and Tranche B to Verizon does not constitute a transfer deal with a set of

circumstances where a debtor gave a note or other form of debt to a transferee who then sold the

note to an innocent third party.  Consequently, these cases, where the holder of the note or

guaranty is the original party, are inapplicable to the claims of the Plaintiff against Verizon.[17]

---

[15]  *Form 10* (Defendants' Appendix (Doc. 179)), at App. 43.

[16]  *See* SECURITIES ACT OF 1933, 15 U.S.C. § 77a, *et seq.*, at § 4.

[17]  *Barnhill v. Johnson*, 503 U.S. 393 (1992). is a Supreme Court decision involving a preferential transfer and a
determination of whether the transfer took place within the 90 day requirement of Section 547 of the Bankruptcy
Code.  The Court concluded that the transfer took place when the money left the bank since the check was just a
direction to the bank to pay the payee.  Thus, the issue in *Barnhill* was when the money was transferred, not a note.
This is entirely different from the transfer of the Unsecured Notes and the Verizon Tranche B, and the creation of its
liens, which immediately transferred to Verizon $7.1 billion of value.  *Barnhill* is not applicable.  *Covey v.
Commercial National Bank of Peoria* 960 F.2d 657 (7th Cir. 1992)  involved a determination of the solvency of a
debtor at the time of the contested transaction and whether the debtor received reasonably equivalent value.  In
determining the value of a guarantee given by the debtor, the court cited *Barnhill* and noted that the existence of a
note or guarantee, under the circumstances of the *Covey* case, were obligations, not transfers in the hands of the
transferee.  *Id.* at 661.  *Covey* did not involve a situation where a note had been transferred to an innocent third party

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                   Page 8

Verizon designed, orchestrated and implemented the Spin-off.  If Idearc had borrowed the $7.1 billion directly from the bondholders, and the lenders and then paid that $7.1 billion to Verizon there would be no argument that Plaintiff could not recover the fraudulent transfer of the $7.1 billion from Verizon.[18]  The collapsed effect of the Spin-off transaction achieved exactly the same result for Verizon.  Idearc became indebted to the bondholders and the banks for $7.1 billion and Verizon got $7.1 billion of value as a result of the debt.  The circuitous route cleverly structured by Verizon should not result in a reading of the statutes at odds with their purpose to "restore the estate to the position it would have been in" absent the fraudulent transaction.

While the issuance of a note, or its equivalent, creates an obligation, that does not mean that the delivery of that note, or its equivalent, cannot also be an avoidable transfer.  If an insolvent wedding planner agrees to have Elton John sing at her relative's wedding for a charge of $100 (clearly less than reasonably equivalent value) and the wedding planner subsequently files bankruptcy, the trustee for the wedding planner can avoid the obligation to provide Elton John at the wedding. No transfer is involved.  However, when Idearc gave $2.85 billion of

---

by the initial transferee.  It didn't even involve a note.  It certainly did not involve the transfer of a lien.  *Covey* involved valuation of a guarantee held by the initial transferee and is inapplicable to the facts of this case where Verizon immediately sold $7.1 billion of  Unsecured Notes and Verizon Tranche B to third parties.  *In re Asia Global Crossing* 333 B.R. 199 (Bankr. S.D.N.Y. 2005) also involved a guaranty.  Citing *Barnhill* and *Covey* the court concluded that the guaranty claim of 360networks Corporation , the original (and only) holder of a guaranty, was not impacted by Section 502(d) of the Bankruptcy Code, which disallows claims until the claimant returns fraudulent transfers.  Since the guaranty could be avoided in the hands of 360networks there was nothing to return and Section 502(d) was inapplicable.  Again, this case did not involve notes in the hands of innocent third parties or liens.  *In re Foxmeyer Corp.,* 290 B.R. (Bankr. D. Del. 2003) is another guaranty case.  It is even less applicable than the others since it deals with an allegation of piercing the corporate veil, not the transfer of notes or liens;  *In re Macmenamin's Grill Ltd.*, 450 B.R. 414 (Bankr. S.D.N.Y. 2011) involved the application of Section 546(e) to a private leveraged buy out and relied on *Covey* and *Asia Global Crossing*.  Section 546(e) prevents a suit to avoid a fraudulent transaction if the transfer involved a settlement payment or a transfer by or to a financial institution in connection with a securities contract.  The lender had made loans to the debtor to finance the sale of the debtor's stock but the debtor received no benefit from the loan.  The lender continued to hold the loan from the debtor.  Judge Drain concluded that Section 546(e) only involved transfers, did not protect an obligation from avoidance, recognized that the liens granted to the lender constituted transfers and determined that the transfers (including the liens) were also not protected by Section 546(e) because of the private nature of the leveraged buy out.  Moreover, because the lender in *Macmenamin's* continued to hold the loan it is not analogous to the claims of the Plaintiff against Verizon and the other Defendants.

[18] In fact, $1,515,000,000 of the Cash Transfer was borrowed from lenders and transferred to Verizon.   Additional cash wasn't borrowed because of tax considerations.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**               Page 9

Unsecured Notes to Verizon, not only was an obligation incurred, but the Unsecured Notes were transferred to Verizon.  Likewise, when the Tranche B was issued to Verizon an obligation was incurred and liens were transferred to Verizon.

