IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | ) ) ) |
| *Plaintiff*, | ) ) CIVIL ACTION NO. ) |
| v. | ) 3:10-CV-1842-G ) |
| VERIZON COMMUNICATIONS INC., VERIZON FINANCIAL SERVICES, LLC, GTE CORPORATION and JOHN W. DIERCKSEN, | ) ECF ) ) ) ) |
| *Defendants*. | ) |

**VERIZON PARTIES' REPLY IN SUPPORT OF
THEIR PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff's Response to the Verizon Parties' motion to dismiss is long on rhetoric and short on substance. The Verizon Parties respond to the few legal arguments Plaintiff makes.

**I.     THE FRAUDULENT TRANSFER CLAIMS SHOULD BE DISMISSED**

**A.     The Court May Consider The Verizon Parties' Motion.**

Seeking to avoid the merits, Plaintiff contends the Motion is an impermissible "second bite at the apple" because the Verizon Parties moved against the original complaint. But this Motion is the *first* response to the *newly amended* complaint. Plaintiff revised Counts I and II, adding claims that Idearc's contracts with Verizon were fraudulent conveyances and that its issuance of stock to Verizon was a $4.1 billion fraudulent transfer. The Amended Complaint also excluded the $2.4 billion in cash as part of the "Fraudulent Consideration" it sought to recover.[1] (Am. Compl. ¶¶ 18, 19.) Accordingly, "[t]his is a new complaint and a new ball

---

[1] Plaintiff so admits, terming the Amended Complaint's omission of the $2.4 billion from its definition of "Fraudulent Consideration" a "mechanical error." (Resp. at 2.) Verizon will separately respond to Plaintiff's "Motion to Conform Definition of Fraudulent Consideration." For now, what matters is that the Court can dismiss the other portions of Plaintiff's fraudulent transfer claims—those seeking to recover the $7.1 billion in debt and the supposed $4.1 billion in Idearc stock, and to avoid the "contractual obligations." See, e.g., Pennington v. Vail

game." Pucci v. Litwin, 828 F. Supp. 1285, 1287 n.2 (N.D. Ill. 1993) ("[D]efendants have not waived any arguments on this motion to dismiss.").[2]

### B.     Plaintiff Cannot Recover $7.1 Billion that Idearc Never Transferred to Verizon.

Plaintiff cannot "recover" from Verizon $7.1 billion in debt that Idearc incurred in the Spin-Off because Idearc did not *transfer* its property when it issued that debt; it simply incurred an *obligation* to make payments in the future. The Bankruptcy Code (the "Code") allows a trustee to "avoid"—render unenforceable—an obligation. But the trustee may "recover" property or its value only if the debtor, in fact, "*transferred*" its "property." 11 U.S.C. § 550(a); Mot. at 8-10. If instead the debtor simply incurred an *obligation* to pay a debt, as Idearc did here, the remedy the Code provided Idearc and its creditors was to "avoid" that debt. See In re Asia Global Crossing, Ltd., 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (An avoided "obligation is rendered unenforceable, there is nothing to return and § 550 affords no remedy"). Just because Idearc and its creditors chose not to seek the remedy the Code provides does not permit Plaintiff, as Idearc's successor, to create a new remedy.

Plaintiff's arguments to the contrary fail. First, the Code permits a debtor's estate to recover only a "transfer of an interest of the *debtor* in property." 11 U.S.C. § 544(b) (emphasis added). Plaintiff misses the mark in contending that the debt *obligations* Idearc incurred had

---

Prods, Inc., No. 303-CV-1961-D, 2004 WL 302298 (N.D. Tex. Jan. 8, 2004) (granting partial motion to dismiss); Herring v. Dallas Cnty. Schs., No. 399-CV-1538-P, 2000 WL 370623 (N.D. Tex. Apr. 11, 2000) (same).

