UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. 3:10-CV-1842-G |
| VERIZON COMMUNICATIONS INC., *et al.*, | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE TWO SUMMARY JUDGMENT MOTIONS AND SUPPORTING BRIEFS**

Plaintiff U.S. Bank National Association, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust (the "Trust") files this opposition to the motion for leave to file two summary judgment motions and supporting briefs (the "Motion for Leave") [Docket No. 235] filed by Defendants Verizon Communications, Inc. ("Verizon"), Verizon Financial Services, LLC ("VFS"), GTE Corporation ("GTE"), and John W. Diercksen ("Diercksen") (collectively the "Defendants"), and in support states as follows:

**I. PRELIMINARY STATEMENT**

1.     This Court's Local Rules prohibit a party from filing more than one motion for summary judgment without leave, which is only granted upon a showing of good cause. The Defendants' proposed motion for summary judgment (the "MSJ") raises a host of issues that the Trust will provide evidence to refute. Requiring the Trust to respond to and brief a fact-intensive matter at this stage of the case – prior to the end of the discovery period and at a time

---

**Plaintiff's Opposition to Defendants' Motion for Leave to File Two Summary Judgment Motions and Supporting Briefs**
**Page 1**

when the parties are fully engaged in crucial fact discovery, taking 30 depositions across the country in the next 52 days – would place an undue burden on the Trust.  This burden is even greater in light of the fact that the Trust would subsequently be required to respond to and brief an *additional* motion for summary judgment.  Thus, the question is also one of timing.  The Defendants have simply not shown good cause for imposing a significant burden on the Trust during this period of critical discovery.  For that reason alone, the Motion for Leave should be denied.

2. Indeed, the defenses asserted in the MSJ have been available to the Defendants since the outset of this case.  The Defendants contend that it is inappropriate for lenders who finance the November 2006 spin-off (the "Spin") to recover in this case.  MSJ at pp. 8-9.  As an initial matter, the MSJ is premised upon a misrepresentation of the nature and status of the Trust and the identity of its beneficiaries.[1]  Nonetheless, the evidence the Defendants use to support the MSJ – including the Spin Credit Agreement and Idearc's confirmed plan of reorganization – was available to the Defendants at the outset of this case.  Given that the Defendants could have filed their MSJ long ago, the burden the Defendants seek to impose upon the Trust is even more inappropriate while the Trust is fully engaged in key fact discovery.  If the Defendants truly sought to limit and avoid discovery, they could have filed the MSJ in the early stages of the case.

3. Additionally, the MSJ involves issues of hotly contested facts that preclude summary judgment.  The MSJ details selected statements revealed to prospective lenders, but does not state what Verizon knew and did not tell the lenders, bondholders and others: that, as a

---

[1] The underlying premise posited by the Defendants in the MSJ  (estoppel or ratification of the transaction by insiders to, architects of, and recipients of, fraudulent transfers) cannot be extrapolated to the hundreds of beneficiaries of the Trust, which did nothing more than loan money, buy publicly traded bonds or purchase widely traded secured debt.  The Trust was established pursuant to a confirmed plan of reorganization in accordance with the United States Bankruptcy Code to benefit all of the designated creditors.  The actions of individual beneficiaries of the Trust are simply not relevant.  Of the hundreds of beneficiaries of the Trust, only a relative handful were initial lenders or initial purchasers of the notes that were eventually exchanged for publicly traded Idearc bonds, and even those handful were misled by the Defendants.

---

**Plaintiff's Opposition to Defendants' Motion for Leave to File Two Summary Judgment Motions and Supporting Briefs**
**Page 2**

result of the Spin, Idearc was doomed to failure. Determination of the true circumstances surrounding the Spin goes to the heart of this lawsuit and involves hotly disputed facts that cannot be resolved on summary judgment, including the true value of the assets transferred to Idearc and Idearc's ability to pay its massive debts as they became due. Both the Motion for Leave and the MSJ assume that these facts will be resolved in favor of the Defendants.

