UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL | ) | |
| ASSOCIATION, Litigation Trustee of the | ) | |
| Idearc Inc. *et al.* Litigation Trust, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | 3:10-CV-1842-G |
| VS. | ) | |
| | ) | |
| VERIZON COMMUNICATIONS INC., | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendants' motion to strike the plaintiff's jury demand

(docket entry 89).  For the reasons set forth below, this motion is granted.

I. BACKGROUND

This case deals with claims arising out of a large spin-off transaction.  The

plaintiff is U.S. Bank National Association ("U.S. Bank"), acting as litigation trustee

of the Idearc Inc. *et al.* Litigation Trust.  The defendants are Verizon

Communications Inc. ("Verizon"), GTE Corporation ("GTE"), John W. Diercksen

("Diercksen"), and Verizon Financial Services LLC ("VFS") (collectively, the

"defendants").  The court has already set forth the general factual background of this case.  Memorandum Opinion and Order of September 19, 2011 ("Opinion") (docket entry 106).

In March of 2009, Idearc filed for bankruptcy.  Defendants Verizon Communications Inc., Verizon Financial Services LLC, GTE Corporation, and John W. Diercksen's Motion to Strike Plaintiff's Demand for a Jury Trial and Brief in Support ("Motion") at 8 (docket entry 89).  In connection with Idearc's bankruptcy, Verizon filed a number of proofs of claim against the bankruptcy estate.  *Id*.  Four of these proofs of claim remain outstanding.  *Id*.  Idearc has objected to the payment of these four claims under 11 U.S.C. § 502(d), which requires a court to disallow a creditor's claim, where the creditor received a voidable preference or fraudulent conveyance, unless the creditor has paid the amount for which it is liable.  *Id*. at 9.  Idearc's objections under Section 502(d) remain pending.  *Id*.

A plan of reorganization for Idearc was confirmed in December of 2009.  *Id*. at 8.  This plan created the Idearc litigation trust.  *Id*.  As the trustee of the litigation trust, U.S. Bank is "designated as the Debtors' and the Estates' representative and the successor in interest to the Debtors and Estates for all purposes with respect to all Litigation Trust Rights, including, without limitation, the commencement, prosecution, settlement and collection thereof."  Plaintiff's Amended Complaint and Jury Demand (Filed Under Seal) ("Complaint") ¶ 30 (docket entry 216).  As such,

- 2 -

U.S. Bank has brought eleven causes of action against the defendants:  fraudulent transfer, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, unlawful dividend, promoter liability and breach of fiduciary duty, unjust enrichment, and *alter ego*.  *Id*. ¶ 32-133.

In its complaint, U.S. Bank demanded a jury trial.  *Id*. ¶ 134.  The defendants now bring this motion to strike the plaintiff's jury demand.  Motion at 1.  In their motion, the defendants make two arguments as to why the plaintiff is not entitled to a jury trial:  (1) "[T]he Idearc Parties contractually waived their rights to a trial by jury on all of the claims set forth in the Complaint."; (2) "Plaintiff's claims are inexorably intertwined with Verizon's proofs of claim filed in the Idearc bankruptcy case, thus invoking the equitable jurisdiction of bankruptcy proceedings for which the plaintiff is not entitled to trial by jury."  *Id*.  In particular, the defendants argue that the plaintiff's fraudulent conveyance claims are "integral to the restructuring of the debtor-creditor relationship and part of the claims-allowance process which is triable only in equity."  *Id*. at 20 (internal quotations omitted).[1]

---

[1]     The parties do not appear to dispute the fact that the plaintiff is not entitled to a jury trial under any of the other claims.  The defendants provide two case citations as to why the plaintiff is not entitled to a jury trial on its breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims.  *See* Motion at 19 n.8 (citing *Cantor v. Perelman*, No. Civ. A. 97-586-KAJ, 2006 WL 318666, at *9 (D. Del. Feb. 10, 2006); *In re Hechinger Investment Company of Delaware*, 327 B.R. 537, 544 (D. Del. 2005), *aff'd*, 278 Fed. App'x. 125 (3d Cir. 2008)).  The plaintiff does not appear to dispute this characterization.

(continued...)

## II. ANALYSIS

### A. Legal Standard

Under the United States Constitution, the right of a trial by jury is preserved

for suits at common law.  U.S. CONST. amend VII.  The phrase "suits at common

law" refers to "suits in which *legal* rights were to be ascertained and determined, in

contradistinction to those where equitable rights alone were recognized, and equitable

remedies were administered."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41

(1989) (emphasis in original) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)).

