UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust,<br><br>          Plaintiff,<br><br>VS.<br><br>VERIZON COMMUNICATIONS INC., ET AL.,<br><br>          Defendants. | CIVIL ACTION NO.<br><br>3:10-CV-1842-G |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion for partial summary judgment (docket entry 282) filed by the defendants Verizon Communications Inc. ("Verizon") and Verizon Financial Services, LLC ("VFS"). For the reasons set forth below, this motion is denied.[1]

---

[1] In addition, the plaintiff's motion to strike the evidence filed in support of the defendants' motion for partial summary judgment (docket entry 397) is **DENIED** as moot.

I. BACKGROUND

This case deals with claims arising out of a large spin-off transaction. The plaintiff is U.S. Bank National Association ("U.S. Bank"), acting as litigation trustee of the Idearc Inc. *et al.* Litigation Trust. Plaintiff's Amended Complaint and Jury Demand (Filed Under Seal) ("Complaint") at 1 (docket entry 216). The defendants are Verizon, GTE Corporation ("GTE"), John W. Diercksen ("Diercksen"), and VFS. *Id.* This motion for partial summary judgment has been brought by Verizon and VFS. Defendants Verizon Communications Inc.'s and Verizon Financial Services LLC's Partial Motion for Summary Judgment ("Motion") at 1 (docket entry 282).

The court has already set forth the general factual background of this case. Memorandum Opinion and Order of September 19, 2011 ("September 19, 2011 Memorandum") at 1-5 (docket entry 106); *see also* Memorandum Opinion and Order of July 31, 2012 ("July 31, 2012 Memorandum") at 1-5 (docket entry 469). The plaintiff filed its original complaint on September 15, 2010. Plaintiff's Original Complaint (docket entry 1). On February 17, 2012, the plaintiff filed its amended complaint. Complaint at 1. This amended complaint asserts eleven causes of action. *Id.* ¶¶ 32-133. This motion for partial summary judgment deals with four of these causes of action. Motion at 1. Counts 1, 2, and 5 are to recover against Verizon and VFS for transfers alleged to be fraudulent under Texas Business and Commerce Code §§ 24.005, 24.006, and 24.008, and 11 U.S.C. §§ 544(b) and 550. Complaint ¶¶ 32-

43 & 49-58.[2]  Count 7 is to recover against Verizon for transfers alleged to be fraudulent under 11 U.S.C. §§ 548 and 550.  *Id*. ¶¶ 69-75.

Verizon and VFS move for partial summary judgment on these claims. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a), (c)(1).  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

---

[2]  Parts of the plaintiff's claims under Counts 1 and 2 were recently dismissed by the court.  *See* July 31, 2012 Memorandum.

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## II.  ANALYSIS

### A.  The Plaintiff's Fraudulent Transfer Claims under Section 544(b) (Counts 1, 2 and 5)

In Counts 1, 2, and 5 of the complaint, the plaintiff brought fraudulent transfer claims against Verizon and VFS under 11 U.S.C. § 544(b). These litigation rights were given to the plaintiff by the Idearc bankruptcy estate in Idearc's bankruptcy plan of reorganization. *See* Complaint ¶ 30 (alleging that the plaintiff is "designated as the Debtors' and the Estates' representative and the successor in interest to the Debtors and the Estates for all purposes with respect to all Litigation Trust Rights, including, without limitation, the commencement, prosecution,

settlement and collection thereof"); *see also* 11 U.S.C. § 1123(b)(3)(B) (stating that a bankruptcy plan "may . . . provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest") (internal punctuation and subdivisions omitted).

1. *Legal Standard*

A bankruptcy trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law *by a creditor holding an unsecured claim that is allowable*[.]" 11 U.S.C. § 544(b)(1) (emphasis added). This means that a bankruptcy trustee's rights to avoid a fraudulent transfer "are derivative of an actual unsecured creditor's rights." *Smith v. American Founders Financial Corporation*, 365 B.R. 647, 659 (S.D. Tex. 2007). As the Fifth Circuit has explained,

> "If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use § 544(b) to step into the shoes of that creditor and 'avoid' the debtor's transfer. Although the cause of action belonged to one creditor, any property the trustee recovers becomes estate property and is divided *pro rata* among all general creditors. The trustee may recover the full extent of the fraudulently transferred property on the basis of one creditor's claim. In other words, an entire transfer may be set aside even though the creditor's claim is nominal."

