UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| VS. | ) | 3:10-CV-1842-G |
| VERIZON COMMUNICATIONS INC., ET AL., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the plaintiff's second motion for partial summary judgment (docket entry 378).[1] For the reasons set forth below, this motion is granted in part and denied in part.

---

[1] The plaintiff's motion and brief to strike evidence filed in opposition to the plaintiff's second motion for partial summary judgment (docket entry 436) is **DENIED** as moot. The plaintiff's unopposed motion for leave to file supplemental appendix in support of the plaintiff's motions to strike defendants' summary judgment evidence and brief in support (docket entry 482), to the extent that it applies to docket entry 436, is also **DENIED** as moot.

## I. BACKGROUND

This case deals with claims arising out of a large spin-off transaction. The plaintiff is U.S. Bank National Association ("U.S. Bank"), acting as litigation trustee of the Idearc Inc. *et al.* Litigation Trust. The defendants are Verizon Communications Inc. ("Verizon"), GTE Corporation ("GTE"), John W. Diercksen ("Diercksen"), and Verizon Financial Services LLC ("VFS") (collectively, the "defendants"). The court has already set forth the general factual background of this case. Memorandum Opinion and Order of September 19, 2011 (docket entry 106).

### A. Relevant Factual Background

In October of 2006, Verizon's board of directors approved the Idearc spin-off. Plaintiff's Brief in Support of its Second Motion for Partial Summary Judgment ("Plaintiff's Brief") ¶ 4 (docket entry 379). On October 31, 2006, Diercksen, as Idearc's sole director, approved the spin-off and authorized Idearc to undertake the necessary actions to effectuate the spin-off. *Id*. ¶ 6.

On November 15, 2006, Donald B. Reed ("Reed") and Thomas S. Rogers ("Rogers") signed written consents that stated that they adopted the resolutions attached to the consents. *Id*. ¶ 7. The consents specifically ratified "all of the actions taken or to be taken by the officers of [Idearc] in executing and delivering the agreements, documents, and other instruments related to the Spin-off." *Id*. ¶ 9.

These consents were signed before Reed and Rogers were officially appointed as members of Idearc's board of directors. *Id*. ¶¶ 7-8.

On November 16, 2006, Diercksen appointed Reed, Rogers, and three other individuals to the Idearc board of directors. *Id*. ¶ 8. Diercksen then immediately resigned. *Id*. Following their formal appointment, the three other new Idearc directors executed the same written consents that Reed and Rogers had signed the day before. *Id*. ¶ 9.

Under Idearc's bylaws, the board of directors may only take action without a meeting by unanimous written consent. *Id*. ¶ 9. The plaintiff argues that Reed's and Rogers' written consents are a nullity because they were signed before Reed and Rogers became members of the Idearc board of directors. See *id*. ¶ 3. Moreover, because neither Reed nor Rodgers gave written consent to the ratification of the spin-off after November 15, 2006, at a time when they actually were directors, the plaintiff maintains that the board never formally ratified the spin-off. *Id*. ¶ 10.

B. Procedural Background

The plaintiff has moved for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[2]

---

[2] Disposition of a case through summary judgment "reinforces the (continued...)

A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a

---

[2](...continued)
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## II. ANALYSIS

### A. Legal Standard

Under Delaware law,[3] "any action required or permitted to be taken at any meeting of the board of directors or of any committee thereof may be taken without a meeting if all members of the board or committee, as the case may be, consent thereto in writing." 8 DEL. CODE § 141(f). That is, board "[a]ction by written consent requires unanimity of the entire board." *Solstice Capital II, Limited Partnership v. Ritz*, No. Civ.A. 278-N, 2004 WL 765939, at *1 (Del. Ch. Apr. 6, 2004).

"[O]nly the lawful *de jure* board of directors . . . [is] empowered to take . . . action, either at a meeting or by unanimous written consent." *AGR Halifax Fund, Inc. v. Fiscina*, 743 A.2d 1188, 1195 (Del. Ch. 1999). Moreover, individuals who have not yet been elected to a corporation's board of directors cannot act as directors, as

[3] The court applies Delaware law because Idearc was incorporated in Delaware. Plaintiff's Brief ¶ 16.

"they have neither the statutory power under [8 Del. Code] § 141(a) to do so, nor the weight of fiduciary responsibility which accompanies that power." See *id*. at 1194-95. Therefore, actions taken by individuals that are not members of a corporation's board of directors are a nullity. *Id*. This is true even if these individuals are subsequently appointed as members of the board of directors. See *id*. at 1194. ("Surely no one would seriously contend that [such an action] -- a nullity from the outset -- would suddenly become legally valid and effective if (and when) its adopters are elected as directors one week later.").

B. Application

In this case, the plaintiff urges that the Idearc board of directors appointed at the time of the spin-off never formally ratified the spin-off. The plaintiff bases this argument on the fact that Reed and Rogers signed their consent forms before they were members of the Idearc board and never signed any sort of ratification after they actually became members of the board.

In response, the defendants contend that Reed and Rogers signed the written consents on November 15, 2006, intending that the signed consents would be "held" until they were actual members of the Idearc board. Brief in Support of Defendants' Joint Response to Plaintiff's Second Motion for Partial Summary Judgment ("Defendants' Brief") at 7-8 (docket entry 423). In particular, the defendants aver Reed "testified . . . that his signature was to be *held* by outside counsel until the

appropriate time" (emphasis in original). *Id*. at 7 (internal quotations omitted). However, Reed apparently also testified that this signature was not held "in escrow." Plaintiff's Brief at 7; Defendants' Brief at 8. It is not clear to the court how to reconcile these two pieces of Reed's testimony. Moreover, the parties have provided no evidence at all about what Rogers thought he was signing on November 15, 2006.

In any event, the defendants have not directed the court to any Delaware law suggesting that Reed's and Rogers' actions on November 15, 2006, before they were board members, could be carried forward to November 16, 2006. The defendants insist that "[n]othing in the statute precludes boards from following the standard corporate practice of gathering signature pages in advance of the closing of a major transaction." Defendants' Brief at 2. However, there is a distinction between corporate directors signing pages in advance of a corporate action, and individuals who are *not* corporate directors signing pages in advance of a corporate action. The Delaware Court of Chancery's decision in *AGR Halifax Fund* seems to support this position. *See* 743 A.2d at 1194-95.

It follows that the Idearc resolution ratifying the spin-off was not properly accomplished under Delaware law and is therefore void as a matter of law.

The defendants also argue that Idearc impliedly ratified the spin-off through its subsequent conduct. Defendants' Brief at 10. Because this issue was not raised by

the plaintiff in its motion for partial summary judgment, the court will not decide the matter at this time.

## III. CONCLUSION

For the reasons stated above, the plaintiff's second motion for partial summary judgment is **GRANTED** in part and **DENIED** in part. The court **CONCLUDES** that the new Idearc board's November 16, 2006 resolution is invalid as a matter of law. However, the court does not decide the issue of whether the new Idearc board approved or ratified the actions taken by Idearc's officers to effect the spin-off. Furthermore, the court does not decide the issue of whether the defendants' affirmative defense of ratification fails as a matter of law.

**SO ORDERED**.

August 8, 2012.

A. Joe Fish

**A. JOE FISH**
**Senior United States District Judge**