The substance of the Spin-off not only involves the incurrence of obligations but also transfers of the Unsecured Notes and the Tranche B and affords Plaintiff the remedies of  either or all of Section 550 of the Bankruptcy Code and Sections 24.008 and 24.009 of TUFTA, which specifically authorize the recovery of a money judgment against Verizon.[19]

### c. Idearc's Bankruptcy Plan Does Not Bar the Trust's Fraudulent Transfer Claims

Defendants contend that Idearc should have avoided the claims of the bondholders and lenders in the bankruptcy.  In addition to Defendants' assertion being at odds with the purposes of the avoidance provisions of TUFTA, Section 24.009 of TUFTA would not permit Idearc to avoid the claims of the bondholders and the lenders if they took the assets in good faith and for value.  This would be true even if the Spin-off were committed with actual intent to hinder, delay and defraud creditors of Idearc.  Section 24.008 (a)(3)(C) of TUFTA does, however, allow the court to craft relief to fit the circumstances of this case.  Potential appropriate relief would be an order requiring Verizon to return the $7.1 billion of value it received from Idearc.  Section 105 of the Bankruptcy Code also provides a basis for such relief.  Relief is available under Section 24.008 of TUFTA whether or not the elements of the Spin-off involving the Unsecured Notes and the Tranche B constitute avoidable transfers or only avoidable obligations.[20]  In any event,

---

[19] *In re Supplement Spot*, 409 B.R. 187 (Bankr. S.D. Tex. 2009) (looking to all available options under both section 550 of the Bankruptcy Code and sections 24.008 and 24.009 of TUFTA in crafting a remedy in a fraudulent transfer action).

[20] Even if the Court determines that Bankruptcy Code § 550 does not supply a remedy for the avoidance of the transfer of an obligation under § 544(b), the Court has the power to craft an appropriate remedy, including applying the remedies available under TUFTA § 24.008.  *See e.g.*, *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 70-71 (1992) (explaining that federal courts should "presume the availability of all appropriate remedies [for a federal right of action] unless Congress has expressly indicated otherwise."); *Kaliner v. MDC Sys. Corp.*, Civil Action No.

the Plaintiff seeks to avoid the transfer to Verizon and VFS in Counts 1 and 2 of the Amended

Complaint, not transfers to the bondholders or the lenders.

Defendants admit that the Idearc Plan of Reorganization (the "Plan") is now *res judicata*.

The Plan specifically contemplated and authorized this lawsuit.[21]  In addition, the stipulation

which determined the claims of the lenders and the bondholders, approved at the confirmation

hearing, participated in by Verizon, specifically stated "Nothing contained in the Stipulation will

release or waive any Spinoff Claim, or other claim, which may be asserted against Verizon…".[22]

Thus, the Plan that envisioned the Trust's pursuit of this lawsuit cannot have a *res judicata* effect

that prohibits this lawsuit.  Whatever ability Idearc did, or did not, have to attack the claims of

the bondholders and the lenders, and whatever defenses the lenders and bondholders may have

had which are unavailable to Verizon and VFC, does not affect the Trusts' independent claims

against Defendants before this Court.  Idearc's arrangements with its bondholders and lenders

does not mean that it did not have fraudulent transfer claims against Verizon which were

transferred to the Plaintiff pursuant to the very Plan which Defendants admit is *res judicata*.[23]

---

2:09-MC-00005-JD, 2011 U.S. Dist. LEXIS 5377, at *29 (E.D. Pa. Jan. 19, 2011) (holding that in a lawsuit under § 544(b), providing relief under state fraudulent transfer law "falls within the Court's equitable powers and may be ordered as necessary to ensure that the allegedly fraudulent transfers at issue in the case are successfully avoided."); *Weaver v. Kellogg*, Civil Action No. H-94-3703, 1997 U.S. Dist. LEXIS 22478, at *6 (S.D. Tex. May 22, 1997) (applying remedies under TUFTA § 24.008 and explaining that a court "has broad power in structuring an appropriate remedy based on . . . fraudulent transfers."); *In re Houston Drywall, Inc.* Adv. No. 06-03415, 2008 Bankr. LEXIS 4060, at *88-89 (Bankr. S.D. Tex. July 10, 2008) (applying both Bankruptcy Code and Texas remedies for fraudulent transfers and concluding that TUFTA §24.008(a)(3)(C) allowed the imposition of  joint and several liability on defendants who had only received part of the fraudulent transfers).  Section 550 of the Bankruptcy Code and 24.009 of TUFTA  provide for similar relief regarding avoidable transfers.

[21] Verizon actively participated in the confirmation proceeding which confirmed the Plan which authorized the Plaintiff to bring this fraudulent transfer action.

[22] *See* Stipulation and Agreed Order With Respect to Amended Forty-Fourth Omnibus Objection Seeking Disallowance of Certain Proofs of Claim Under 11 U.S.C. §§ 105 and 502 and Fed. R. Bankr. P. 3007, *In re* Idearc Inc., No. 09-31828 (Bankr. N.D. Tex. Dec. 29, 2011).

[23] Assuming that Idearc could have avoided its obligations to its bondholders and lenders (substantially all the creditors of Idearc) a debtor or trustee is not required to sue all potential defendants.  Section 24.008 and 24.009 of TUFTA provide alternate remedies against multiple parties.  Courts have even held that recovery of a fraudulent transfer can be made against a subsequent transferee without suing the initial transferee.  Colliers, a leading treatise on bankruptcy law states "Recovery "to the extent that" a transfer is avoided has been interpreted to require a successful avoidance action against the initial transferee before recovery may be had from a subsequent transferee.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                     Page 11

Finally, the Plaintiff is not attempting to avoid obligations pursuant to assumed contracts.  The Plaintiff only seeks to avoid obligations regarding the agreements specified in the following section below, which were not assumed.  *See infra* fn. 25.