[2] See also In re Parmalat Sec. Litig., 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) ("An amended complaint . . . supersedes the original and entitles a defendant to raise substantive arguments aimed at 'judicial resolution of the controversy' in a new responsive pleading, even if those arguments were not raised in response to the original complaint."). The cases cited by Plaintiff do not support its contrary argument. See In re Morrison, 421 B.R. 381, 386-90 (Bankr. S.D. Tex. 2009) (noting that "the right to assert a defense in a motion to dismiss may be 'revived' after an amendment to a complaint," and that, in any event, the court would reach the merits of the motion because doing so "would resolve the inevitable" and avoid "delay [of] what is a necessary stage in the proceeding"); Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp., 247 F. Supp. 2d 987, 993, 999 (N.D. Ill. 2002) (ruling new defenses raised in third motion to dismiss were waived where the amended complaint, unlike here, included no new allegations supporting the applicable counts).

"value" to Verizon (and subsequent holders of the debt) and, therefore, constituted a *transfer* of Idearc's property. (Resp. at 6-10.) The obligations were an asset to *Verizon*, but they were *a liability to Idearc*, the party in whose shoes the Plaintiff stands. A debt is a promise to pay. It is not an asset the debtor can sell to pay its creditors; just the opposite, it is a claim *against* the debtor. Accordingly, a debtor does not transfer its own property when it incurs a debt. Mot. at 8-9; cf. Don E. Williams Co. v. Comm'r, 429 U.S. 569, 582-83 (1977) ("[A] promissory note, even when payable on demand and fully secured, is still, as its name implies, only a promise to pay, and does not represent the paying out or reduction of assets.").[3]

Second, Plaintiff argues that this Court should engage in a legal fiction, proceeding as if Idearc had transferred $7.1 billion in cash to Verizon, even though it did not. But none of the "collapsing" cases cited by Plaintiff supports this fiction. (Resp. at 5 n.6.) Instead, those cases address a different question: whether the debtor received fair value in exchange for the transfers or obligations it actually undertook, usually borrowing money. See, e.g., In re Nat'l Forge Co., 344 B.R. 340, 347-48 (W.D. Pa. 2006) (collapsing analysis is "[t]ypically … invoke[d] … for purposes of demonstrating that the insolvent target company did not, in the aggregate, receive fair consideration or reasonably equivalent value for the transfer"); HBE Leasing Corp. v. Frank, 48 F.3d 623, 635 (2d Cir. 1995) (same). The cases "collapse" into a single transaction the two steps that actually occurred—the lending of money to the debtor, followed by the debtor's payment of that money to others—to determine whether the debtor can avoid its obligation to the lenders. Here, in contrast, Idearc *cut a deal* with its lenders to treat their claims against Idearc as

---

[3] The principal case Plaintiff cites for the proposition that a debtor transfers its own property when it incurs a debt obligation, In re Verestar, Inc., 343 B.R. 444 (Bankr. S.D.N.Y. 2006), relied on a misreading of Weaver v. Kellogg, 216 B.R. 563, 573-74 (S.D. Tex. 1997). Unlike Idearc, the debtor in Weaver was the payee, not the payor, of the note and therefore the note was an asset of that debtor. Plaintiff's other cases involved the issuance of stock, not debt, and made clear that a trustee cannot "recover" stock of a debtor that, as here, was allegedly "doomed to fail." (Resp. at 7 n.13.)

*enforceable* (Mot. at 6), and there are no actual steps that can be collapsed to establish that Idearc transferred $7.1 billion of its money to Verizon, because this never happened.

Third, Plaintiff mistakenly argues that even if Idearc's issuance of debt was not a transfer of Idearc's property, the Court may still grant a remedy that Congress elected not to provide in § 550 of the Code by relying on state law and § 105 of the Code.  While state law informs whether a transaction is avoidable under § 544, only § 550—not state law—governs whether a trustee can obtain a recovery.  See In re Criswell, 102 F.3d 1411, 1415 (5th Cir. 1997) (Section 550 is "the recovery provision for … §§ 544 and 548 fraudulent transfers"); In re First Independence Capital Corp., 181 F. App'x 524, 530 (6th Cir. 2006) ("even though voidability under § 544 may be premised on state law, recovery of transfers avoided … hinges on § 550 of the Bankruptcy Code rather than on state law").[4]  Nor can Plaintiff circumvent § 550 by resort to § 105, which simply allows a court to issue orders to "carry out the provisions of [the Code]."  11 U.S.C. § 105(a).  Section 105 "cannot alter another provision of the [C]ode."  In re Zale Corp., 62 F.3d 746, 760 & n.42 (5th Cir. 1995).