4.   But even if the MSJ were granted, it would not simplify this litigation. The Defendants do not seek summary judgment on the Trust's breach of fiduciary duty and unlawful dividend claims, which are based upon the same facts as the Trust's fraudulent transfer claims. Thus, dismissal of the Trust's fraudulent transfer claims will not limit the scope of fact discovery or expert analysis in this case. *And even still*, it would be virtually impossible for the parties to brief and the Court to resolve a complex MSJ much in advance of the close of fact discovery and the Trust's expert deadline (April 30, 2012). As such, the Defendants' arguments concerning efficiency and the conservation of resources ring hollow. All of these facts suggest that the true motivation behind the Motion for Leave is to create a diversion during the closing days of discovery.

5.   The limit on motions for summary judgment also conserves judicial resources by limiting repetitive motions and briefing. In light of the foregoing, the Trust believes the reasoning underlying the limit applies forcefully here. However, if the Court believes that two motions for summary judgment may advance or aid in the resolution of the case, the Trust requests that it be allowed additional time to respond to the Defendants' proposed motion for summary judgment, as well as the equal right to file two motions for summary judgment.[2]

---

[2] The Trust notes that Verizon has filed 43 affirmative defenses, many of which are clearly without merit. *See* Verizon's Answer, Defenses, and Affirmative Defenses to Plaintiff's Amended Complaint [Docket No. 246], pp. 21-26. Even if the Trust limits its briefing to one page per defense it will not be able to address every defense raised by the Defendants in one motion without leave from the Court's 25 page limit.

---

**Plaintiff's Opposition to Defendants' Motion for Leave to File Two Summary Judgment Motions and Supporting Briefs**
**Page 3**

## II. FACTUAL & PROCEDURAL BACKGROUND

6. On November 16, 2011, this Court entered its "Amended Order Establishing Schedule and Certain Pretrial Requirements" [Docket No. 157] (the "Amended Scheduling Order"). Currently, the deadline to complete discovery is April 30, 2012. Amended Scheduling Order, ¶ 9, pp. 1-2. The Trust's expert disclosure is also set for April 30, 2012. Amended Scheduling Order, ¶ 10, p. 2. The deadline to file motions for summary judgment is May 25, 2012. Amended Scheduling Order, ¶ 7, p. 2. Of course, any party is free to file a motion for summary judgment before that time, but in accordance with the Local Rules the party is barred from filing another absent leave of Court. L.R. N.D. Tex. 56.2(b). The case is placed for trial on the Court's four-week docket beginning on October 1, 2012. Amended Scheduling Order, ¶ 1, p. 1.

7. As the Court is aware from the many *pro hac vice* motions it has recently considered, the Defendants have recently added two additional law firms to the case. The parties have agreed and set over a dozen depositions over the next month and a half – depositions of key witnesses, many of which require travel to other states, and all of which will require substantial preparation. Additionally, the Defendants have indicated that they will set approximately 15 additional depositions during the next 52 days. Thus, beginning next week counsel for the Trust will be preparing for and attending over 30 depositions across the country over the next two months. With only two months left for all discovery, the Trust's law firms have several attorneys working full-time on this matter, with many more devoting a substantial portion of their time. Further, the Trust has already retained experts who are in the process of preparing expert reports which are due April 30, 2012. Taking into account the discovery that is already

scheduled, the Trust's counsel has limited time to address any additional matters during this period of critical discovery.

### III. ARGUMENT & AUTHORITIES

8. Local Civil Rule 56.2(b) provides that "[u]nless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment." L.R. N.D. Tex. 56.2(b); *Senior Living Properties LLC Trust v. Clair Oddell Ins. Agency LLC*, 2005 WL 1862172, at *1 (N.D. Tex. Aug. 5, 2005). Leave from this general rule is only granted where the movant shows good cause. Fed. R. Civ. P. 16(b); *Senior Living Properties*, 2005 WL 1862172, at *1. The Defendants have not shown good cause and thus the Motion for Leave should be denied.