Moreover, the Supreme Court has held that actions to recover preferential or

---

[1](...continued)

However, the defendants never argue that the plaintiff's unlawful dividends, promoter liability, unjust enrichment, and *alter ego* claims are equitable in nature.  By the same token, the plaintiff never argues that any of its claims, other than its fraudulent transfer claims, are "suits at common law."

Nevertheless, the court's research on this matter shows that these remaining claims apparently do not entitle the plaintiff to a jury trial.  See *Nichols v. Heslep*, 273 F.3d 1098, at *2 (5th Cir. 2001) ("[U]njust enrichment [i]s an equitable [claim] and not triable of right by a jury."); *Harrell v. DCS Equipment Leasing Corporation*, 951 F.2d 1453, 1458 (5th Cir. 1992) ("[T]he alter ego doctrine is an equitable method of piercing the corporate veil.").

Moreover, while there appears to be very little relevant extant case law, both plaintiff's promoter liability and unlawful dividend claims appear to be equitable as well.  The plaintiff's promoter liability claim is essentially a breach of fiduciary duty claim, and as a result is equitable in nature.  *See* Complaint ¶ 111 ("Verizon and Diercksen were both promoters and as such both owed fiduciary duties to Idearc. They breached their duties."); see also *Cantor v. Perelman*, 2006 WL 318666 at *9. The plaintiff's claim for an unlawful dividend against Diercksen and Verizon is equitable as well.  Briggs, L. L., *Stockholders' Liability for Unlawful Dividends*, 8 TEMPLE LAW QUARTERLY 145, 167 (1934) ("It has been held by many courts that a suit in equity is the proper remedy to compel stockholders to return illegal dividends.").

- 4 -

fraudulent transfers are considered suits at common law.  *Id*. at 48 (citing *Schoenthal v. Irving Trust Company*, 287 U.S. 92 (1932)).

However, Congress has the power to block application of the Seventh Amendment, and deny trials by jury in actions at law, in certain cases where "public rights" are litigated.  *Id*. at 51.  In determining whether something is a public right, in a case not involving the federal government, the crucial question is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary."  *Id*. at 54.  "If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court."  *Id*. at 54-55.  "If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial."  *Id*. at 55.

In *Granfinanciera*, the Supreme Court held that when a bankruptcy trustee brings a fraudulent conveyance action against another party, the suit is generally considered a suit at common law.  *Id*. at 56.  As a result, the right to a jury trial under the Seventh Amendment is preserved.  However, this is true only when the defendant in the fraudulent conveyance suit has not submitted a proof of claim against a

- 5 -

bankruptcy estate in the bankruptcy case. *Id*. at 36, 57-58 (1989).  Instead, when a creditor does file a claim against a bankruptcy estate, "the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). Therefore, "[i]f the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity." *Id*.  "In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id*. (emphasis in original removed).  As a result, the creditor that filed the proof of claim is no longer entitled to a jury trial on the preference or transfer action.

Under these circumstances, the right to a jury trial is extinguished for both the debtor and the creditor that files the proof of claim.  In *Langenkamp*, the parties that filed the proof of claim against the debtor were the ones that sought a jury trial. *Id*. at 43-44.  However, other courts have recognized that the same principle applies when it is the bankruptcy trustee that seeks a trial by jury.  See, *e.g.*, *In re Crown Vantage*, No. C-02-3838 MMC, 2007 WL 172321, at *3 (N.D. Cal. Jan 18, 2007); *In re Washington Manufacturing Company*, 133 B.R. 113, 117 (M.D. Tenn. 1991); *In re B&E Sales Company, Inc.*, 129 B.R. 133, 134, 136-37 (Bankr. E.D. Mich. 1990).  This is because "the holding in *Langenkamp* is not based on the concept of 'waiver.'" *Crown*

*Vantage*, 2007 WL 172321 at *2.  Instead, "[t]he right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue."  *Id.*

The Second Circuit's decision in *Germain v. Connecticut National Bank*, 988 F.2d 1323 (2nd Cir. 1993), explains why a debtor's preference or fraudulent transfer action becomes, in the words of *Langenkamp*, 498 U.S. at 44, "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction."  In *Germain*, the trustee had brought a series of claims against a creditor that had filed a proof of claim in the bankruptcy case.  988 F.2d at 1326. None of these claims were preference or fraudulent transfer actions.  *Id.*  The court held that the bankruptcy trustee was entitled to a jury trial because the trustee's claims did not affect the "claims-allowance process."  *Id.* at 1327.  The Second Circuit contrasted the facts in *Germain* with the facts in *Langenkamp*, where "the issue was whether the trustee may void a preferential transfer without a jury trial."  *Id.*  The court cited 11 U.S.C. § 502(d), which requires a court to disallow "any claim of any entity from which property is recoverable because of a preferential transfer or fraudulent conveyance."  *Id.*  "Thus, before a claim may be allowed, a court *must* resolve any preference issues that the trustee might raise."  *Id.* (emphasis in original). Therefore, Section 502(d) makes the resolution of the preference or fraudulent

transfer issue "integral" to the claims allowance process.  In those circumstances, the
right to a jury trial is extinguished for both parties.