*Matter of Mirant Corporation*, 675 F.3d 530, 534 (5th Cir. 2012) (quoting *In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010)) (emphasis removed).

To recapitulate, a bankruptcy trustee can bring a fraudulent transfer action under Section 544(b) only if there is a "triggering" unsecured creditor that could have brought such an action when the bankruptcy petition was filed. If such a triggering creditor exists, then the bankruptcy trustee can set aside the entire fraudulent transfer, for the benefit of all unsecured creditors, even if the triggering creditor's claim was nominal.

### 2. *The Possible Triggering Creditors*

In this case, there are three different groups of possible triggering creditors: (1) plaintiff beneficiary unsecured creditors; (2) non-plaintiff beneficiary unsecured creditors whose claims existed after the spin-off; (3) non-plaintiff beneficiary unsecured creditors whose claims existed before the spin-off. Because the court concludes that there was a triggering creditor, the plaintiff can bring its Section 544(b) fraudulent transfer claims against the defendants.

#### (a) <u>Plaintiff beneficiary unsecured creditors</u>

First, the plaintiff argues that Idearc's original banks and bondholders could have brought fraudulent transfer claims on the date Idearc filed its bankruptcy petition. Plaintiff's Brief in Opposition to Defendants Verizon Communications Inc.'s and Verizon Financial Services LLC's Partial Motion for Summary Judgment ("Plaintiff's Brief") at 1 (docket entry 317). In response, the defendants argue that the banks and bondholders could not have brought such claims, because they were

estopped by ratification of the transfers. Defendants Verizon Communications Inc.'s and Verizon Financial Services LLC's Memorandum in Support of Partial Motion for Summary Judgment ("Defendants' Brief") at 15 (docket entry 283). Verizon and VFS note that Idearc's banks and bondholders "made loans to Idearc for the express purpose of financing Idearc's acquisition of Verizon's yellow pages business." *Id*. at 1. Under the terms of the spin-off agreement, these lenders "required" that their loans to Idearc be used to pay Verizon for the yellow pages business. *Id*. Verizon and VFS argue that this precludes the Idearc banks and bondholders from being triggering creditors under Section 544(b).

"A creditor who ratifies or participates in a fraudulent transfer may be estopped from attacking the transfer." *In re Dunn*, Nos. CC-05-1406-MoSnK, CC-06-1046-MoSnK, 2006 WL 6810930, at *8 (B.A.P. 9th Cir. Oct. 31, 2006); see also *Lane v. Eggleston*, 284 F. 743, 745 (5th Cir. 1922) (stating that a creditor cannot "avoid [a transfer], after he has voluntarily assented to it"). In one case, the lender was "intimately involved" and had "voluntarily participated" in the alleged fraudulent transfer. *In re Refco, Inc. Securities Litigation*, No. 09-Civ-2885-GEL, 2009 WL 7242548, at *11 (S.D.N.Y. Nov. 13, 2009). The court held that that lender "cannot be the triggering creditor, because it was a material participant in the alleged fraudulent transaction . . . [F]raudulent transfers [are] not voidable where the benefit

would run to a creditor that ratified the transfer." *Id*. (internal citations and punctuation omitted).

Because of their participation in the alleged fraudulent transfers, Idearc's banks and bondholders would have been barred from bringing fraudulent transfer claims on the date Idearc filed its bankruptcy petition. As the defendants note, the banks and bondholders "not only *knew* that their loans would be used to pay Verizon; they not only *consented* that their loans be used to pay Verizon; they *required* that their loans be used to pay Verizon." Defendants' Brief at 1 (emphasis in original).

However, the plaintiff contends that the banks and bondholders were "duped" or "tricked" by the defendants. The plaintiff insists that they did not actually ratify the transfer from Idearc to Verizon because they lacked "full knowledge" of the nature of the spin-off. *See* Plaintiff's Brief at 23-24. This argument is unpersuasive. There is no dispute that Idearc's banks and bondholders did have "full knowledge" of the transfers from Idearc to Verizon. Indeed, the banks and bondholders themselves required Idearc to make those transfers. *See generally* Defendants' Brief at 2-7. Because Idearc's lenders and bondholders had full knowledge of the transfers from Idearc to Verizon, they could not have brought fraudulent transfer claims at the time Idearc filed for bankruptcy.