**d.      The Trust Adequately Pled That Contracts are Part of the Fraudulent Consideration**

Although Verizon created and is a party to the contracts at issue in the Trust's fraudulent transfer claim, Defendants claim the Trust's Amended Complaint does not provide them with adequate notice related to the contracts.  Defendants cite two cases for their assertion that Rule 9(b) pleading requirements apply to the Trust's fraudulent transfer claim based upon actual intent to defraud creditors – one 2006 opinion from this district issued by Judge Lindsay and a Western District of Texas opinion.[24]  Two more recent opinions from this district conclude that Rule 9(b) does not apply to "actual intent" fraudulent transfers claims.  First, in 2009, Judge Lindsay determined that Rule 9(b) did not apply to a plaintiff's "actual intent" fraudulent transfer claims because such claims are distinct from fraud claims (*i.e.* it is not necessary to assert that the defendant committed fraud in obtaining funds).  *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 WL 5173954, at *10 (N.D. Tex. Dec. 31, 2009).  Second, in September 2011, Judge Godbey issued an opinion analyzing the very two cases upon which Defendants rely and concluded that Rule 9(b) pleading standards did not apply to an "actual intent" fraudulent transfer claim.  *Janvey v. Alguire*, No. 3:09–CV–0724–N, 2011 WL

---

The better view, adopted by the majority of courts, is that a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee."; 5 Collier on Bankruptcy ¶ 550.02[1] (16th ed.) (citations omitted); *In re M. Fabrikant & Sons, Inc*, 394 B.R. 721 (Bankr. S.D.N.Y 2008).

[24] Defendants cite these opinions: *Quilling v. Stark*, 2006 WL 485305, *1 (N.D. Tex. June 19, 2006); *Ind. Bell Tel. co. Inc. v. Lovelady*, 2006 WL 485305, *1 (W.D. Tex. Jan. 11, 2006).  *Defendants' Motion* (Doc. 178), p. 11.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
<u>**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**</u>                    Page 12

7047035, at *10  (N.D. Tex. Sept. 6, 2011).[25]  Because the Trust's fraudulent transfer claims are

distinct from fraud claims subject to Rule 9(b), Rule 8 dictates the relevant pleading standard.[26]

Rule 8 is the "most liberal" of all federal pleading standards.  *Escuadra v. GeoVera Specialty Ins. Co.*, 739 F. Supp. 2d 967, 981 (E.D. Tex. 2010).  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

The Trust's Amended Complaint provides Defendants with more than fair notice of the basis for the Trust's fraudulent transfer claims so that Defendants may prepare their defense. The Amended Complaint identifies the Spin-off transaction at issue, asserts that Verizon implemented the Spin-off to (a) reduce Verizon's indebtedness by "approximately $7.1 billion" by burdening Idearc with a corresponding amount of debt and (b) transfer more than $2 billion from Idearc to Verizon.  *Amended Compl.* (Doc. 161), ¶¶16, 18-19.  The contracts referenced in the Complaint are the myriad of contracts through which Verizon implemented the Spin-off. The Amended Complaint states that Idearc entered into these contracts with Verizon on the date of the Spin-off, November 17, 2006, in "exchange for contributions from Verizon to Idearc of its failing print and on-line directory business."  *Amended Compl.* (Doc. 161), ¶¶18-19.[27]  The Amended Complaint also alleges that the "dying directory publishing business" Idearc received

---

[25] The fact that the defendants in *Janvey* were not alleged to have committed wrongful conduct, as the transferor did, does not make the opinion any less applicable.  Because the plaintiff in *Janvey* alleged that a fraudulent transfer had been made with actual intent to defraud creditors, the plaintiff would still need to prove the intent of the transferor as an element of its claims against the defendants.

[26] Defendants acknowledge that Rule 8 applies to the Trust's claims for constructive fraudulent transfer. *Defendants' Motion* (Doc. 178), p. 12.  Additionally, in the Order denying Defendants' initial motion to dismiss, the Court correctly noted that the Fifth Circuit has not yet addressed whether Rule 9(b) applies to fraudulent transfer claims.  *Memorandum Opinion* (Doc. 106), p. 8.

[27] Defendants do note that paragraph 20 of the Amended Complaint states that Idearc's subsidiaries may have been parties to some of the inter-company contracts.  This issue is moot, however, because the only contracts that the Trust seeks to avoid through its Count Nos. 1 & 2 fraudulent transfer claims are those that Idearc did not assume in the Plan: Distribution Agreement, Credit Agreement, Employee Matters Agreement, Tax Sharing Agreement and the Guaranty Collateral Agreement (this is in addition to setting aside or voiding the debt instruments themselves). Consistent with the allegation in paragraph 19 of the Amended Complaint, Idearc was a party to each of these contracts.

in the Spin-off "was worth billions less than the" approximately $9.5 billion in consideration Idearc conveyed to Verizon.  *Id*. at ¶¶ 22–23.  Indeed, Idearc was rendered insolvent by the Spin-off as "[i]mmediately after the Spin-off, Idearc's balance sheet reflected that its debts exceeded its assets by approximately $9 billion."  *Id*. ¶¶ 2, 22.[28]

These allegations provide Defendants with fair notice of the Trust's claims.[29]

### e.   The Trust Can Recover the Value of the Stock Issued to Verizon

Idearc had a property interest in the stock it issued to Verizon in the Spin-off, and thus the transfer of that stock can form the basis for a fraudulent transfer claim.  *See, e.g., In re Pitt Penn Holding Co., Inc*., 2011 WL 4352373, at *5-*6 (Bankr. D. Del. Sep. 16, 2011) (holding that corporation has a property interest in unissued stock and denying motion to dismiss fraudulent transfer claim).[30]  Defendants' assertion to the contrary – that Idearc had no property interest in the stock it issued in the Spin-off – is poorly reasoned and ignores economic reality.