Fourth, Plaintiff erroneously argues that the banks and bondholders could have prevented Idearc from avoiding its debt by asserting that they acquired the obligations owed to the banks and bondholders in "good faith" and "for value."  (Resp. at 6, 10 (citing § 550 and TUFTA ¶ 24.009(b).)  By its terms, that defense does not apply to the avoidance of debt obligations; it

---

[4] None of the cases Plaintiff cites holds that state law trumps § 550 and permits recovery for the avoidance of an obligation.  In re Supplement Spot, LLC, 409 B.R. 187 (Bankr. S.D. Tex. 2009) (recovery of *transfer* of funds sought under separate Code section, not concerning fraudulent transfers, and Texas law); In re Houston Drywall, Inc., No. 05-95161-H4-7, 2008 WL 2754526 (Bankr. S.D. Tex. July 10, 2008) (*transfer* of property in form of receivables was recoverable under § 550 and Texas law); Kaliner v. MDC Sys. Corp., No. 2:09-MC-00005-JD, 2011 WL 203872 (E.D. Pa. Jan. 20, 2011) (suggesting that court may look to state law to ensure that fraudulent *transfers* are avoided and recovered); Weaver v. Kellogg, No. H-94-3703, 1997 U.S. Dist. LEXIS 22478 (S.D. Tex. May 20, 1997) (avoiding *transfer* of replacement notes issued to debtor).  In any event, even under Texas law, only transfers of property are recoverable.  See Tex. Bus. & Com. Code § 24.009(b) (permitting "recover[y] … of the *asset transferred*" only "to the extent a *transfer* is voidable") (emphasis added).

applies to the recovery of transfers of property.  See 11 U.S.C. § 550(a)-(b) (addressing "[l]iability of transferee of avoided transfer"); Tex. Bus. & Com. Code § 24.009(b) (same).  Also, Plaintiff's argument cannot be squared with its own theory that the various parts of the Spin-Off should be "collapsed" and that the value of any credit provided by the banks and bondholders flowed to Verizon—not Idearc.  That theory, if accepted, would have defeated the supposed defense that Plaintiff says the banks and bondholders could have asserted.  See 11 U.S.C. § 548(c) ("good faith" defense applies only to extent defendant "gave value to the debtor"); Tex. Bus. & Com. Code § 24.009(d) (same).

Finally, the Amended Complaint nowhere alleges that Idearc transferred its property when it granted liens to secure the bank debt.  Idearc cannot amend its complaint in its opposition to the Motion.  See, e.g., Loveman v. Lauder, 484 F. Supp. 2d 259, 266 (S.D.N.Y. 2007) (rejecting plaintiff's "post hoc attempt to rewrite the complaint").  And, in any event, the Trust cannot "recover" a money judgment for the liens.  When a debtor grants a lien on its property, it retains possession of the property.  If those liens were fraudulent conveyances, the debtor's remedy is to avoid the liens.  See 11 U.S.C. §§ 541(a)(4), 551.  "Where, as here, the Trustee avoids only a non-possessory transfer of a lien, the preservation of the lien for the benefit of the estate is sufficient to place the estate in exactly the same position it would have been in, but for the granting of the lien."  In re Davis, No. 08-4042, 2009 WL 1033194, at *7 (Bankr. E.D. Tex. Mar. 24, 2009).  "There is no need for the Trustee to 'recover' any property or its value" because "[b]y operation of §§ 551 and 541(a)(4), he already has obtained the property transferred."  Id.; see also In re Burns, 322 F.3d 421, 427-29 (6th Cir. 2003) (same).

C.     **Plaintiff Cannot Recover the "Contractual Obligations."**

Plaintiff concedes that it cannot avoid obligations arising under contracts that Idearc assumed in its bankruptcy plan.  (Resp. at 12.)  Plaintiff likewise cannot evade the pleading

requirements of Rule 9(b)[5] or cure the Amended Complaint's failure to specify the Contractual Obligations by identifying them for the first time in its response to the Motion. (Resp. at 13 n.27.) And, in all events, Plaintiff cannot obtain any recovery because Idearc did not *transfer* any property when it "assume[d] contractual *obligations*" to Verizon. (Am. Compl. ¶ 18 (emphasis added); see Mot. at 6 & n.6, 11-14.)