9. In the Motion for Leave, the Defendants assert that granting the proposed motion for summary judgment would "significantly reduce the time, expense and resources required for the parties to complete discovery . . . ." Motion for Leave at ¶ 4. Further, the Defendants state that significant expert work would be saved if the proposed motion is granted. *Id*. These statements ignore the calendar. Assuming the Motion for Leave is ripe by March 9, and the Court immediately rules and allows the Defendants to file the proposed motion for summary judgment, and also assuming the Court does not allow the Trust additional time to file a response to a motion seeking relief on a multi-billion dollar claim, the soonest the proposed motion for summary judgment would even be ripe for decision is sometime in April, only weeks before the end of the discovery period and the date on which the Trust must produce its initial expert reports. Amended Scheduling Order, ¶¶ 9-10 , p. 2. While the Motion for Leave asserts that the proposed summary judgment motion is premised on "indisputable" facts, even a brief reading of the proposed summary judgment motion shows it raises issues that the Trust will provide

evidence to refute.[3]  Motion for Leave at p. 1.  Thus, unless the Court rules immediately on a motion for summary judgment involving complex legal questions as well as lengthy evidentiary appendices, no discovery will be avoided and expert work will be well underway.

10.  Further, the timing of the Motion for Leave reflects the Defendants' continued efforts to divert the Trust's attention and resources from critical fact and expert discovery.  As noted above, the Trust will be attending over 30 depositions in the next 52 days, including the depositions of some of the most crucial witnesses in this case:  Kathy Harless, the former President and CEO of Idearc, Inc., Ivan Seidenberg, the former President and CEO of Verizon, and John Diercksen, the Chairman of the Board of Idearc, Inc. at the time of the spin and a named defendant.  In addition to seeking leave to file an *extra* motion for summary judgment during this period of time-consuming discovery, the Defendants also noticed, in violation of this Court's orders, more than 50 depositions of non-critical third-parties.[4]  The arguments asserted in the Defendant's proposed motion for summary judgment have been available since the outset of this case; if the Defendants truly sought to avoid discovery expenses, their proposed motion could have been filed long ago.  That it was not demonstrates that the Defendants' true motivation is to burden and distract the Trust during this period of crucial discovery.

---

[3] For example, the proposed motion for summary judgment does not address the fact that creditors were misled, a significant fact issue for which the Trust will provide substantial evidence in opposition to the proposed motion for summary judgment.  Indeed, the Motion for Leave itself reflects the Defendants' efforts to mischaracterize both the spin transaction and the nature of this lawsuit in an effort to avoid the results of their actions.  For example, the Motion for Leave asserts that the Trust is suing "solely for the benefit of bank lenders and bondholders," and it will prove its entitlement to summary judgment "from the face of the banks and bondholders own loan agreements." *Id*. at ¶ 5.  Unfortunately for the Defendants, they are incorrect.  The Trust was set up in accordance with federal bankruptcy law to pursue a recovery for losses suffered by Idearc, Inc. and its creditor body as a whole in accordance with Fifth Circuit precedent.  As much as Verizon would like to do so, there is no basis in applicable fraudulent transfer law to shift the focus in this dispute to lenders and away from the conduct of the transferors (Idearc, Inc., *et al*.) and transferees (Verizon, *et al*.).

[4] The Court has since quashed those deposition subpoenas because they violated the Court's discovery order [Docket No. 266].

---

11.     Moreover, the MSJ will not resolve or limit the issues in this case. As noted above, the MSJ involves hotly contested fact issues including the Defendants' misrepresentations in connection with the Spin, the alleged knowledge or lack thereof of third party lenders and bondholders, the value of the assets the Defendants transferred, and Idearc's ability to pay its burdensome debts. Further, the cases cited by the Defendants in the MSJ are simply inapplicable to the Trust and its hundreds of beneficiaries.[5] Verizon was both the architect of the Spin and the transferee of massive fraudulent transfers and avoidable obligations. Any requirements for Idearc to transfer funds, notes or debt, or incur obligations in the Spin is attributable to Verizon, not the lenders and bondholders. The concepts of estoppel and ratification by transferees and insiders are simply inapplicable to the Trust and its hundreds of beneficiaries, many of which were not involved in the Spin and merely bought Idearc bonds or other debt on the open market. Because the issues raised in the MSJ requires the resolution of disputed facts, it will resolve nothing. Further, the MSJ does not seek judgment on the Trust's breach of fiduciary duty and unlawful dividend claims. Thus, even if the MSJ were granted it would not limit the scope of fact discovery and expert analysis in this case.