The plaintiff relies on two cases where the court determined that the right to a
jury trial was not extinguished, notwithstanding the fact that a creditor had brought a
claim against a debtor and the debtor had brought a preference or fraudulent transfer
action.  The first such case is *Mirant Corporation v. The Southern Company*, 337 B.R.
107 (N.D. Tex. Jan 10, 2006) (McBryde, J.).  In that case, the court was faced with
motions to withdraw the reference and to transfer to another United States district
court.  *Id*. at 108-09.  In deciding the motion to withdraw, the court considered
whether the creditor was entitled to a jury trial.  *Id*. at 119-22.  As in *Langenkamp*, the
creditor in *Mirant* had filed proofs of claim against the debtor, and the debtor had
filed various claims against the creditor, including one for fraudulent "conveyances or
transfers."  *Id*. at 109-10, 121.  The plaintiffs argued, and the bankruptcy judge
concluded, that the creditor had "forfeited" its right "to trial by jury by virtue of
having filed proofs of claim in the title 11 cases."  *Id*. at 121.

However, the district judge in *Mirant* concluded that the creditor was indeed
entitled to a jury trial.  *Id*.  The court first emphasized that it "must indulge in a
presumption against wavier of the Seventh Amendment right to a jury trial."  *Id*.  The
court's decision that the creditor was entitled to a jury trial was based in part on the
fact that there was "no suggestion in the record that [the creditor] has knowingly,

voluntarily, and intelligently waived its right to trial by jury." *Id*. However, one bankruptcy court has criticized *Mirant* on this issue, suggesting that this waiver analysis is not consistent with the Supreme Court's decisions in *Granfinanciera* and *Langenkamp*. See *In re Endeavour Highrise L.P.*, 425 B.R. 402, 408 n.3 (Bankr. S.D. Tex. 2010). Having reviewed the Supreme Court's opinions in both *Granfinanciera* and *Langenkamp*, this court concludes that there is no requirement that a creditor that files a claim also "knowingly, voluntarily, and intelligently" waive its jury trial right. See also *Germain*, 988 F.2d at 1330 ("[T]he right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.").

Moreover, *Mirant* appears to make a distinction between preference actions and fraudulent transfer actions. In that case, the court recognized that in *Langenkamp*, the Supreme Court held that there was no jury trial right because a preference action was "part of the process of allowance and disallowance of claims." *Mirant*, 337 B.R. at 121. However, Judge McBryde distinguished *Langenkamp* from the case before him by stating that "[t]he issue of disgorgement of an alleged voidable preference is not presented by any of the legal claims as to which [the creditor] has entitlement to a jury trial." *Id*. Instead, the debtor in *Mirant* brought a fraudulent conveyance or transfer action under 11 U.S.C. § 544(b). *Id*. at 109-10. Nevertheless, most courts do not recognize a distinction between fraudulent transfer claims and

preferential transfer claims.  First, the Supreme Court does not appear to make a distinction between fraudulent transfer actions and preference actions.  *Granfinanciera* dealt with an alleged fraudulent transfer, while *Langenkamp* dealt with an alleged preferential transfer.  See *Granfinanciera*, 492 U.S. at 36; *Langenkamp*, 498 U.S. at 42-43.  Second, Section 502(d) deals with both preferential transfer and fraudulent conveyance actions.  See *Germain*, 988 F.2d at 1327.  Finally, many courts have applied *Langenkamp* in the context of fraudulent transfer claims.  See *In re Crown Vantage*, 2007 WL 172321 at *3; *In re Washington Manufacturing Company*, 133 B.R. at 117; *In re B&E Sales Company, Inc.*, 129 B.R. at 136-37.

The second case relied on by the plaintiff is *Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 WL 5873806 (S.D.N.Y. Nov. 23, 2011).  In that case, the trustee sought a jury trial on its fraudulent transfer claims against the defendants, who had submitted a claim in the bankruptcy court.  *Id*. at *2 & n.1.  The court held that the trustee was entitled to a jury trial, notwithstanding the defendant creditor's claims.  *Id*. at *2.  Judge Rakoff justified his decision on the grounds that the court had granted the defendants' motion to withdraw the reference of the adjudication of the fraudulent transfer proceeding.  *Id*.  He argued that this "substantially sever[ed]" the trustee's fraudulent transfer action from both "the claims allowance process and the hierarchical reordering of creditors' claims."  *Id*.  "Put differently, adjudication of the

Trustee's fraudulent transfer claims occurs here apart from the larger regulatory scheme Congress has enacted for 'allowance and disallowance' of claims." *Id*.