The plaintiff urges that even if the banks and bondholders did know about the transfers, they were still "duped" or "tricked" about the substance of Idearc and the

spin-off. This argument, however, is irrelevant. The plaintiff's claims are for fraudulent transfers, not for fraud. As the court has already explained, "fraud is simply not an aspect of a fraudulent transfer claim." July 31, 2012 Memorandum at 24.

The plaintiff also argues that even if the original Idearc lenders were subject to ratification and estoppel defenses, those defenses were personal and did not apply to the bondholders that subsequently purchased Idearc debt and held that debt at the time of Idearc's Chapter 11 filing. Plaintiff's Brief at 25. However, because these transfers were public information, these subsequent purchasers knew or should have know about the transfers from Idearc to Verizon. "Future creditors may not complain when they knew or could easily have found out about the transaction." See *Kupetz v. Wolf*, 845 F.2d 842, 849-50 & n.16 (9th Cir. 1988). "Because fraudulent conveyance statutes were designed to protect creditors from secret transactions by debtors, the same rules should not apply when the transaction is made public." *Id*. (emphasis omitted).

As a result, because Idearc's banks and bondholders could not have brought fraudulent transfer claims at the time of the Idearc bankruptcy filing, they cannot be the plaintiff's Section 544(b) triggering creditor. However, "[w]hile such estoppel will generally be fatal to the trustee's chances if that creditor is the only creditor who may have rights of avoidance, if there are other creditors, the estoppel or the barring

of one will not affect the trustee's right to proceed." COLLIER ON BANKRUPTCY ¶ 544.06[3] (16th ed. 2012). Thus if there was an unsecured creditor who had a fraudulent transfer claim on date of the filing of the bankruptcy petition, the bankruptcy estate is permitted to use the fraudulent transfer statutes to recover the full extent of the fraudulently transferred property.

(b) <u>Non-plaintiff beneficiary unsecured creditors whose claims existed after the spin-off</u>

The plaintiff argues that there were "many" other unsecured creditors of Idearc that extended credit to Idearc after the spin-off, and that their claims were allowed under Idearc's plan. Plaintiff's Brief at 19. However, these unsecured creditors could not act as the "triggering" creditor because these creditors either knew or should have known about the transfers from Idearc to Verizon. *Kupetz*, 845 F.2d at 849-50 & n.16.

(c) <u>Non-plaintiff beneficiary unsecured creditors whose claims existed before the spin-off</u>

Finally, the plaintiff points to Sean Ryan ("Ryan") as an unsecured creditor of Idearc whose claim existed before the Spin-Off, and who would have been entitled to bring a fraudulent transfer claim at the time of Idearc's Chapter 11 filing.[3] Plaintiff's Brief at 21. Ryan was an employee of what became known as Idearc Media Sales --

---

[3] The plaintiff also states that "there [we]re likely more" unsecured creditors of Idearc that possessed claims that accrued before the Spin-off. Plaintiff's Brief at 3 n.2, 21. Because the plaintiff provides no information or evidence on these other unsecured creditors, they cannot be the plaintiff's "triggering" creditor.

West, Inc., which was one of the debtors in "Idearc's consolidated bankruptcy." *Id*. at 21 & n.71. He was fired from Idearc in March of 2006, eight months before the spin-off. *Id*. He sued for wrongful termination, and in March of 2008, Ryan won a judgment in his favor. *Id*. The plaintiff states that "[i]n the bankruptcy, (a) the debtors acknowledged that Ryan was a prepetition 'creditor of the Debtors' and (b) Ryan filed two identical proofs of claim against Idearc" by virtue of his lawsuit. *Id*. at 21-22. One of these claims, worth $1,437,530.03, was allowed as a general unsecured claim. *Id*. at 22. "Mr. Ryan's claim was subsequently allowed as a 'Class 4 General Unsecured Claim,' which encompassed claims 'against any of the Debtors,' including Idearc Media Sales -- West, Inc." Reply of Verizon Communications Inc. and Verizon Financial Services, LLC in Support of Partial Motion for Summary Judgment ("Defendants' Reply") at 8 n.7 (docket entry 343). The plaintiff claims that Ryan would have been entitled to bring a fraudulent transfer claim at the time of the Idearc bankruptcy, which means that the plaintiff (standing in the Idearc estate's shoes) can bring these claims now.