The Trust has alleged that Idearc received value (though not reasonably equivalent value) for the Idearc stock it issued to Verizon in the Spin-off.  *See, e.g*., *Amended Compl*. (Doc. 161), ¶ 18.  As the court in *Pitt Penn* recognized, such an exchange can form the basis for a fraudulent transfer action.  *Pitt Penn*, 2011 WL 4352373, at *6.  And, like that court, this Court should decline to follow *In re Decker*, 362 F.3d 593, 596 (9th Cir. 2004) and *In re Curry and Sorensen, Inc*., 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986) and deny Defendants' motion.

---

[28] Defendants cite no authority for their assertion that the Trust must plead  which "specific contractual obligations Plaintiff claims were fraudulent."  *Defendants' Motion* (Doc. 178), p. 12.  Analogous authority leads to the opposite conclusion.  *See, e.g*., *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 527 (Bankr. D. Del. 2006) ("The liberal standards of notice pleading [under Rule 8] do not require a plaintiff to identify the specific contract provision at issue" in a breach of contract claim; alleging breach is sufficient). Regardless, it is the disparity in the value of the consideration Verizon transferred to Idearc as compared to the aggregate value of what Idearc gave up in the transaction that causes Verizon's liability for fraudulent transfer.
[29] Moreover, as the Court found when denying Defendants' original motion to dismiss, the Trust has pled fraudulent transfer in sufficient detail to even satisfy Rule 9(b).  *Memorandum Opinion* (Doc. 106).
[30] Because this is an action to recover newly issued stock, cases holding that a corporation has no property interest in outstanding stock held by its shareholders, such as *In re Paso Del Norte Oil Co*., 755 F.2d 421, 424 (5th Cir. 1985), cited by Defendants, are irrelevant.

Further, the Trust is not barred from recovering the value of the stock Idearc issued and transferred to Verizon in the Spin-off simply because the Trust has also alleged that Idearc was insolvent at the time of the Spin-off.  Defendants' argument ignores that the Trust alleges in its Amended Complaint that the marketplace erroneously placed a value in excess of $4 billion on Idearc's stock at the time of the Spin-off because Verizon materially misled the market regarding Idearc's prospects.  *Amended Compl.* (Doc. 161), ¶¶22, 91-99, 109.  Defendants argue essentially that there should be no remedy for fraudulent transfer based upon a transfer of stock that could be sold for billions of dollars at the time of the transfer <u>if</u> the would-be purchasers in the market would not have bought the stock but for the purchasers being misled about the prospects of the business.  Verizon received stock that the market erroneously valued at more than $4 billion.  *Amended Compl.* (Doc. 161), ¶19.  Upon receipt of the stock, Verizon could have sold it in the marketplace and retained the sale proceeds.  Defendants would have the Court conclude that there is no remedy for the fraudulent transfer of this value to Verizon, but the fraudulent transfer statutes do not enable Verizon to reap such a windfall. [31]  Accordingly, the Trust is not barred from recovering the value of the stock it transferred to Verizon in the Spin-off.

### C. No Basis Exists to Dismiss Plaintiff's Claim for Promoter Liability in Count Nine of the Amended Complaint

Defendants contend that Plaintiff's promoter liability claim must be dismissed because Plaintiff (a) lacks standing to pursue such a claim, and (b) has failed to plead a legally cognizable cause of action. Both arguments fail.

---

[31] As the Verizon Parties would have it, the issuance of stock could never serve as the basis for a fraudulent transfer action, either because the debtor had no property interest the stock it issued or because it was insolvent at the time of the issuance (the debtor's insolvency being a necessary element of a fraudulent transfer claim).  Courts have not countenanced such a result.  *See, e.g., Pitt Penn*, 2011 WL 4352373, at *6 (refusing to dismiss fraudulent transfer claim aimed at avoiding insolvent corporation's issuance of stock).

1.      **Plaintiff Has Standing to Pursue a Promoter Liability Claim**

Defendants initially move to dismiss Plaintiff's promoter liability claim on the grounds

that Plaintiff lacks standing to bring such a claim on behalf of Idearc's creditors and future

shareholders.  *Defendants' Motion* (Doc. 178), pp. 2, 15-16.  While a trustee lacks standing to

bring claims that belong <u>solely</u> to the estate's creditors, Plaintiff's promoter liability claim

belongs to Idearc.

Defendants mischaracterize Plaintiff's promoter liability claim as a "fraud on the market"

securities claim.  In this Count, the Trust does not seek to recover for wrongs done to Idearc

shareholders or creditors.  Plaintiff instead seeks to recover for wrongs done to Idearc itself –

Defendants' denuding Idearc of cash and saddling it with a massive debt load that it could not

possibly service.  *See Amended Compl.* (Doc. 161), ¶¶ 2, 5-6, 16, 18-19, 21-24, 79, 81-114.

Plaintiff's claims are classic promoter liability claims owned by Idearc.  *See, e.g., McCandless v.*

*Furlaud*, 296 U.S. 140, 167, 56 S. Ct. 41, 50 (1935) (receiver could sue the promoters of a

corporation  perpetuating  a securities fraud on the public where the wrong sought to be

redressed was the unlawful depletion of the company's assets rendering the company insolvent

and thereby defrauding the company's creditors of their lawful rights and remedies); *Bailes v.*

*Colonial Press, Inc.*, 444 F.2d 1241, 1244 (5th Cir. 1971) (bankruptcy trustee had standing to

bring claim on behalf of  bankrupt corporation against its promoters and stating that "the fact that

persons damaged by dealings with [the bankrupt] might have brought independent actions based

on the Securities Act, as well as actions not so based, does not preclude [the bankrupt] or its

trustee, from suing for damage to itself as a corporate entity").