D.   **Plaintiff Cannot Recover the Stock Idearc Issued in the Spin-Off.**

Plaintiff's claim to recover $4.1 billion for Idearc's stock also fails. First, "unissued stock is not an interest of the debtor corporation in property," and thus "recovery of corporate stock … is not a transfer subject to question under [fraudulent conveyance law]." Decker v. Advantage Fund, Ltd., 362 F.3d 593, 596 (9th Cir. 2004); see also Mot. at 14-15. Second, Plaintiff itself alleges that, immediately upon the Spin-Off, Idearc was insolvent. Under Plaintiff's own theory, its stock was therefore worthless. See Global Crossing v. Winnick, No. 04 CIV 2558 (GEL), 2006 WL 2212776, at *9 (S.D.N.Y. Aug. 3, 2006). Indeed, the sole case Plaintiff cites endorsed Global Crossing, which recognizes that a claim to recover a debtor's stock must be dismissed where, as here, the debtor allegedly was "doomed to fail" when it issued the stock. (Resp. at 14 (citing In re Pitt Penn Holding Co., No. 09-11475 BLS, 2011 WL 4352373, at *6 (Bankr. D. Del. Sept. 16, 2011)); see also Am. Compl. ¶ 36 (alleging Spin-Off left Idearc as "a failing business" under a "doomed structure," "burdened by massive debt without resources to repay the debt when it became due"). Third, Idearc never owned its stock. Before the Spin-Off, Verizon owned *100%* of Idearc; it was a wholly-owned Verizon subsidiary.

---

[5] Contrary to Plaintiff's contention, Rule 9(b) applies to its intentional fraudulent transfer claims. The two cases Plaintiff cites (Resp. at 12-13) represent a distinctly minority view (see Mot. at 11-12) and are distinguishable in any event because there was no allegation that the defendant (as distinguished from the debtor) had engaged in fraud. Here, by contrast, Plaintiff's theory seems to be that Verizon acted with fraudulent intent that should be imputed to Idearc. An action alleging that the defendant engaged in actual fraud is the paradigmatic case for application of Rule 9(b). See, e.g., U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009) (applying 9(b) to fraud complaints "with 'bite' and 'without apology'" (internal quotation omitted)).

After the Spin-Off, Verizon owned *0%* of Idearc; Verizon's shareholders owned that stock. Under these circumstances, Plaintiff's claim that the Spin-Off entailed a transfer by Idearc of its stock to Verizon is nothing short of frivolous.

## II.   THE PROMOTER LIABILITY CLAIM SHOULD BE DISMISSED

Plaintiff concedes that it lacks standing to sue for direct injury to Idearc's stockholders or creditors. (Resp. at 16.) Hence, its promoter liability claim for alleged breaches of "fiduciary dut[ies] to … [Idearc's] future stockholders" must be dismissed. (Am. Compl. ¶ 110.) Recognizing as much, Plaintiff attempts to recast its promoter-liability claim as one alleging injury to Idearc itself, in contrast to what Plaintiff actually pled: an alleged scheme to "commit fraud on the market" by concealing facts "contrary to the disclosures in the Form 10"—a document that could not possibly defraud *Idearc*, the issuer of the Form 10. (Id. ¶¶ 100, 109.) Again, Plaintiff cannot rewrite its complaint, which it has already amended once, in its briefs.

In any event, the Amended Complaint fails to state a claim for promoter fraud. Plaintiff's assertion that Verizon and Diercksen promoted Idearc and breached their duty to it when they approved the transaction on Idearc's behalf is both incorrect—Verizon did not approve the transaction on Idearc's behalf—and legally deficient. The potential duty a promoter owes to the corporation itself is that it cannot "benefit by any secret profit which [it] may receive at the expense of the corporation." See Gladstone v. Bennett, 153 A.2d 577, 582 (Del. 1959). Indeed, the cases cited by Plaintiff so recognize; they are predicated upon secret or illicit profits made at the corporation's expense. See e.g., McCandless v. Furlaud, 296 U.S. 140, 158-59 (1935) ("The public had been invited to invest in the securities on the representation that the proceeds would be used for the [the business]…." Instead "three-fifths of the money was applied to the designated uses, the rest being kept for the use of the promoters"); Bailes v. Colonial Press, Inc., 444 F.2d 1241, 1244 (5th Cir. 1971) (investors believed that the corporation had a net worth of