12.     True to form, the Defendants seek an exception to this Court's established rules without any compelling justification. In fact, the only justification for the Defendants' request – the conservation of resources – ignores reality. Further, the timing of the Motion for Leave and

---

[5] For example, in *Lane v. Eggleston*, 284 F. 743 (5th Cir. 1922) [MSJ at pp. 2, 12], all of the debtor's creditors received liens pre-petition. When the debtor's trustee sought to avoid the transfer of the liens over the objection of the creditors, the court concluded (i) that there were no creditors who met the statutory requirement of at least one creditor who could avoid the transaction under the applicable state law and (ii) that avoidance would not benefit the estate or its creditors since all the creditors were the transferees of the liens in question. In *In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011) [MSJ at pp. 2, 11-12, 17], the debtor had purchased bank debt of an affiliate from the affiliate's lenders. Subsequently, both the debtor and the affiliate filed Chapter 11 cases in different courts. In connection with a sale of the assets of the affiliate the debtor released its claims against the affiliates without telling the court that it intended to sue the former lenders for fraudulent transfer in connection with the purchase by the debtor of the bank debt. The court concluded that the actions of the debtor at the hearing approving the asset sale by the affiliate constituted judicial estoppel to a fraudulent transfer action against the former lenders to the affiliate.

---

the Defendants' pattern of conduct at this stage of the case suggests that the intent behind the Motion for Leave is nothing more than tactical. Because the Defendants have not shown cause – let alone good cause – for relief from the prohibition on multiple motions for summary judgment, the Motion for Leave should be denied.

13. Nonetheless, the decision to allow the Defendants to file two motions for summary judgment rests squarely with this Court. If the Court believes that allowing the Defendants to file two motions for summary judgment will aid in the resolution of this case, the Trust requests that it be permitted at least 30 days to file any response to a motion for summary judgment, especially if filed during the discovery period. In addition, the Trust requests that it also be allowed to file two motions for summary judgment, so that the Trust can address the Defendants' meritless affirmative defenses.

## IV.  CONCLUSION

14. While considering the Defendants' request to expand the limit on motions for summary judgment, the Trust requests that the Court (i) take into account the significant burden briefing a complex factual and legal matter during the discovery phase entails and permit the Trust additional time to respond to any such motion filed before April 30, 2012, and (ii) order a level playing field where both the Trust and the Defendants are permitted the same number of motions for summary judgment.

## V.  PRAYER

The Trust respectfully requests that this Court either (i) deny the Motion for Leave or (ii) modify any order granting the Motion for Leave as set forth herein and (iii) award the Trust any further relief the Court deems proper.


Dated: March 9, 2012                    Respectfully Submitted,

*/s/ Nicholas A. Foley*
Nicholas A. Foley
Texas State Bar No. 07208620
Douglas J. Buncher
Texas State Bar No. 03342700
John D. Gaither
Texas State Bar No. 24055516

NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Telephone:     (214) 840-5300
Fax:           (214) 840-5301

Werner A. Powers
State Bar No. 16218800
Robin Phelan
State Bar No. 15903000
Patrick Keating
State Bar No. 00794074

HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7673
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

**ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION as Litigation Trustee on Behalf of the Idearc Inc. et al. Litigation Trust**

## CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of the foregoing instrument was served on the following attorneys of record and through the Court's ECF system in accordance with the Federal Rules of Civil Procedure on March 9, 2012:

T. Ray Guy
WEIL, GOTSHAL & MANGES, LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201

John B. Strasburger
WEIL, GOTSHAL & MANGES, LLP
700 Louisiana, Suite 1600
Houston, Texas 77002

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022
Philip.Anker@wilmerhale.com

                                                */s/ Nicholas A. Foley*
                                                Nicholas A. Foley