However, the court is not persuaded that it should follow *Picard*. First, *Picard* does cite *Germain* for the statement that "neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed." 988 F.2d at 1330. However, *Picard* fails to recognize that the *Germain* opinion expressly cites *Langenkamp* and preference actions as an example where a debtor's claim would be part of the "claims-allowance process." See *id*. at 1327. *Picard* also fails to recognize that Section 502(d) seems to make preference and fraudulent conveyance actions necessarily integral to this process. See *Picard*, 2011 WL 5873806 at *1-3. Finally, *Picard* argues that the adjudication of the fraudulent transfer claim is "substantially sever[ed]" from the claims-allowance process because of the defendants' granted motion to withdraw the reference under 28 U.S.C. § 157(d). *Id.* at *2. However, the court provides no legal citation to support this position, and other courts that have granted motions to withdraw the reference have still found that *Langenkamp* applies. See *In re Crown Vantage*, 2007 WL 172321 at *1.

## B. Application

In this case, the black-letter law of *Langenkamp* seems to indicate that the plaintiff's right to a jury trial has been extinguished. The defendants have filed proofs

of claim in the bankruptcy court.  Motion at 21.  The plaintiff has brought fraudulent transfer claims against the defendants.  *Id*. at 22.  The defendants argue that, under Section 502(d), the bankruptcy court must "disallow any claim of any entity from which property is recoverable" as a fraudulent transfer.  *Id*.  Because of Section 502(d), the fraudulent transfer actions become "integral to the restructuring of the debtor-creditor relationship" and "part of the claims-allowance process which is triable only in equity."  See *Langenkamp*, 498 U.S. at 44-45.  As a result, the jury trial right is extinguished.  *Germain*, 988 F.2d at 1330.

However, the plaintiff argues that, notwithstanding *Langenkamp*, its fraudulent transfer claims are separate enough from the general claims allowance process that it is entitled to a jury trial.  First, the plaintiff notes that it is trustee for a litigation trust that has been given certain causes of action against the defendants; Idearc itself is not bringing these claims.[2]  Plaintiff's Response to Defendants' Motion to Strike Plaintiff's Demand for a Jury Trial and Brief in Support ("Response") at 16 (docket entry 123).  However, the litigation trust acts as the "representative and successor in interest to the Debtors and the Estates for all purposes."  Motion at 8.  Because the trust stands in the shoes of the debtor, it cannot have a greater or lesser right to a jury trial than the original debtor.

---

[2]       In its response, the plaintiff refers to Idearc post-confirmation by its new name:  SuperMedia, Inc.  Response at 6.  For the sake of clarity, the court will continue to refer to it as Idearc.

Second, the plaintiff argues that Idearc cannot invoke Section 502(d), because both the causes of action as well as the defenses to the claims were transferred to the litigation trust under the confirmed plan of reorganization.  Response at 16 ("[Idearc] thus does not have the right to assert §502(d) as a counterclaim or as a defense to Verizon's claim in the [Idearc] bankruptcy.").  However, the mandatory language of Section 502(d) suggests that Idearc could not lose any rights to object to the proofs of claim under Section 502(d).  Section 502(d) states that a court "*shall* disallow any claim of any entity from which property is recoverable" as a fraudulent transfer.  *Id*. (emphasis added); see also *Germain*, 988 F.2d at 1327 ("Under the Bankruptcy Code a court *must* disallow any claim of any entity from which property is recoverable because of a preferential transfer or fraudulent conveyance.") (emphasis added) (internal quotations omitted).  Moreover, Idearc itself has argued in the bankruptcy case that Verizon's pending proofs of claim must be disallowed under Section 502(d). Motion at 22.

Third, the plaintiff argues that *Langenkamp* is "limited to the situation where the bankruptcy court determines the creditor's claim."  Response at 18.  However, the court has not found anything in the text of the *Langenkamp* decision that provides support for this statement, and the plaintiff has provided no direct legal citation for this position.  Moreover, in *In re Crown Vantage*, the court struck the jury demand

under *Langenkamp*, even though it was unclear at that point whether the claim would be heard in the district court or the bankruptcy court.  2007 WL 172321 at *3.

Finally, the court is not persuaded by the plaintiff's case citations to *Mirant* and *Picard*.  As was explained earlier, the court does not agree with certain aspects of *Mirant's* and *Picard's* interpretations of the law in this area.  See *supra* II.A.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion to strike the plaintiff's jury demand is **GRANTED**.

**SO ORDERED**.

March 21, 2012.

A. JOE FISH
**Senior United States District Judge**

- 14 -