      The defendants counter that Ryan did not have a fraudulent transfer claim in March of 2009 because he was not a creditor of any of the Idearc companies that allegedly made the transfers. Defendants' Reply at 8. Instead, he was a creditor of Idearc Media Sales -- West, Inc., which was not involved in the transfers to Verizon. *Id*. The defendant notes that, in at least one case, courts will pay close attention to

whether fraudulent transfer claims are being brought for the benefit of creditors of a parent corporation or creditors of a subsidiary corporation.  See Defendants' Reply at 8; *Adelphia Recovery Trust v. Bank of America*, 390 B.R. 80 (S.D.N.Y. 2008), *aff'd*, 379 Fed. App'x 10 (2d Cir. 2010), *cert. dism'd*, __ U.S. __, 131 S.Ct. 896 (2011).

However, in *Adelphia*, the court stated that "[t]he Joint Plan treats each Debtor, among both the Subsidiary Debtors and the Parent Debtors, as a separate entity, recognizing that each debtor has its own creditors, assets and liabilities." *Id*. at 87.  Moreover, the bankruptcy judge in *Adelphia* "emphasized the separateness of individual debtors under the plan, and the improbability of any future substantive consolidation of the claims and assets of different entities[.]" *Id*.

In this case, the parties and the bankruptcy court do not appear to have carefully observed the corporate distinctions among the various Idearc debtors.  See Defendant's Reply at n.7.  As a result, *Adelphia* is inapposite.  Therefore, Ryan would have been able to bring a fraudulent transfer claim when Idearc filed for bankruptcy.  Since Ryan was the requisite "triggering" creditor, the plaintiff, standing in Idearc's shoes, can bring its fraudulent transfer claims under *Mirant* and Section 544(b).

### 3.  *The Defendants' Arguments*

The defendants present three arguments as to why the plaintiff is not entitled to bring its fraudulent transfer claims under Section 544.  The court concludes that

each of these arguments fail. As a result, the defendants' motion for summary judgment on Counts 1, 2, and 5 must be denied.

(a) <u>U.S. Bank standing in the shoes of the banks and bondholders</u>

In their reply in support of the motion for partial summary judgment, Verizon and VFS argue that plaintiff is "standing in the shoes of the sophisticated financial institutions that knowingly funded the Spin-Off." Reply at 2. However, the plaintiff is actually standing in the shoes of the Idearc estate itself. The complaint alleges that the plaintiff is "designated as the Debtors' and the Estates' representative and the successor in interest to the Debtors and the Estates for all purposes with respect to all Litigation Trust Rights, including, without limitation, the commencement, prosecution, settlement and collection thereof." Complaint ¶ 30. Moreover, the defendants have repeatedly argued at other points in this case that the plaintiff is standing in Idearc's shoes. *See* Defendants Verizon Communications Inc., Verizon Financial Services LLC, GTE Corporation, and John W. Diercksen's Motion to Strike Plaintiff's Demand for a Jury Trial and Brief in Support at 10 (docket entry 89) ("The Jury Waivers are enforceable against Plaintiff because Plaintiff brings its claims standing in the Idearc Parties' shoes[.]"); Defendants Verizon Communications Inc., Verizon Financial Services LLC, GTE Corporation, and John W. Diercksen's Partial Motion to Dismiss Amended Complaint and Brief in Support at 16 (docket entry 178) ("Plaintiff is the successor to Idearc. It stands in the shoes of Idearc[.]").

- 13 -

As a result, the plaintiff stands in the shoes of the Idearc bankruptcy estate under Section 1123(b)(3)(B). Because the Idearc bankruptcy estate was entitled to stand in Ryan's shoes under Section 544(b), the plaintiff can bring its fraudulent transfer claims against the defendants.

(b) <u>Recovery not for the benefit of the estate</u>

The defendants also maintain that the plaintiff cannot recover under the fraudulent transfer claims under 11 U.S.C. 550(a) because the recovery will not be for the benefit of the estate. Under Section 550(a), "to the extent that a transfer is avoided under section 544 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property[.]" Moreover, the Fifth Circuit recently stated in *Mirant*, 675 F.3d at 534 (emphasis in original):

> "The fraudulent transfer injured the estate and § 550 ensures that the injury is redressed because a trustee may only avoid a transfer *to the extent it benefits the estate*."