Plaintiff specifically alleges that it is pursuing the Litigation Trust Rights granted to the

Plaintiff pursuant to the Plan.  *Amended Compl.* (Doc. 161), ¶¶ 28-31.  Those rights include

causes of action belonging to Idearc, including without limitations claims against Defendants for breach of fiduciary duty, fraud, and aiding and abetting breaches of fiduciary duty "Litigation Trust Rights."  Plaintiff also seeks a monetary judgment against Defendants "in the amount of the difference between the consideration that Verizon received in connection with the Spin-off and the value of the assets received by Idearc."  *Id.* at ¶¶ 6, 79, 111.  Count Nine thus alleges a direct, pre-petition injury to Idearc belonging to its bankruptcy estate.

### 2.    Plaintiff's Promoter Liability Claim States a Valid Cause of  Action

Defendants' argument that Plaintiff's promoter liability claim fails to state a cause of action upon which relief can be granted is equally misplaced.  Defendants cite *Roni LLC v. Arfa*, 903 N.Y.S. 2d 352, 355 (N.Y. App. Div.), *aff'd*,  2011 WL 6338906 (2011), for the proposition that pleading of a specific solicitation of a purchase of Idearc stock is a required element of a promoter liability claim.  *Defendants' Motion* (Doc. 178) at p. 17.  *Roni* does not support Defendants' argument, and no such pleading requirement exists.  In *Roni,* the court held that the plaintiffs' allegations were sufficient to allege a fiduciary relationship between the promoters and the investors.  *Id.*  In so doing, however, it did not address, much less hold, that a specific solicitation of a purchase of stock in a promoted corporation is an element of a promoter liability cause of action.[32]

Here, Plaintiff alleges that (a) Defendants Verizon and Diercksen acted as Idearc's promoters, (b) Idearc was spun-off to Verizon shareholders as part of the promotional scheme, (c) the Defendants' fiduciary duties to Idearc as its promoters continued through the time of the Spin-off transaction because Idearc did not have an independent board of directors prior to the

---

[32] Nothing in Defendants' other case, *Gladstone v. Bennett*, 153 A.2d 577 (Del. 1959) suggests that the only way that a promoter can violate his fiduciary duty to his promoted corporation is to misappropriate a business opportunity belonging to the promoted corporation, and this is clearly not the law.

Spin-off,[33] and (d) Defendants breached their fiduciary duties as promoters in approving the

Spin-off transaction on Idearc's behalf.  *See, e.g.*, *Amended Compl.* (Doc. 161), ¶¶ 2, 3, 14-23,

79, 81-83, 87-89, 92-94, 100-111.  These allegations state a legally sufficient promoter liability

claim.  *See, e.g., Bailes*, 444 F. 2d at 1244-1245; *McCandless*, 56 S. Ct. at 50; *In re Tronox, Inc.*,

450 B. R. 432, 438-440 (S.D.N.Y. 2011) (cause of action for breach of fiduciary duty stated

where parent company acted as a promoter in spinning off a subsidiary).

**D.      The Trust's Unjust Enrichment Count Should not be Dismissed**

> **1.      The Trust's Unjust Enrichment Count is not Barred by Limitations**

The limitations periods governing the Trust's claims, including its unjust enrichment

count, were tolled as a result of the Verizon's adverse domination of Idearc.  "Under the

common law doctrine of adverse domination, the statute of limitations for an entity's claim is

tolled when the entity is controlled or dominated by individuals engaged in conduct that is

harmful to the entity."  *Janvey v. Dem. Senatorial Campaign Comm.*, 793 F. Supp. 2d 825, 832

(N.D. Tex. 2011) (citing *Warfield v. Carnie*, 2007 WL 1112591, at *15 (N.D. Tex. 2007).  The

doctrine recognizes that officers or directors who have engaged in activities that harm an entity

cannot be expected to have brought suit against themselves.  *Warfield*, 2007 WL 1112591, at

*15.  Under those circumstances, the entity is paralyzed to defend itself against the wrongdoers

and the doctrine ensures that the statute of limitations begins to run only once the wrongdoing

directors lose control of the entity.  *Id.*

The Trust has alleged that, at the time Idearc allegedly ratified the Spin-off, Idearc and its

board of directors were dominated and controlled by Verizon.  *See, e.g.*, *Amended Compl.* (Doc.

161), ¶¶ 100, 104-08, 121, 124, 126.  The Trust has alleged that the supposedly "independent"

---

[33] *See*, *Pub. Inv. Ltd. v. Bandeirante Corp.*, 740 F.2d 1222, 1234-1235 n. 72 (D.C. Cir. 1983); *In re Parmalat Sec. Litig.*, 684 F.Supp.2d 453, 475-477 (S.D.N.Y. 2010), *aff'd*, 423 Fed. App. 73 (2nd Cir. 2011).

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                    Page 18

board of directors installed at Idearc in connection with the Spin-off were never "independent" at all, and that their purported ratification of the Spin-off constituted a breach of their fiduciary duties to Idearc.  *Id.* at ¶¶ 104-06, 124-26.  The board members who allegedly ratified the Spin-off, who continued to control Idearc, cannot have been expected to have brought suit against themselves.  Accordingly, the Trust's claims arising out of the Verizon-controlled directors' malfeasance were tolled until the date on which Idearc was no longer dominated and controlled by Verizon's hand-picked directors.  *Warfield*, 2007 WL 1112591, at *15.  Because it is not clear from the pleadings when Verizon's selected directors lost control of the Idearc board, Defendants' affirmative defense of limitations is not established on the face of the Amended Complaint and the Motion must be denied.[34]

> ### 2.      Contracts Do Not Bar the Trust's Unjust
> ### Enrichment Claim Because They Are Void