$412,000 when instead the assets had been secretly diverted to defendants). "[C]ourts will not set aside the transaction" where "there is no secret or undisclosed property." Gladstone, 153 A.2d at 582. Here, the Amended Complaint does not allege there was any "secret" profit. To the contrary, the terms of the Spin-Off—including the assets transferred to Idearc, the consideration provided to Verizon in exchange, and the liabilities (and resulting balance sheet) incurred by Idearc—were all disclosed in the Form 10 filed by Idearc itself in advance of the Spin-Off. (Mot. at 3-4.) Count 9 should be dismissed.

### III.  THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

The unjust enrichment claim should be dismissed for three separate reasons. First, contrary to Plaintiff's contention, the doctrine of adverse domination did not toll the limitations period. That doctrine tolls "the running of limitations" only "while the corporation continues under the domination of the wrongdoers, *who are the adversaries of the action*." Fed. Deposit Ins. Corp. v. Henderson, 61 F.3d 421, 426 (5th Cir. 1995) (emphasis added) (citing Fed. Deposit Ins. Corp. v. Dawson, 4 F.3d 1303, 1309-10 (5th Cir. 1993)). It requires that the majority of the directors be "culpably involved" in the alleged wrongdoing such that the corporation was unable to pursue an action against those same directors. Id. Here, Plaintiff has not pled that the independent directors of Idearc, appointed upon the Spin-Off from Verizon, were culpable in any wrongdoing. In any event, those directors are not even parties to this action. Plaintiff cites no case holding that adverse domination tolls the statute of limitations for claims against parties who were not officers or directors of the corporation.[6] Also, Plaintiff acknowledges that Idearc became an independent company outside of Verizon control no later than November 17, 2006— the date of the Spin-Off. (Am. Compl. ¶ 109.) Accordingly, any claim for unjust enrichment

---

[6] Indeed, the Fifth Circuit has declined to apply the doctrine to such third parties. See Fed. Deposit Ins. Corp. v. Shrader & York, 991 F.2d 216, 227 (5th Cir. 1993).

against Verizon had to be filed by November 17, 2008. Tex. Civ. Prac. & Rem. Code § 16.003 (specifying a two year limitations period for unjust enrichment). Plaintiff did not commence this action, let alone assert a claim for unjust enrichment, until much later. Count 10 is untimely.

Second, Plaintiff cannot resurrect its time-barred unjust enrichment claim as a remedy for fraudulent transfer. (Resp. at 19 n.34.) Section 550 of the Code, not state law, provides the remedies for fraudulent transfer. Plaintiff cannot circumvent the Code's bar on the recovery it seeks on its fraudulent transfer claims by repackaging those claims as unjust enrichment claims. Indeed, in precisely these circumstances—where a plaintiff invokes state law to obtain a remedy not permitted under federal law—courts have repeatedly held that state law, including that of unjust enrichment, is preempted by the Code. (Mot. at 20-21.)

Third, the claim fails because the relationship between Verizon and Idearc was governed by contract. Plaintiff's contention that the agreements underpinning the Spin-Off were "void" (Resp. at 19) is wrong. While Plaintiff disputes that Idearc in fact ratified those contracts, it does not dispute that it could have lawfully done so. Contracts that can be ratified are at most voidable, not void. See CarrAmerica Realty Corp. v. Kaidanow, 321 F.3d 165, 170 (D.C. Cir. 2003) (holding that acts a corporation can lawfully undertake are voidable, not void).[7] And enforceable agreements, even voidable ones, bar application of unjust enrichment. E.g., Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 988 (8th Cir. 2009); Duke Energy Int'l, L.L.C. v. Napoli, 748 F. Supp. 2d 656, 676 (S.D. Tex. 2010) (dismissing unjust enrichment claim where the subject of the claim was covered by a voidable, not void, contract).