The defendants argue that there would be no benefit to the estate from plaintiff's recovery because confirmation of the plan of reorganization extinguished the Idearc bankruptcy estate. Defendants' Reply at 4. If this argument were accepted at face value, it would mean that fraudulent transfer claims could never be brought once a bankruptcy plan had been confirmed. This would destroy the purpose behind Section 1123(b)(3)(B), which "authorizes post-confirmation pursuit of a debtor's causes of action." See *Mirant*, 675 F.3d at 534. It would also "contravene the

Bankruptcy Code's goal of quick and equitable reorganization." *Id*. (internal citations omitted). As a result, the court must read the phrase "estate" broadly, to include those standing in the shoes of the bankruptcy estate.

The defendants also aver that the plaintiff cannot recover because Ryan, the "triggering" creditor in this case, is not a beneficiary of the litigation trust. They note that Ryan's claims against Idearc had been satisfied "long ago." Defendants' Reply at 9. This is irrelevant, because "a trustee's right to avoid a transfer is tested at the petition date." *Mirant*, 675 F.3d at 534. Since Ryan had a fraudulent transfer claim at the petition date, the Idearc estate would have been able to bring these claims during the bankruptcy proceeding itself. As a result, the plaintiff can bring these claims now.

(c) <u>A mockery of justice</u>

Finally, the defendants argue that allowing the plaintiff to recover under the fraudulent transfer claims would be a "mockery of justice." Defendants' Reply at 2, 6. See *Whiteford Plastics Company v. Chase National Bank of New York City*, 179 F.2d 582, 584 (2nd Cir. 1950) (quoting *In re J.C. Winship*, 120 F. 93, 96 (7th Cir. 1903)). They note that the Idearc banks and bondholders are essentially getting to benefit from fraudulent transfer claims that they themselves could not have been brought.

As appealing as the defendants' argument may be, the court cannot ignore clearly established legal rules of general applicability simply to achieve or avoid a

particular result.  *See* July 31, 2012 Memorandum at 15-16 (declining the plaintiff's invitation to use the court's "equitable jurisdiction" and 11 U.S.C. § 105 to circumvent the law).  Moreover, many courts have indicated a willingness to condone similar outcomes.  See *In re Musicland Holding Corporation*, 424 B.R. 95, 98-99 &102-03 (Bankr. S.D.N.Y. 2010) (permitting a $35 million transfer to be set aside on the basis of a $500 triggering claim); see also *Mirant*, 675 F.3d at 534 ("[A]n entire transfer may be set aside even though the [triggering] creditor's claim is nominal.").

### B.  The Plaintiff's Fraudulent Transfer Claim Under Section 548 (Count 7)

The plaintiff has also brought a fraudulent transfer claim under 11 U.S.C. § 548 against Verizon in Count 7 of its complaint.  Complaint ¶¶ 69-75.  For this claim, the plaintiff is attempting to recover as a fraudulent transfer the interest payments that Idearc made within two years of Idearc filing its bankruptcy petition. *Id*.  The complaint alleges that these interest payments were for more than $1,000,000,000. *Id*. ¶ 70.

While there are many similarities between Sections 544(b) and 548, the bankruptcy trustee's power under these two provisions is not identical.  Under Section 544(b), the bankruptcy trustee's ability to avoid transfer comes from the existence of a "triggering" creditor that could have brought a state law fraudulent transfer claim at the time of the filing of the bankruptcy petition.  In contrast, there is no requirement that there be such a "triggering" creditor at all.  Instead, Section 548

is a simple grant of power to the bankruptcy trustee to avoid transfers under certain circumstances. Verizon's ratification and estoppel arguments concerning the Idearc banks and bondholders are irrelevant under Section 548. Therefore, the defendants' motion for summary judgment on Count 7 must be denied.

The defendants also argue that the plaintiff cannot recover for Idearc's interest payments because Verizon was not the initial transferee, or the entity for whose benefit the payments were made. Defendants' Brief at 18; Defendants' Reply at 7-9. The parties have discussed this issue in greater depth in the briefing on the Verizon defendants' consolidated motion for summary judgment. As a result, the court will defer consideration of this argument at this time.

### III.  CONCLUSION

For the reasons stated above, Verizon and VFS' motion for partial summary judgment is **DENIED**.

**SO ORDERED**.

August 6, 2012.

_____
**A. JOE FISH
Senior United States District Judge**