Plaintiff has pled that the documents effectuating the loan and other transfers at issue in the "Unjust Enrichment" allegations were "interested party agreements (that) were void and voidable under Delaware law."  *Amended Compl.* (Doc. 161), ¶ 127.  Those documents were never ratified or approved by a disinterested board of directors and are, therefore, void.  *See, e.g.*,

---

[34] Texas courts are divided on the issue of whether unjust enrichment is an independent cause of action or an equitable remedy for violations of other applicable law.  *See, e.g.,  Janvey v. Alguire*, Case No. 3:09-cv-00724-N [Docket No. 696] at 15  (N.D. Tex. Sep. 6, 2011) (discussing split); *Cristobal v. Allen*, 2010 WL 2873502, at *6 n. 1 (Tex. App. – Houston [1st Dist.] Jul. 22, 2010, no pet.) (recognizing split).  As the court in *Janvey* clarified, the Trust "more properly pleads unjust enrichment as an equitable doctrine that entitles [it] to disgorgement" to remedy Defendants' breaches of fiduciary duty.  *Id.*; *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 872–75 (Tex. 2010) (setting out that "courts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty"); Tex. Bus. & Com. Code §24.008(a)(3)(C) (providing that, "subject to applicable principles of equity," the Court may award the Trust "any other relief the circumstances may require").

   As a remedy, unjust enrichment has no independent statute of limitations.  *See Adams v. Montgomery College (Rockville)*, No. DKCO 9 – 2278, 2012 U.S. Dist. LEXIS 3290, at *6 (D. Md. Jan. 11, 2012) ("Punitive damages is a remedy, there is no statute of limitations that directly applies; there is only the limitations period that applies to the underlying causes of action for which the remedy is sought").  Here, the relevant statute is the four year statute of limitations applicable to breach of fiduciary duty and fraudulent transfer.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (West 2002) (breach of fiduciary duty subject to four-year limitations period); Tex. Bus. & Com. Code § 24.010(a) (Vernon 2002) (four year statute of limitations for actions to avoid and recover fraudulent transfers).  Defendants do not argue that Plaintiff's fraud and breach of fiduciary duty claims are untimely.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**<u>DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT</u>**                     Page 19

*Amended Compl.* (Doc. 161), ¶¶ 123, 127; *see also Reddy v. MBKS Co., Ltd.*, 945 A.2d 1080, 1087 (Del. 2008) (agreements that are not validly approved by board of directors are not legally enforceable; agreements with interested parties are void unless party seeking to enforce agreement can show agreement is fair).  Unjust enrichment is not precluded by a contract when the contract is void.  *Aurora Petroleum, Inc. v. Cholla Petroleum, Inc.*, 2001 WL 652843, at *3 (Tex. App. – Amarillo Feb. 23, 2011, no pet.); *SCI Texas Funeral Services, Inc. v. Hijar*, 214 S.W.3d 148, 156 (Tex. App. – El Paso 2007, pet. denied); *French v. Moore*, 169 S.W.3d 1, 11 (Tex. App. – Houston [1st Dist.] 2004, no pet.).  The Trust has alleged that the relevant documents are void, and those documents do not preclude the Trust's request for enrichment damages.

### 3. The Trust's Unjust Enrichment Claim is not Preempted by the Bankruptcy Code

The Trust's state law unjust enrichment claim is not preempted by any provision of the Bankruptcy Code.  As shown above, the Trust's fraudulent transfer claims are not deficient under either the Bankruptcy Code or state law.  Because Defendants' assertion of preemption is entirely premised on their erroneous conclusion that the Trust's fraudulent transfer claims are meritless, it is based on a faulty premise.  Further, as discussed above, the Trust's unjust enrichment claim is not simply a "repackaged" fraudulent transfer claim.  Defendants' have not met their burden to demonstrate that the Trust's state law unjust enrichment claim is otherwise preempted by federal law and, as a result, their motion should be denied.[35]

Where a state law unjust enrichment claim does not conflict with a specific provision of the Bankruptcy Code it is not preempted.  *See, e.g., In re U.S. Wireless Corp.*, 333 B.R. 688, 693

---

[35] Defendants bear the burden of proof to establish federal preemption of the Trust's unjust enrichment claim. *Fisher v. Halliburton*, 2012 WL 90136, at n. 12 (5th Cir. Jan. 12, 2012);  *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011).

(Bankr. D. Del. 2005) (allowing parallel fraudulent transfer and unjust enrichment claims).

Defendants' cases are inapposite and Defendants' motion should be denied. [36]

**E.      The Trust Adequately Pled Alter Ego**

While Verizon is correct that alter ego is not an independent cause of action, the Trust

has plead facts sufficient to raise the alter ego theory of recovery.  Federal pleadings are

construed "liberally according to ... substance rather than ... form or label." *Hussain v. Boston*

*Old Colony Ins. Co.*, 311 F.3d 623, 633 n. 39 (5th Cir. 2002).  The mere fact that the Trust

labeled alter ego as a separate "Count" is insufficient to merit dismissal because, as set forth

below, the Amended Complaint contains detailed allegations regarding Verizon's use of Idearc

as a sham to perpetrate the fraud that was the Spin-off and related transactions.