---

[7] In fact, Idearc did ratify the contracts. Each of its independent directors executed the unanimous consent approving the Spin-Off. Plaintiff's only response—that one director dated the consent November 15, 2006, instead of November 16, 2006—is of no legal consequence. Plaintiff does not and cannot allege that the director would have failed to take the same action, signing the very same piece of paper, one day later. The one case Plaintiff cites is inapposite. Reddy v. MBKS Co., Ltd., 945 A.2d 1080, 1086-87 (Del. 2008) (one director approved and executed a transaction without the knowledge of the other director). Also, Idearc's ratification continued long after the closing of the Spin-Off. For more than two years thereafter, it paid in excess of $1 billon in interest on the bank and bond debt it incurred in the Spin-Off, and it agreed to allow that debt in its bankruptcy plan. (Mot. at 5-6.)

## IV.     THE ALTER EGO CLAIM SHOULD BE DISMISSED

Plaintiff admits that alter ego is not an independent cause of action. (Resp. at 21.) Even as a theory of recovery, the Count is defective because Plaintiff has not pled an underlying cause of action for which alter ego provides a viable form of recovery. See W. Oil & Gas JV, Inc. v. Castlerock Oil Co., Inc., 91 F. App'x 901, 903-04 (5th Cir. 2003) ("Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action. Absent a cognizable cause of action this remedy is unavailable." (internal citation omitted)). To the contrary, Plaintiff impermissibly attempts to stand in the shoes of its beneficiaries—the individual lenders and bondholders that financed the Spin-Off—seeking to recover the "debts that Idearc incurred [to those creditors] in connection with the Spin-off." (Resp. at 21 n.37.) As this Court has previously ruled, Plaintiff cannot assert common law claims of Idearc's creditors. [Docket No. 106 at 14-15.] And even if it could, Plaintiff's alter ego theory would fail because the Form 10 (as well as the credit agreement and indenture themselves) specified that the sole obligor on the bank and bond debt would be Idearc, not Verizon—thus enforcing, not ignoring, the legal distinction between the two corporations. (Mot. at 24-25.) Count 11 should be dismissed.[8]

---

[8] Plaintiff's contention that Verizon's affirmative defense of substantive consolidation supports Plaintiff's theory of alter ego is without merit. That defense focuses on the substantive consolidation under Idearc's bankruptcy plan of different Idearc entities, not of Verizon and any such Idearc companies. The defense of substantive consolidation prevents Plaintiff from recovering twice for the same transfer on behalf of multiple Idearc debtors. Verizon has not argued, as Plaintiff acknowledges (Resp. at 25), that Verizon and Idearc should be considered alter egos.

Dated: February 8, 2012

        s/ T. Ray Guy
T. Ray Guy
Texas Bar No. 08648500
*ray.guy@weil.com*
Paige Holden Montgomery
Texas Bar No. 24037131
*paige.montgomery@weil.com*
WEIL, GOTSHAL & MANGES, LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

John B. Strasburger
Texas Bar No. 19358335
*john.strasburger@weil.com*
Alfredo R. Pérez
Texas Bar No. 15776275
*alfredo.perez@weil.com*
WEIL, GOTSHAL & MANGES, LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Philip D. Anker
(Pro Hac Application Pending)
*Philip.Anker@wilmerhale.com*
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: 212-230-8800
Facsimile: 212-230-8888

Attorneys for Verizon Communications Inc., Verizon Financial Services LLC, GTE Corporation, and John W. Diercksen

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Courts' CM/ECF system pursuant to the Court's Local Rules this 8th day of February 2012.  All other counsel will be served by United States mail, certified mail/return receipt requested.

| | |
|---|---|
| Werner A. Powers<br>*werner.powers@haynesboone.com*<br>Patrick D. Keating<br>*patrick.keating@haynesboone.com*<br>HAYNES & BOONE, LLP<br>2323 Victory Avenue, Suite 700<br>Dallas, Texas 75219<br>Telephone:  (214) 651-5000<br>Facsimile:  (214) 651-5940 | Nicholas A. Foley<br>*nfoley@neliganlaw.com*<br>Douglas J. Buncher<br>*dbuncher@neliganlaw.com*<br>NELIGAN FOLEY, LLP<br>325 N. St. Paul, Suite 3600<br>Dallas, Texas 75201<br>Telephone:  (214) 840-5300<br>Facsimile:  (214) 840-5301 |

          s/ T. Ray Guy
          T. Ray Guy