**1.      The Amended Complaint details Verizon's Misuse of Idearc in the Spin-off**

The facts set forth in the Amended Complaint provide far more details than are

necessary under Delaware law to properly plead that Verizon was the alter ego of Idearc

at the time of the Spin-off.[37]  Those factual allegations are discussed more fully in the

sections below.  As an initial matter, however, the *Asarco, LLC v. Americas Mining*

*Corp.* opinion is a good starting point in considering the adequacy of the Trust's

pleading.  That court ruled that a complaint setting forth similar fraudulent transfer

---

[36] Two of the cases upon which the Verizon Parties rely involved state law claims that conflicted with express provisions of the Bankruptcy Code.  *See In re Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009) (holding that trustee could not assert unjust enrichment claim to recover transfers that were expressly unavoidable under Section 546(e) of the Bankruptcy Code); *In re Hechinger Inv. Co. of Del.*, 274 B.R. 71, 96 (D. Del. 2002) (same).  Defendants' remaining cases are equally inapposite. In *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, (1st. Cir. 2000); for instance, the debtor, which had gone through the bankruptcy and had been discharged pursuant to Bankruptcy Code Section 524, sued a creditor for violating Section 524's injunction against suits against the debtor.  *Id.* at 448.  The Court held that Bankruptcy Code Section 105 provided the means to redress violations of Section 524 injunctions.  *Id.*, *see also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 426 (6th Cir. 2000); *Diamante v. Solomon & Solomon, P.C.*, Case No. 99-cv-1339, 2001 WL 1217226, at *3 (N.D.N.Y. Sep. 18, 2001).
[37] Defendants' briefing related to whether Verizon may be held to be the alter ego of Idearc with respect to debts Idearc undertook after the Spin-off transaction was completed is misplaced.  The Trust does not seek such relief. The Trust asserts that Verizon is the alter ego of Idearc for the time period prior to and during the Spin-off.  As such, Verizon is liable for the debts that Idearc incurred in connection with the Spin-off.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                    Page 21

allegations adequately pled alter ego and, therefore, denied a 12(b)(6) motion to dismiss. *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 66 (S.D. Tex. 2007).

Additionally, Delaware law[38] provides that a plaintiff may pierce the corporate veil by demonstrating a misuse of the corporate form along with an overall element of injustice or unfairness. *Netjets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176-77 (2d Cir. 2008). In the parent-subsidiary context, "[w]here a subsidiary is in fact a mere instrumentality or alter ego of its owner, a court can pierce the corporate veil." *Union Carbide Corp. v. Montell N.V., et al.,* 944 F.Supp 1119, 1144 (S.D.N.Y. 1996) (quoting *Geyer v. Ingersoll Publ. Co.,* 621 A.2d 784, 793 (Del.Ch. 1992). Though many factors are considered under the Delaware law of alter ego, courts have distilled the test for alter ego to two prongs: (i) whether the entities in question operated as a single economic unit and (ii) whether there was an overall element of injustice or unfairness. *Id.* at 1144 (S.D.N.Y. 1996) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995)).

### a.      Verizon and Idearc Were a Single Economic Unit in the Spin-off

To determine whether a business entity and its owner are a "single economic unit," courts consider several factors, including: 1) whether the corporation was adequately capitalized for the business undertaking, 2) whether the business entity was solvent, 3) whether dividends were paid, business records kept, officers and directors functioned properly, and other business formalities were observed, 4) whether the owner siphoned business funds; and 5) whether, in general, the business entity simply functioned as a facade for the dominant shareholder.[39]  *Id.* at

---

[38] Under Texas law, "the laws of the jurisdiction of incorporation of a foreign corporation shall govern ... (2) the liability, if any, of shareholders of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement." Tex. Bus. Corp. Act. Ann. art. 8.02 (West Supp.1994).  Because Idearc is incorporated in the State of Delaware, Delaware law should apply with respect to alter ego.

[39] The absence of allegations of specific factors does not justify granting a motion to dismiss where plaintiff has made other relevant allegations.  *See Union Carbide*, 944 F.Supp. at 1145.

1145; *see also Harco Nat'l Ins. Co. v. Green Farm, Inc*., 1989 WL 110537, at **4-5 (Del. Ch.

1989) (quoting *United States v. Golden Acres, Inc*., 702 F. Supp. 1097, 1104 (D. Del. 1988)).

The Amended Complaint includes detailed allegations touching upon each of these

factors.  For example, the Trust's Amended Complaint describes how Verizon seated its Vice

President, Diercksen, as Idearc's sole director to approve the Spin-off.  *See Amended Compl.*

(Doc. 161), ¶¶ 3, 21.  Once installed, Diercksen "acted as Idearc's sole board member to approve

the Spin-off in violation of his fiduciary duties as a board member."  *See Id.*[40]  "[I]mmediately

after approving the Spin-off…Diercksen 'changed hats' and signed [the Spin-off documents] on

behalf of Verizon..."  *Id*, ¶3.  Verizon also caused its lawyers to also represent Idearc during the

Spin-off.  *See Id.,* ¶¶100-106.  With its own Vice President in sole command of Idearc and its

lawyers advising Idearc, Verizon and Idearc were a single economic unit for the purposes of the

Spin-off.  With Diercksen in command, Verizon implemented a plan to siphon funds from Idearc

by causing Idearc to: 1) assume over $7 billion of Verizon's debt (*Id.*, ¶¶ 18-19, 24), 2) distribute

dividends to Verizon in violation of Delaware law (*Id.*, ¶ 77), and 3) make various fraudulent

transfers to Verizon (*Id.*, ¶¶18-19), including the divestiture of all of the assets of another Idearc

subsidiary to GTE (*Id.*, ¶¶ 59-68) leaving Idearc insolvent.[41]

### b.    Verizon used Idearc to Engage in Unjust and Inequitable Conduct

As noted in the sections above, Verizon unjustly wielded its total control over Idearc to

extract substantially all of Idearc's value – leaving Idearc with billions of debt and a dying

business.  Idearc was left inadequately capitalized and "insolvent by approximately $9 billion

with total obligations in excess of $10 billion."  *Amended Compl.* (Doc. 161), ¶¶ 22-23.

---

[40] The Trust's counts for Promoter Liability and Unjust Enrichment claim provides even greater detail regarding how Verizon and Diercksen effected the Spin-off in an unjust manner. *See Amended Compl.* (Doc. 161), ¶¶ 81-127.
[41]*See* also Counts 1 – 10 of the *Amended Compl.* (Doc. 161).

Inevitably, the burden of the Spin-off debt was too much for Idearc to bear, and Idearc filed for

Chapter 11 Bankruptcy protection in 2009.  *Amended Compl.* (Doc. 161), ¶ 25.  Meanwhile,

Verizon saw an "increase of nearly $9 billion in shareowners' equity, as well as a reduction of

total debt by more than $7 billion and [Verizon] received approximately $2 billion in cash."

*Amended Compl.* (Doc. 161), ¶¶ 26-27.   In sum, the Amended Complaint contains allegations

sufficient to support the piercing of Verizon's corporate veil under the alter ego theory.  *See*

*ASARCO*, 382 B.R. at 66 (finding that plaintiff plead sufficient facts to support reverse veil-

piercing); *Union Carbide*, 944 F.Supp. at 1145 (denying motion to dismiss where plaintiff (i)

offered "numerous" supporting allegations that defendants dominated plaintiff and (ii) provided

sufficient allegations supporting overall unfairness and injustice).

### 2.        Verizon's Defense of Substantive Consolidation is Consistent With Alter Ego

A judicial admission is a formal concession in the pleadings or stipulations by a party or

counsel that is binding on the party making them. *Martinez v. Bally's Louisiana, Inc.,* 244 F.3d

474, 476-7 (5th Cir. 2001) (citing *McCullough v. Odeco., Inc.*, No. CIV.A. 90-3868, 1991 WL

99413, at *2 (E.D. La. May 30, 1991)).  Verizon plead substantive consolidation as an

affirmative defense to Idearc's claims.  *See Verizon's Answer* (Doc. 182), ¶ 28.

Early cases considering substantive consolidation looked to state law to determine

whether the entity with which consolidation was sought was the "alter-ego" or an

"instrumentality" of the debtor which was used by the debtor to hinder, delay or otherwise

defraud creditors.  *E.g.*, *Maule Indus., Inc. v. Gerstel*, 232 F.2d 294, 297 (5th Cir. 1956) (citing

*Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940)).  While modern courts applying substantive

consolidation have increasingly looked to a growing body of federal common-law opinions

decided under federal bankruptcy law, the factors giving rise to substantive consolidation remain

very similar to those considered under an alter ego analysis.[42]  *Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991); *United Sav. Bank v. Augie/Restivo Baking Co., Ltd.* (*In re Augie/Restivo Baking Co. Ltd.*), 860 F.2d 515, 518 (2d Cir. 1988).

Though alter ego and substantive consolidation are not identical, there is extensive overlap between the factors considered under both theories.  Although the Trust is not asserting that by pleading substantive consolidation, Verizon has admitted that it used Idearc as its alter ego, in the context of Verizon's attack upon the Trust's alter ego pleading, it is pertinent to note that Verizon has admitted much of what the Trust would be required to prove at trial in connection with alter ego.[43]  This is a further factor in favor of denying Verizon's motion to dismiss the Trust's alter ego theory.

## III.   CONCLUSION

For reasons detailed above, the Trust requests that the Court deny Defendants' second motion to dismiss in its entirety.  Additionally, should the Court determine that any valid ground for dismissal has been raised in Defendants' motion, the Trust requests leave to amend its complaint to address any pleading deficiency.

---

[42]   Factors relevant to substantive consolidation include: 1) common ownership or control, 2) identical or overlapping officers or directors, 3) consolidated tax returns or financial reporting, 4) inter-affiliate debts or guarantees, 5) undercapitalization, commingling of assets or business functions, 6) failure to maintain corporate and other formalities, 7) fraudulent or preferential transfers, 8) fraudulent or inequitable use of an affiliate, 9) economic benefits of consolidation, 10) degree of difficulty in segregating assets and liabilities, 11) reliance on separate credit of entities to be consolidated, 12) prejudice or benefit to creditors, and 13) individual or non-debtor status of entities to be consolidated.  *In re Augie/Restivo Baking Co.*, 860 F.2d at 518; *Soviero v. Franklin Nat'l Bank*, 328 F.2d 446, 448 (2d Cir. 1964); *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 766 (Bankr. S.D.N.Y. 1992) *In re DRW Prop. Co.*, 54 B.R. 489 (Bankr. N.D. Tex. 1985).

[43]   It is also worth noting that at the same time Verizon asserts that Idearc made "bare bones legal conclusions" in connection with alter ego, Verizon's substantive consolidation affirmative defense consists of one sentence and fifteen words.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**                          Page 25

Respectfully submitted,

/s Patrick D. Keating
Werner A. Powers
State Bar No. 16218800
Robin E. Phelan
State Bar No. 15903000
Patrick D. Keating
State Bar No. 00794074
David Taubenfeld
State Bar No. 19679450

HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7673
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

Nicholas A. Foley
State Bar No. 07208620
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516

NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone:     (214) 840-5300
Telecopier:    (214) 840-5301

ATTORNEYS FOR U.S. BANK NATIONAL
ASSOCIATION as Litigation Trustee on Behalf of
the Idearc Inc. et al. Litigation Trust (the "Trust")

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served through the ECF system in accordance with the Federal Rules of Civil Procedure on the 25th day of January 2012 upon:

> T. Ray Guy
> WEIL, GOTSHAL & MANGES, LLP
> 200 Crescent Court, Suite 300
> Dallas, Texas 75201

/s Patrick D. Keating

D-2029321_8.DOC