**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc., *et al.* Litigation Trust, <br><br> *Plaintiff*, <br><br> v. <br><br> VERIZON COMMUNICATIONS INC., VERIZON FINANCIAL SERVICES LLC, GTE CORPORATION, and JOHN W. DIERCKSEN, <br><br> *Defendants*. | CIVIL ACTION NO. <br><br> 3:10-CV-1842-G <br><br> ECF |

**DEFENDANTS' JOINT CONSOLIDATED RESPONSE TO PLAINTIFF'S RESPONSE
TO ORDER TO SHOW CAUSE, AND RESPONSE TO
PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

GLOSSARY OF ABBREVIATIONS OF  CITED DECISIONS AND PLEADINGS .............. vii

INTRODUCTION AND SUMMARY ..........................................................................1

ARGUMENT .........................................................................................................3

I.     THE COURT'S VALUATION FINDING REQUIRES JUDGMENT FOR
       DEFENDANTS ON EACH OF THE REMAINING CLAIMS...........................................3

       A.     Actual and Constructive Fraudulent Transfer Claims Arising From the
              Spin-Off (Counts 1 and 2)........................................................................ 3

       B.     Breach of Fiduciary Duty and Aiding and Abetting Claims (Counts 3
              and 4) ..................................................................................................... 6

       C.     Actual and Constructive Fraudulent Transfer Arising From Specific
              Steps of the Spin-Off (Counts 5 and 6)...................................................... 8

       D.     Unlawful Dividend Claim (Count 8) .......................................................... 9

       E.     Promoter Liability Claim (Count 9)............................................................ 10

       F.     Alter Ego Claim (Count 11)...................................................................... 12

II.    THE COURT SHOULD DENY PLAINTIFF'S REQUESTS FOR
       RECONSIDERATION .............................................................................................12

       A.     Plaintiff Has Not Met the Stringent Standards for Reconsideration.................... 12

       B.     The Court's Prior Rulings Were Correct ......................................................... 15

              1.     The Court Correctly Ruled that Idearc's Surplus on November
                     17, 2006 Defeats Plaintiff's Unlawful Dividend Claim ............................ 16

              2.     The Court Correctly Ruled that Idearc Was a Wholly Owned
                     Subsidiary of Verizon at All Times Before the Spin-Off ......................... 18

              3.     The Court Correctly Dismissed Plaintiff's Alter Ego Claim..................... 21

       C.     Plaintiff's Challenges to Idearc's Corporate Actions Are Barred by
              Laches ..................................................................................................... 22

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Aetna Life Ins. Co. v. Kaufman Indep. Sch. Dist.*, No. CIV. A. 3:99-1085-G,
2000 WL 284194 (N.D. Tex. Mar. 15, 2000) ......................................................2

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216
(C.D. Cal. 2012) ..................................................................................................5

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171 (Del. 1988) ......1, 6, 11, 18, 19

*Arrieta v. Yellow Transp., Inc.*, Civ. A. No. 3:05-2271-D, 2009 WL 129731
(N.D. Tex. Jan. 20, 2009) ..................................................................................13

*ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49 (Bankr. S.D. Tex. 2007) ............................22

*Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971) ......................................11

*Belle Isle Corp. v. MacBean*, 61 A.2d 699 (Del. Ch. 1948) ........................................19

*Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st Cir. 2000) ..................................10

*Bovay v. H.M. Byllesby & Co.*, 12 A.2d 178 (Del. Ch. 1940) ........................................12

*Brandner Corp. v. Stelnick*, C.A. No. 14463, 1996 WL 82461
(Del. Ch. Feb. 22, 1996) ....................................................................................20

*CAPM Corp. Advisors AB v. Protegrity, Inc.*, No. C.A. 18676-NC,
2001 WL 1360122 (Del. Ch. Oct. 30, 2001) ......................................................21

*CNL-AB LLC v. Eastern Prop. Fund I SPE (MS Ref) LLC*, C.A. No.
2011 WL 353529 (Del. Ch. Jan. 28, 2011) ........................................................24

*Danvir Corp. v. City of Wilmington*, Civ. A. No. 3404-VCP, 2008 WL 4560903
(Del. Ch. Oct. 6, 2008) ................................................................................24, 25

*Dillon v. Berg*, 326 F. Supp. 1214 (D. Del. 1971) ......................................................19

*Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550
(N.D. Tex. 2009) ................................................................................................13

*Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117
(2d Cir. 2001) ....................................................................................................10

*EBS Litig. LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302 (3d Cir. 2002) ......................17

*Elster v. American Airlines, Inc.*, 100 A.2d 219 (Del. Ch. 1953) ...................................................24

*Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998) ............................................14

*Flannery v. Carroll*, 676 F.2d 126 (5th Cir. 1982) ..................................................................14, 15

*Flerlage v. KDI Corp.*, No. Civ. A. 8007, 1986 WL 4278 (Del. Ch. Apr. 10, 1986)...................25

*Gladstone v. Bennett*, 153 A.2d 577 (Del. 1959) .......................................................................10

*International Shoe Co. v. Pinkus*, 278 U.S. 261 (1929)................................................................10

*J.R. Deans Co., In re*, 249 B.R. 121 (Bankr. D.S.C. 2000) ..........................................................5

*Jumer's Castle Lodge, Inc.*, 338 B.R. 344 (C.D. Ill. 2006) ............................................................9

*Kenyon v. Holbrook Microfilming Serv., Inc.*, 155 F.2d 913 (2d Cir. 1946)...............................20

*Kerns v. Dukes*, No. Civ. A. 1999-S, 2004 WL 766529 (Del. Ch. Apr. 2, 2004)..........................23

*Klang v. Smith's Food & Drug Ctrs., Inc.*, 702 A.2d 150 (Del. 1997)....................................16, 17

*Lincoln Gen. Ins. Co. v. Autobuses Tierra Caliente, Inc.*, Civ. A.
No. 3:04-1535-L, 2008 WL 137968 (N.D. Tex. Jan. 15, 2008) ..................................13, 15

*Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003) ......................................................................4

*Martin v. Lee*, 378 F. App'x 393 (5th Cir. 2010)........................................................................15

*McCandless v. Furlaud*, 296 U.S. 140 (1935) ..............................................................................11

*MFS/Sun Life Trust High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F.
Supp. 913 (S.D.N.Y. 1995)..................................................................................................5

*Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493 (N.D. Tex. 2011),
*aff'd*, – F.3d –, No. 11-10649, 2013 WL 656631 (5th Cir. Feb. 22, 2013). .....................14

*ML/EQ Real Estate Partnership Litig., In re*, No. Civ. A. 15741, 1999 WL 1271885
(Del. Ch. Dec. 21, 1999) ....................................................................................................23

*Morris v. Standard Gas & Elec. Co.*, 63 A.2d 577 (Del. Ch. 1949)........................................17, 18

*National Architectural Prods. Co. v. Atlas-Telecom Servs. USA, Inc.*,
No. 3:06-CV-0751-G, 2007 WL 2051125 (N.D. Tex. July 13, 2007)................................2

*Nevins v. Bryan*, 885 A.2d 233 (Del. Ch. 2005) ..........................................................................23

*Northern Assurance Co. v. Rachlin Clothes Shop, Inc.*, 125 A. 184 (Del. 1924)..........................17

*Old CarCo LLC, In re*, 435 B.R. 169 (Bankr. S.D.N.Y. 2010) ....................................................6, 8

*Old Dominion Copper Min. & Smelting Co. v. Lewisohn*, 210 U.S. 206 (1908) ..........................12

*Osborne ex rel. Osborne v. Kemp*, 991 A.2d 1153 (Del. 2010)....................................................22

*Pereira v. Cogan*, 294 B.R. 449 (S.D.N.Y. 2003) ........................................................................17

*Public Inv. Ltd. v. Bandeirante Corp.*, 740 F.2d 1222 (D.C. Cir. 1984) ......................................12

*Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc.*, 535 A.2d 1357 (Del. 1987)...............21

*Randall v. Bailey*, 23 N.Y.S.2d 173 (Sup. Ct. 1940), *aff'd*, 9 N.Y.S.2d 512
     (App. Div. 1941). .................................................................................................................17

*Rankin v. Interstate Equities Corp.*, 180 A. 541 (Del. Ch. 1935)..................................................24

*Rotella v. Mid-Continent Cas. Co.*, Civ. A. No. 3:08-0486-G, 2010 WL 1330449
     (N.D. Tex. Apr. 5, 2010).......................................................................................................13

*Shanik v. White Sewing Mach. Corp.*, 19 A.2d 831 (Del. 1941) ...................................................25

*Smith v. Universal Serv. Motors Co.*, 147 A. 247 (Del. Ch. 1929)................................................21

*SMTC Mfg. of Tex., In re*, 421 B.R. 251 (Bankr. W.D. Tex. 2009)..................................................5

*Stengel v. Rotman*, No. Civ. A. 18109, 2001 WL 221512 (Del. Ch. Feb. 26, 2001), *aff'd*
     *sub nom. Stengel v. Sales Online Direct, Inc.*, 783 A.2d 124 (Del. 2001)........................25

*SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 7 A.3d 973 (Del. Ch. 2010), *aff'd*,
     37 A.3d 205 (Del. 2011). ......................................................................................................16

*Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299 (Tex. App.—El Paso 2009) .....................5

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168 (Del. Ch. 2006), *aff'd*
     *sub nom. Trenwick Am. Litig. Trust v. Billet*, 931 A.2d 438 (Del. 2007) (table)................6

*Tronox Inc., In re.*, 450 B.R. 432 (Bankr. S.D.N.Y. 2011)...........................................................11

*Union Fin. Corp of Am. v. United Investors' Sec. Corp.*, 156 A. 220 (Del. Ch. 1931)................23

*VFB LLC v. Campbell Soup Co.*, 482 F.3d 624 (3d Cir. 2007) ......................................................7

*VFB LLC v. Campbell Soup Co.*, No. Civ. A. 02-137 KAJ, 2005 WL 2234606
(D. Del. Sept. 13, 2005) ........................................................................................5

*Vichi v. Koninklijke Philips Elecs. N.V.*, Civ. A. No. 2578-VCP, 2009 WL 4345724
(Del. Ch. Dec. 1, 2009) ........................................................................................7

*Vogtman v. Merchants' Mort. & Credit Co.*, 178 A. 99 (Del. Ch. 1935) .......................................18

*Walt Disney Co. Derivative Litig., In re*, 906 A.2d 27 (Del. 2006) ...............................................17

*Western Oil & Gas JV, Inc. v. Griffiths*, 91 F. App'x 901 (5th Cir. 2003) .....................................22

*Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 918 (W.D. Ky. 2007) .........................10

*Zeigler, In re*, 320 B.R. 362 (Bankr. N.D. Ill. 2005) ..................................................................5

## STATUTES AND RULES

11 U.S.C. § 546(e) ..............................................................................................................9

11 U.S.C. § 550 ...........................................................................................................6, 9, 10

8 Del. Code § 152 .............................................................................................................21

8 Del. Code § 153(a) .........................................................................................................21

8 Del. Code § 160(a)(1) ....................................................................................................16

8 Del. Code § 173 .............................................................................................................18

Tex. Bus. & Com. Code § 24.005(a)(2) ...........................................................................4

Tex. Bus. & Com. Code § 24.005(b) ...............................................................................5

Tex. Bus. & Com. Code § 24.005(b)(3) ...........................................................................5

Tex. Bus. & Com. Code § 24.005(b)(8) ...........................................................................5

Tex. Bus. & Com. Code § 24.005(b)(9) ...........................................................................5

Tex. Bus. & Com. Code § 24.006 .....................................................................................4

Tex. Bus. Orgs. Code § 1.102 ..........................................................................................22

Tex. Bus. Orgs. Code § 1.103 ..........................................................................................22

Tex. Bus. Orgs. Code § 1.105 ...................................................................................22

Fed. R. Civ. P. 54(b) .............................................................................................12

LR 7.2(c) .................................................................................................................1

LR 56.2(b) ...............................................................................................................2

## OTHER AUTHORITIES

1 David A. Drexler *et al.*, *Delaware Corporation Law and Practice* § 19.01 (2012) ...................16

2 *Fletcher Cyclopedia of the Law of Corporations* § 421 (2012) ..................................................19

11 *Fletcher Cyclopedia of the Law of Corporations* § 5350 (2012) .............................................16

Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 11.06[b][3] (2012 Supp.) ..................................................25

## GLOSSARY OF ABBREVIATIONS OF
## CITED DECISIONS AND PLEADINGS

| | |
|---|---|
| Dismissal Ruling | Memorandum Opinion and Order, ECF No. 469 (July 31, 2012) |
| Joint Pretrial Order | Joint Pretrial Order, ECF No. 572 (Sept. 27, 2012) |
| Mem. | Memorandum of Decision, ECF No. 646 (Jan. 22, 2013) |
| Mot. | Motion and Brief for Entry of Judgment on Admissions and Stipulated Facts, ECF No. 649 (Feb. 8, 2013) |
| Mot. App. | Plaintiff's Appendix to Motion and Brief for Entry of Judgment on Admissions and Stipulated Facts, ECF No. 649-1 (Feb. 8, 2013) |
| Resp. | Plaintiff's Brief Pursuant to Order To Show Cause, ECF No. 648 (Feb. 8, 2013) |
| Order To Show Cause | Order To Show Cause, ECF No. 647 (Jan. 22, 2013) |
| Pl.'s SJ Resp. | Pl.'s Br. in Supp. of Resp. to Mot. for Summ. J., ECF No. 430 (July 2, 2012) |
| Reconsideration Denial | Memorandum Opinion and Order, ECF No. 459 (July 25, 2012) |
| SJ Op. | Memorandum Opinion and Order, ECF No. 523 (Sept. 14, 2012) |
| Verizon Trial Br. | Verizon Defs.' Trial Br., ECF No. 539 (Sept. 21, 2012) |

## INTRODUCTION AND SUMMARY

The Court's findings that Idearc's total enterprise value "was at least $12 billion" and that Idearc "was solvent" on the date of the Spin-Off[1] — considered with the Court's earlier decisions on the motion to dismiss and for summary judgment — require entry of judgment for Defendants on all remaining claims.  The Court's finding that Idearc was solvent compels judgment for Defendants on Plaintiff's constructive fraudulent transfer claims (Counts 1, 2, 5, and 6), which Plaintiff does not attempt to defend.  The Court's finding also defeats Plaintiff's actual fraudulent transfer claims (Counts 1, 5, and 6).  The only evidence of intent Plaintiff has ever identified is the same evidence that the Court rejected in its valuation ruling.  Furthermore, Plaintiff's breach of fiduciary duty, aiding and abetting, and promoter liability claims (Counts 3, 4, and 9) all fail.  Idearc's solvency, combined with the Court's ruling that Idearc was Verizon's wholly-owned subsidiary,[2] is all that is necessary under *Anadarko*[3] to conclude that neither John Diercksen nor Verizon had fiduciary duties to Idearc separate from their duties to Verizon and its shareholders.  Finally, the Court's $12 billion valuation finding is fatal to the unlawful dividend claim (Count 8), because the valuation confirms that Idearc had more than sufficient surplus from which to declare a dividend.[4]  Nothing in Plaintiff's filings precludes entry of judgment for Defendants on all remaining causes of action.[5]

---

[1] Memorandum of Decision at 22, 66, ECF No. 646 (Jan. 22, 2013) ("Mem.").

[2] *See* Memorandum Opinion and Order at 27, ECF No. 523 (Sept. 14, 2012) ("SJ Op.").

[3] *See, e.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988).

[4] *See* SJ Op. at 48.

[5] Plaintiff's filings violate the 25-page limit on briefs in Local Rule 7.2(c).  Plaintiff purports to incorporate by reference into its 20-page response to the Order To Show Cause not only its 24-page motion for judgment, *see* Resp. at 2, but also its 21-page statement of contested facts from the Joint Pretrial Order, *see id.* at 10, 13, 16, 19, 20, and its motion for partial summary judgment and brief in support, *see id.* at 6.  Although this Court has noted that it "considers itself to be more generous than [Local Rule 7.2(c)] implies when it comes to granting leave for the filing of a brief in excess of the page limits," that "generosity . . . comes with a small caveat — *that the party must first seek permission from the court.*"  *National Architectural Prods. Co. v. Atlas-Telecom Servs.-USA, Inc.*, No. 3:06-

Plaintiff all but concedes this, and focuses instead on seeking reconsideration of the Court's rulings on the motions to dismiss and for summary judgment.  Specifically, Plaintiff seeks reconsideration of the Court's ruling that the unlawful dividend claim fails so long as Idearc had a surplus.  In addition, in an effort to avoid *Anadarko*, Plaintiff seeks reconsideration of the Court's ruling that Idearc was Verizon's wholly owned subsidiary, asserting that Verizon did not own Idearc because it allegedly was never properly formed and due to other purported infirmities in its corporate actions.  Finally, Plaintiff seeks reconsideration of the Court's dismissal of its stand-alone alter ego claim (Count 11).[6]

None of Plaintiff's arguments satisfies the strict standards for reconsideration.  Plaintiff "sets forth no newly discovered evidence and alleges no intervening change in the law," but instead simply "rehash[es] arguments previously made or rais[es] new arguments that could have been made earlier."[7]  Moreover, Plaintiff conceded in the Joint Pretrial Order that this Court's rulings on the motions to dismiss and for summary judgment had "fully resolved all th[e] contested issues of law."[8]  Plaintiff is bound by that concession.  The Court, therefore, can reject Plaintiff's request for reconsideration without reaching the merits and revisiting those issues.  In any event, Plaintiff has not identified any errors in the Court's prior rulings, which correctly interpreted and applied Delaware law.  Finally, well-established principles of laches preclude

---

CV-0751-G, 2007 WL 2051125, at *3 (N.D. Tex. July 13, 2007) (Fish, J.) (refusing to consider information on the excess pages of the over-length briefs filed without permission).  Insofar as Plaintiff asks the Court to treat its motion for judgment as a third motion for summary judgment, *see* Mot. at 2, Plaintiff has also violated Local Rule 56.2(b), which limits parties to a single such motion absent permission from the Court.  Although the Court authorized Plaintiff to file a second summary judgment motion, *see* Order, ECF No. 314 (Apr. 18, 2012), it never granted Plaintiff leave to file a third such motion.  *See Aetna Life Ins. Co. v. Kaufman Indep. Sch. Dist.*, No. Civ. A. 3:99 -1085-G, 2000 WL 284194, at *1 n.* (N.D. Tex. Mar. 15, 2000) (Fish, J.) (striking portions of a brief that raised arguments for summary judgment "not raised in [the party's authorized] motion for summary judgment").

[6] *See* Memorandum Opinion and Order at 35, ECF No. 469 (July 31, 2012) ("Dismissal Ruling").

[7] Memorandum Opinion and Order at 5, ECF No. 459 (July 25, 2012) ("Reconsideration Denial").

[8] Joint Pretrial Order at 90, ECF No. 572 (Sept. 27, 2012) ("Joint Pretrial Order").

Plaintiff from arguing at this late date that Idearc was never a properly formed corporation and that its every corporate action — before, during, and for years after the Spin-Off — was therefore invalid.

## ARGUMENT

## I.    THE COURT'S VALUATION FINDING REQUIRES JUDGMENT FOR DEFENDANTS ON EACH OF THE REMAINING CLAIMS

The Court bifurcated the trial in order to resolve a question central to all of Plaintiff's claims:  "What was Idearc's value at the time it was spun off from Verizon in November of 2006?"  Order at 2, ECF No. 504 (Aug. 22, 2012).  The Court has now resolved that question, finding that "Idearc's value was at least $12 billion on the date of the spinoff" and that its value "likely" was $12.8 billion.  Mem. at 23 & n.6; *accord id.* at 66.  The Court's finding — combined with its prior rulings — requires entry of final judgment for Defendants.

### A.    Actual and Constructive Fraudulent Transfer Claims Arising From the Spin-Off (Counts 1 and 2)

Plaintiff's lead counts alleged that the Spin-Off was both an actual and a constructive fraudulent transfer.  The Court's prior rulings narrowed these counts substantially, dismissing the actual and constructive fraudulent transfer claims as to the debt issued and the cash transferred to Verizon, leaving only Plaintiff's challenge to Idearc's assumption of certain contractual obligations in connection with the Spin-Off.  *See* Order To Show Cause at 2 n.*, ECF No. 647 (Jan. 22, 2013) ("Order To Show Cause").

Plaintiff effectively concedes that it cannot prevail on its constructive fraudulent transfer claims as to those obligations, as it offers no argument that those claims — which constitute part of Count 1 and all of Count 2 — remain viable.  Nor could it prevail, in light of the Court's finding that the "only credible evidence . . . of Idearc's value shows that it was solvent," and that

"no evidence" supports Plaintiff's claim "that Idearc was insolvent on November 17, 2006." Mem. at 22.[9]

Plaintiff's assertion (Resp. at 16-19) that its actual fraudulent transfer claim in Count 1 as to the contractual obligations survives is incorrect, for the following reasons. *First*, Plaintiff claims there is a dispute as to whether Verizon or Idearc "acted with intent to hinder, delay, or defraud any present or future creditor or [Idearc] in effecting the transfers at issue." Resp. at 18. Merely asserting that a dispute exists on the ultimate question of intent does not satisfy Plaintiff's obligation to "identif[y] any disputed fact issues that remain for resolution in a second phase of trial." Order To Show Cause at 2.[10] As at the summary judgment stage, to demonstrate the existence of a genuine issue of disputed fact, Plaintiff must identify specific evidence from which this Court could conclude that Verizon or Idearc had the requisite intent. Plaintiff does not identify a single such piece of evidence.

In its summary judgment opposition, Plaintiff contended that it had both direct and circumstantial evidence of actual intent.[11] The direct evidence Plaintiff identified was the same evidence of a purported "conspiracy among high-level Verizon and Idearc executives to present to the market a false picture of Idearc's historical and future prospects" that formed the basis of

---

[9] A necessary element of Plaintiff's constructive fraudulent transfer claims is either that Idearc was insolvent or that it did not receive reasonably equivalent value. *See* Tex. Bus. & Com. Code §§ 24.005(a)(2), 24.006. This Court has previously and correctly found that, in the "context of a spin-off, the insolvency analysis and the reasonably equivalent value analysis are essentially the same." SJ Op. at 15 n.3. In any event, because the Court found that Idearc received assets with a value of at least $12 billion, it obtained reasonably equivalent value in connection with the Spin-Off.

[10] Plaintiff does not comply with the Order To Show Cause through its purported incorporation by reference of its 21-page statement of contested facts from the Joint Pretrial Order. *See* Resp. at 19. Plaintiff does not specify any genuine issue of disputed fact in those 21 pages that is relevant to Count 1. "Judges are not like pigs, hunting for truffles buried in" the record and "evidence [is] not properly before the district court" when it is not specifically referenced in a pleading. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal quotation marks omitted).

[11] *See* Pl.'s Br. in Supp. of Resp. to Mot. for Summ. J. at 75-77, ECF No. 430 (July 2, 2012) ("Pl.'s SJ Resp.").

---

Plaintiff's valuation and solvency arguments.  Mem. at 41.  This Court extensively considered, and rejected, that evidence in connection with its valuation ruling.  *See* Mem. at 41-65.  Plaintiff's circumstantial evidence — the so-called badges of fraud under Texas Business & Commercial Code § 24.005(b) — likewise is insufficient following the Court's finding on valuation.  Both sides agreed that 6 of the 11 badges of fraud — numbers 2, 4, 5, 6, 7, and 11 — are absent here.[12]  This Court's finding that Idearc was worth at least $12 billion defeats Plaintiff's claim that three of the remaining five badges of fraud are present.[13]  The only § 24.005(b) factors left — the first (transfer to an insider) and tenth (transfer shortly before a debt was incurred) — are present in every Spin-Off that involves debt and have been repeatedly held to be insufficient as a matter of law to support a finding of actual intent to hinder, delay, or defraud.[14]

---

[12]  *See* Pl.'s SJ Resp. at 77 (asserting that "five of the statutory 'badges of fraud' are present here"); Verizon Defs.' Reply in Supp. of Mot. for Summ. J. at 11-12, ECF No. 446 (July 16, 2012).

[13]  This Court's valuation finding defeats Plaintiff's claim with respect to two of the badges of fraud (§ 24.005(b)(8)-(9)), as each required Plaintiff to prove that Idearc's value at the time of the Spin-Off was less than $9.1 billion.  *See* Pl.'s SJ Resp. at 77.  This Court's finding that allegedly withheld information about Idearc "was actually disclosed" or was "immaterial," Mem. at 24, defeats Plaintiff's claim with respect to a third factor, concealment (§ 24.005(b)(3)), *see* Pl.'s SJ Resp. at 77.  In addition, § 24.005(b)(3) requires concealment of "the transfer or obligation" itself, which Plaintiff has never alleged — nor could it, because the facts about the Spin-Off were disclosed repeatedly in numerous public filings.  Memorandum Opinion and Order at 9, ECF No. 483 (Aug. 6, 2012) (finding that the "transfers were public information").

[14]  *See VFB LLC v. Campbell Soup Co.*, No. Civ. A. 02-137 KAJ, 2005 WL 2234606, at *31-*32 (D. Del. Sept. 13, 2005) (holding that there was no intent to defraud creditors in spin-off scenario); *In re J.R. Deans Co.*, 249 B.R. 121 (Bankr. D.S.C. 2000) (affirming dismissal of intentional fraudulent transfer claim in spin-off on motion for summary judgment); *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 312-14 (Tex. Ct. App.—El Paso 2009) (trial court abused its discretion in finding fraudulent intent and reversing judgment in favor of plaintiff, even though a debt of $1.3 million was incurred three months before and funds were transferred to insiders, among other factors); *MFS/Sun Life Trust High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995) (no fraudulent intent where debt and insider status badges were the only ones present); *see also In re SMTC Mfg. of Tex.*, 421 B.R. 251, 307 (Bankr. W.D. Tex. 2009) (two badges of fraud — transfer to an insider and insolvency — held insufficient to establish actual intent to defraud); *see also In re Zeigler*, 320 B.R. 362, 378 (Bankr. N.D. Ill. 2005) (six factors insufficient to give rise to inference of actual intent when none of the factors contradicted an alternative innocent explanation for the transfers); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1229-30 (C.D. Cal. 2012) (applying *Zeigler* in granting dismissal).

In sum, Plaintiff has failed to satisfy its burden, in response to the Order To Show Cause, to identify evidence of actual intent from which a reasonable factfinder could rule for Plaintiff on Count 1.  Moreover, because Plaintiff previously sought "to utilize [Idearc's] putative insolvency as an accumulative factor from which to infer intentional fraud," the Court's findings as to Idearc's valuation and solvency preclude Plaintiff from relying again on that evidence to support its actual fraudulent transfer claim.  *In re Old CarCo LLC*, 435 B.R. 169, 193-94 (Bankr. S.D.N.Y. 2010) (dismissing actual fraudulent transfer claim).

*Second*, and independently, Plaintiff's actual fraudulent transfer claim as to the contractual obligations fails under § 550 of the Bankruptcy Code.  The contracts, just like the debt issued to Verizon as part of the Spin-Off, are obligations for which a plaintiff cannot recover under § 550 of the Bankruptcy Code.  *See* Dismissal Ruling at 9-19.[15]  Plaintiff says nothing about this prior ruling in asserting that its actual fraudulent transfer claim is viable.

For these reasons, Defendants are entitled to entry of judgment on Counts 1 and 2.

## B.       Breach of Fiduciary Duty and Aiding and Abetting Claims (Counts 3 and 4)

The Court denied Mr. Diercksen's motion for summary judgment on Count 3 based on its finding that "there is a dispute of material fact as to whether Idearc was insolvent at the time of the spin-off."  SJ Op. at 25.  The Court explained that Idearc's solvency was relevant to the disposition of Count 3 because, if Idearc were solvent at the time of the Spin-Off, Mr. Diercksen would be protected by the *Anadarko* rule that directors of a wholly owned subsidiary " 'are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders.' "  *Id.* (quoting *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 200 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007) (TABLE)); *see Anadarko*, 545 A.2d at

---

[15] *See* Verizon Defs.' Trial Br. at 17-20, ECF No. 539 (Sept. 21, 2012) ("Verizon Trial Br.").

1174.  The Court's finding that the "only credible evidence" shows that Idearc "was solvent" and that "no evidence" supports Plaintiff's insolvency claim, Mem. at 22, brings this case squarely within the *Anadarko* rule.

Plaintiff, tellingly, fails to address *Anadarko*.  Instead, Plaintiff urges the Court to reconsider its earlier finding that Idearc was Verizon's wholly owned subsidiary from its inception through the Spin-Off.  *See* Resp. at 14; Mot. at 7-23.  As explained below, those claims for reconsideration fail.  *See infra* Part II.

The Court's valuation finding, therefore, compels entry of judgment for Mr. Diercksen on Count 3.  That finding also compels entry of judgment for the Verizon Defendants on Count 4.  As Plaintiff concedes, one element of its aiding and abetting claim against Verizon — as with its breach of fiduciary duty claim against Mr. Diercksen — is that Mr. Diercksen "owed Idearc fiduciary duties" distinct from his duties to Verizon and Verizon's shareholders.  Resp. at 14.  Because Idearc was a solvent, wholly owned subsidiary, Mr. Diercksen had no such duties, and Verizon could not have aided or abetted a breach of a non-existent duty.  *See VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 634-36 (3d Cir. 2007) (affirming judgment in favor of defendants on litigation trustee's claim that parent company aided and abetted a breach of fiduciary duty by solvent wholly owned subsidiary's "pre-spin" directors); *see also Vichi v. Koninklijke Philips Elecs. N.V.*, Civ. A. No. 2578-VCP, 2009 WL 4345724, at *21 (Del. Ch. Dec. 1, 2009) ("One cannot aid and abet a breach of fiduciary duty . . . where no duty has been breached in the first place.").

For these reasons, Defendants are entitled to entry of judgment on Counts 3 and 4.

**C.     Actual and Constructive Fraudulent Transfer Arising From Specific Steps of the Spin-Off (Counts 5 and 6)**

In Counts 5 and 6, Plaintiff contends that discrete steps in the Spin-Off[16] were, themselves, constructive and actual fraudulent transfers.  As with Counts 1 and 2, Plaintiff has abandoned its constructive fraudulent transfer claims in Counts 5 and 6.  In any event, this Court's valuation finding defeats the claims, because the Court previously found that these claims require Plaintiff to prevail on "the value of the directories business."  SJ Opp. at 30 (Count 5); *see id.* at 32 (Count 6).

With respect to its actual fraudulent transfer claims in Counts 5 and 6, Plaintiff again summarily asserts that a genuine dispute exists as to the ultimate issue of intent, without identifying any specific evidence to support that claim.  In its summary judgment opposition, Plaintiff identified the same direct and circumstantial evidence of actual intent for these counts as for Count 1.[17]  As shown above, the Court's valuation findings establish that this evidence does not create a genuine dispute of fact with respect to the question of intent.

Furthermore, Plaintiff's reliance on the same purported evidence of actual intent for Counts 1, 5, and 6 highlights the flaw in its attempt to argue in Counts 5 and 6 that individual steps in the Spin-Off were fraudulent transfers.  Viewed as a single, integrated transaction — as other courts have done and Plaintiff itself has urged[18] — the Spin-Off was not an actual fraudulent transfer.  *See Old CarCo*, 435 B.R. at 185-86 (analyzing fraudulent transfer claims by

---

[16] Count 5 alleges that the $475 million transfer of cash from Idearc Media Corp. to Idearc, which became part of the $2.4 billion that Idearc transferred to Verizon, was a fraudulent transfer.  Count 6 alleges that the transfer from Idearc Information Services, LLC to GTE of certain international directories assets, which was part of the overall corporate reorganization preceding the Spin-Off, was a fraudulent transfer.

[17] *See* Pl.'s SJ Resp. at 106-08.

[18] *See* Pl.'s Resp. to Partial Mot. To Dismiss at 4-6, ECF No. 194 (Jan. 25, 2012) (arguing that "[e]lements of the Spin-off [s]hould [n]ot be [v]iewed in [i]solation").

viewing the entirety of an integrated corporate restructuring, rather than its individual steps); *In re Jumer's Castle Lodge, Inc.*, 338 B.R. 344, 356 (C.D. Ill. 2006) (explaining that an integrated transaction "must be viewed as a whole with all its composite parts taken into consideration"). As a matter of law, therefore, Plaintiff cannot prevail on a claim that an individual step of that integrated transaction constituted an actual fraudulent transfer.

For these reasons, Defendants are entitled to entry of judgment on Counts 5 and 6.

### D.    Unlawful Dividend Claim (Count 8)

The Court has held that Plaintiff's "unlawful dividend claim will fail" if Defendants establish "that Idearc had sufficient surplus at the time of the spin-off to declare the dividend." SJ Op. at 48.  The Court has also held that Idearc had sufficient surplus if "its total assets exceeded its total liabilities." *Id.* at 38-39.[19]  Because the Court found that Idearc's enterprise value was at least $12 billion at the time of the Spin-Off, it follows that Idearc's assets exceeded its total liabilities of $9.1 billion after the Spin-Off.  Idearc, therefore, had sufficient surplus to declare a dividend, defeating Count 8.[20]

In addition, and independently, Plaintiff's unlawful dividend claim as to the $7.1 billion in debt that Idearc issued to Verizon is preempted by § 550 of the Bankruptcy Code.[21]  In dismissing Plaintiff's *fraudulent transfer* claims as to the $7.1 billion in debt, this Court held that the debt was an obligation, not a transfer of property, and that § 550 does not permit Plaintiff to

---

[19] As the Court explained, a "corporation's surplus is the excess of its net assets over the par value of the corporation's issued stock" and, here, "the par value of Idearc's issued stock ($1.46 million) is essentially negligible."  SJ Op. at 38.  Therefore, "the question of whether Idearc had a surplus is dependent upon whether its total assets exceeded its total liabilities."  *Id.* at 38-39.

[20] Defendants maintain that the cash transferred and debt issued to Verizon as part of the corporate reorganization preceding the Spin-Off of Idearc to Verizon's shareholders was not a dividend, which a company pays as a return on a shareholder's investment.  Instead, the transfer of cash and issuance of debt is properly characterized as an exchange for Verizon's contribution to Idearc of the directories business.

[21] The Court has already found that § 546(e) of the Bankruptcy Code preempts the unlawful dividend claim as to the cash transferred to Verizon as part of the Spin-Off.  *See* SJ Op. at 42.

seek recovery for obligations.  *See* Dismissal Ruling at 10-19.  Plaintiff, however, seeks to recover as to those same debt obligations using a state law *unlawful dividend* claim.  Section 550 preempts that state law claim.  The Supreme Court recognized long ago that states "may not . . . enforce laws to interfere with . . . the Bankruptcy Act or to provide additional . . . regulations." *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929).[22]  Therefore, Plaintiff's state law claim conflicts with the Bankruptcy Code insofar as it would allow Plaintiff a recovery that is foreclosed by § 550.

Plaintiff does not contend that its unlawful dividend claim can proceed under the Court's summary judgment ruling and its valuation finding.  Instead, Plaintiff seeks reconsideration of the Court's summary judgment ruling on the unlawful dividend claim.  *See* Resp. at 3-8.  As explained below, those claims for reconsideration fail.  *See infra* Part II.  And, in all events, Plaintiff never disputes that § 550 of the Bankruptcy Code preempts its unlawful dividend claim as to the debt issued to Verizon.

For these reasons, Defendants are entitled to entry of judgment on Count 8.

### E.    Promoter Liability Claim (Count 9)

Promoter liability exists only when there is a fiduciary relationship between the alleged promoter and the company being promoted.  *See Gladstone v. Bennett*, 153 A.2d 577, 582 (Del. 1959).  No such fiduciary relationship exists — as a promoter or otherwise — between a parent company and its wholly owned subsidiary (or between an officer of the parent who is also a director of the subsidiary, and the subsidiary) if the subsidiary is solvent.  *See Westlake Vinyls,*

---

[22] *See also Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120 (2d Cir. 2001) (per curiam) ("Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights," and "preclude[s] enforcement of state laws on the same subject"); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447 (1st Cir. 2000) ("[T]he broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code.").

*Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 918, 939 (W.D. Ky. 2007) (following *Anadarko* in granting summary judgment to defendant parent corporation on promoter liability claim as to its Spin-Off of a wholly owned subsidiary).  As with Count 3, therefore, the Court's finding that Idearc "was solvent" and that "no evidence" supports Plaintiff's insolvency claim, Mem. at 22, compels entry of judgment in favor of Defendants on Count 9.

Plaintiff simply ignores *Anadarko* and *Westlake Vinyls* in contending (at 11-13) that Verizon and Mr. Diercksen had fiduciary duties to Idearc as promoters that were independent of their duties to Verizon's shareholders.[23]  Plaintiff identifies no authority that supports its contention.  For example, in *In re Tronox Inc.*, 450 B.R. 432 (Bankr. S.D.N.Y. 2011), the "promoted" subsidiary had minority shareholders and thus was not wholly owned by its parent corporation.  *See id.* at 439.  The bankruptcy court's suggestion in *Tronox* that a parent corporation might owe duties as a promoter to a wholly owned, solvent subsidiary was therefore *dicta*.  *See id.*  Plaintiff also cites *Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971), but that case involved duties imposed by the federal securities laws rather than Delaware corporate law, and preceded *Anadarko*.  *McCandless v. Furlaud*, 296 U.S. 140 (1935), is inapplicable because the Supreme Court was addressing the liability of promoters to a corporation that was "insolvent at the outset of its business life," *id.* at 158.  The Supreme Court found this was a critical factor that distinguished *McCandless* from an earlier case where the Court rejected a claim of promoter liability because (as here) "[t]here was no evidence that the

---

[23] As noted above, Plaintiff seeks reconsideration of the Court's prior holding that Idearc was Verizon's wholly owned subsidiary.  As explained below, the Court should deny reconsideration on that issue.  *See infra* Part II.

effect of the transaction was to make the company insolvent." *Id.* at 157-58 (distinguishing *Old Dominion Copper Min. & Smelting Co. v. Lewisohn*, 210 U.S. 206 (1908)).[24]

For these reasons, Defendants are entitled to entry of judgment on Count 9.

### F.      Alter Ego Claim (Count 11)

This Court dismissed Plaintiff's alter ego claim, holding that Plaintiff may rely on the alter ego doctrine "only as a theory of recovery should any of the plaintiff's other claims succeed."  Order To Show Cause at 2 n.*; *see* Dismissal Ruling at 35 ("Alter ego is not a claim or independent cause of action — it is a remedy to enforce a claimed substantive right."). Because none of Plaintiff's claims can succeed, for the reasons set forth above, Plaintiff has no basis to look to an alter ego to recover amounts due on those other claims.

## II.      THE COURT SHOULD DENY PLAINTIFF'S REQUESTS FOR RECONSIDERATION

### A.      Plaintiff Has Not Met the Stringent Standards for Reconsideration

Unable to demonstrate that its claims are viable under this Court's rulings, Plaintiff instead seeks reconsideration of prior rulings, including the Court's rulings on summary judgment that Plaintiff's unlawful dividend claim fails so long as Idearc had a surplus on November 17, 2006, and that Idearc was Verizon's wholly owned subsidiary.  Plaintiff also implicitly seeks reconsideration of the dismissal of its alter ego claim, again contending that it can recover directly from Verizon on Idearc's debts.

This Court has already explained that a request for reconsideration of an interlocutory ruling arises under Federal Rule of Civil Procedure 54(b), that the decision to grant reconsideration "rests within the discretion of the court," and that reconsideration motions "are

---

[24] The other two cases Plaintiff cites are even further afield, as neither involved a claim seeking to impose promoter liability against the parent of a solvent, wholly owned subsidiary corporation.  *See Public Inv. Ltd. v. Bandeirante Corp.*, 740 F.2d 1222 (D.C. Cir. 1984); *Bovay v. H.M. Byllesby & Co.*, 12 A.2d 178 (Del. Ch. 1940).

*not* the proper vehicles for rehashing old arguments or raising new arguments that could have been presented earlier." Reconsideration Denial at 4; *see also Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009); *Arrieta v. Yellow Transp., Inc.*, Civ. A. No. 3:05-2271-D, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009). That is because the Court "expects litigants to advance their strongest case the first time the court considers the matter." Reconsideration Denial at 4. Applying this rule, this Court has previously refused to consider arguments raised on reconsideration that a party "did not adequately raise . . . in [its] previous motion for summary judgment." *Rotella v. Mid-Continent Cas. Co.*, Civ. A. No. 3:08-0486-G, 2010 WL 1330449, at *6 (N.D. Tex. Apr. 5, 2010) (Fish, J.) (citing *Arrieta*, 2009 WL 129731, at *1); *see also Lincoln Gen. Ins. Co. v. Autobuses Tierra Caliente, Inc.*, Civ. A. No. 3:04-1535-L, 2008 WL 137968, at *2 (N.D. Tex. Jan. 15, 2008) (refusing to consider on reconsideration an argument that was "not raise[d] . . . in response to [the other side's] motion for summary judgment or as part of its [own] motion for summary judgment").

None of Plaintiff's arguments in either of its filings satisfies this standard. Plaintiff does not contend that *any* of its arguments for reconsideration is justified by a change in intervening law or discovery of previously unavailable evidence. In fact, Plaintiff's arguments on its unlawful dividend claim are identical — based on the same cases — to those it raised during the summary judgment briefing.[25] Similarly, Plaintiff repeats arguments the Court has rejected in ruling that Idearc was Verizon's wholly owned subsidiary.[26] Although Plaintiff's summary judgment briefs did not include the argument that forms the centerpiece of its current motion —

---

[25] *Compare, e.g.*, Resp. at 3-5 (arguing that a dividend is unlawful without valid board authorization), *with* Pl.'s SJ Resp. at 45-46; Resp. at 6-8 (arguing that the board was required formally to determine if a surplus existed), *with* Pl.'s SJ Resp. at 45-46 (same).

[26] *Compare, e.g.*, Mot. at 5-6, 16, *with* Pl.'s SJ Resp. at 22 & n.71 *and* Pl.'s Omnibus Sur-Reply on Defs.' Mot. for Summ. J. at 1-5, ECF No. 486 (Aug. 8, 2012).

that Idearc was improperly formed because it had only one director, but a two-seat board — that argument is not a new one in this case. Plaintiff made the same arguments in a pre-trial evidentiary motion.[27] And Plaintiff could have made those arguments at the summary judgment stage, because Plaintiff had all the evidence on which it relies for its current arguments before filing its summary judgment briefs.[28]

The Joint Pretrial Order provides an additional basis for denying Plaintiff's requests for reconsideration. In the Joint Pretrial Order, Plaintiff argued that the Court's rulings on the motions to dismiss and for summary judgment had "*fully resolved* all th[e] contested issues of law" decided in those rulings. Joint Pretrial Order at 90 (emphasis added).[29] As this Court explained at the pre-trial conference, that order "will control all subsequent proceedings in the case." Pre-Trial Conf. Tr. at 5 (Sept. 28, 2012). It is well settled that "a claim or issue [that] is omitted from the order . . . is waived." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998); *accord Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982); *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 538 (N.D. Tex. 2011) (same), *aff'd*, – F.3d –, No. 11-10649, 2013 WL 656631 (5th Cir. Feb. 22, 2013). Plaintiff is bound by the Joint Pretrial Order and has waived any right to seek reconsideration of these "fully resolved" issues.

That Plaintiff's portion of the "Contested Issues of Fact" section of the Joint Pretrial Order identified certain facts on which it now relies to support its arguments on reconsideration

---

[27] *See* Pl.'s Rule 104 Mot. at 14-15, ECF No. 509 (Aug. 28, 2012).

[28] Plaintiff claims that its motion is based on an October 14, 2012 stipulation that it filed with the Court pursuant to a state procedural rule with no analogue in federal practice. *See* Mot. at 2. But the stipulation simply agrees to the authenticity of a document (Idearc's corporate minute book) and states that Defendants will not object to the admissibility of the document at trial, except on grounds of relevance. *See* Mot. App. at 7. The stipulation is thus not new evidence. Nor is the minute book new evidence; indeed, Plaintiff relied on it in opposing Defendants' summary judgment motion. *See* Pl.'s SJ Resp. at 22 n.71, 102 n.302.

[29] Despite the Court's bifurcation order, Plaintiff insisted that the parties include in the Joint Pretrial Order statements regarding disputed facts and legal issues relevant to both Phase I and a potential Phase II in this case. *See* Joint Pretrial Order at 9.

is of no consequence.[30]  The identification of those factual issues does not override Plaintiff's

binding concession that the Court had "fully resolved" the legal issues on which Plaintiff now

seeks reconsideration.  The Fifth Circuit "encourage[s]" district courts "to construe pre-trial

orders narrowly without fear of reversal."  *Flannery*, 676 F.2d at 129.  Even where an order

includes a "slight reference to" an issue, *id.* at 130, or provides a "factual narrative" sufficient to

support a claim that is not preserved in the statement of contested issues of law, *see Martin v.

Lee*, 378 F. App'x 393, 395 (5th Cir. 2010), a district court does not abuse its discretion in

finding the issue or claim to be waived.

In sum, this Court bifurcated this case — and devoted considerable judicial resources to a

lengthy trial — to determine Idearc's value as of the Spin-Off.  Having lost that critical issue,

Plaintiff cannot now ask this Court to revisit its prior legal rulings to avoid the consequences of

its loss.  Plaintiff had numerous opportunities — including, among others, in opposing

Defendants' summary judgment motions, in its own two motions for summary judgment,

following the bifurcation order, and in the Joint Pretrial Order — to advance the arguments it

raises here.  Plaintiff failed to do so, and the Court should find "that its last minute attempt at a

'Hail Mary' to save its [case] comes too late and is waived."  *Lincoln Gen. Ins.*, 2008 WL

137968, at *2.

## B.     The Court's Prior Rulings Were Correct

Even if the Court were to reach the merits of Plaintiff's requests for reconsideration, it

should deny those requests.  The Court's prior rulings were correct.

---

[30] *See, e.g.*, Joint Pretrial Order at 33 ("Prior to November 15, 2006, Idearc never had two directors.").

1.     *The Court Correctly Ruled that Idearc's Surplus on November 17, 2006 Defeats Plaintiff's Unlawful Dividend Claim*

The Court previously ruled that, under Delaware law, "'perfection in the process [of issuing a dividend] is not required'" and what matters for compliance with Delaware law is whether a company "had sufficient surplus at the time of the" dividend.  SJ Op. at 48 (quoting *Klang v. Smith's Food & Drug Ctrs., Inc.*, 702 A.2d 150, 152 (Del. 1997)).  The Court correctly stated Delaware law.

Plaintiff, however, contends that this Court misread *Klang*, which Plaintiff asserts applies only to stock redemptions and not to dividends.  *See* Resp. at 7-8.  But the Delaware courts evaluate challenges to stock redemptions and dividends — both of which require a surplus absent circumstances not relevant here[31] — in the same manner.  *See* 1 David A. Drexler *et al.*, *Delaware Corporation Law and Practice* § 19.01 (2012) (stating that "the power to purchase or redeem shares is co-extensive with the corporation's power to pay conventional dividends" and that "[t]he considerations which go into the determination of asset value for repurchase purposes are identical to those applicable to dividends"); *see also SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 7 A.3d 973, 985 n.3 (Del. Ch. 2010) (explaining that the "legal ability to pay a dividend (and by implication to redeem shares)" involves the same inquiry), *aff'd*, 37 A.3d 205 (Del. 2011).  In both situations, the critical issue is whether adequate surplus exists, as this Court correctly held.  *See* 11 *Fletcher Cyclopedia of the Law of Corporations* § 5350 (2012) (collecting cases) ("[A] distribution to shareholders may amount to a legal dividend without the formal vote

---

[31] The section of Delaware law pertaining to stock redemptions, 8 Del. Code § 160(a)(1), has an exception where a corporation redeems shares and retires them to reduce its capital.

and resolution of directors.").[32]  The sole case Plaintiff cites adopting a contrary rule — which is

the same one it cited in moving for summary judgment — is from a New York bankruptcy court.

*See Pereira v. Cogan*, 294 B.R. 449, 539-40 (S.D.N.Y. 2003).  That court cited no Delaware

cases and its decision has not been followed by courts inside or outside Delaware.

Plaintiff incorrectly suggests that *Klang* is limited to instances in which a board makes an

error in documenting in a resolution its determination that a surplus exists.  *See* Resp. at 7.

Although the *Klang* directors had made such a mistake, the Delaware Supreme Court found it

irrelevant because the "statute requires *only that there exist a surplus* after a repurchase, not that

the board memorialize the surplus in a resolution."  702 A.2d at 156 (emphasis added).  That is

because the statute "does not, in fact, require *any* affirmative act on the part of the board," and —

because of the surplus — the stock repurchase "would be valid in the absence of any board

resolution."  *Id.*[33]  The rule in *Klang* is therefore not limited in the manner Plaintiff asserts, as

this Court correctly held.

Nor is Plaintiff correct that a sufficient surplus must have existed not only on November

17, 2006 — the date of the Spin-Off — but also on October 31, 2006, when Mr. Diercksen

signed the resolution authorizing Idearc's officers to take the various steps necessary to

effectuate the Spin-Off.  *See* Resp. at 5-6.  The necessary surplus must exist when the "dividend

*occur[s]*."  *EBS Litig. LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302, 305 (3d Cir. 2002)

---

[32] That this section of *Fletcher* cites cases outside Delaware does not undermine its authority.  Delaware courts have relied upon *Fletcher* for nearly a century.  *See, e.g., In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 48 n.46 (Del. 2006); *Northern Assurance Co. v. Rachlin Clothes Shop, Inc.*, 125 A. 184, 189 (Del. 1924).

[33] *Klang* additionally holds that there is no formal analysis that a board must undertake in determining a surplus, and that book value is not determinative on that issue where corporate books fail to reflect unrealized appreciation or depreciation in value.  *See* 702 A.2d at 154.  That is consistent with *Morris v. Standard Gas & Elec. Co.*, 63 A.2d 577, 582 (Del. Ch. 1949) (quoted at Resp. 6), which in turn relies on *Randall v. Bailey*, 23 N.Y.S.2d 173, 184 (Sup. Ct. 1940), *aff'd*, 9 N.Y.S.2d 512 (App. Div. 1941).  *Randall* holds that "the issue, in any case in which it is claimed that dividends have been paid out of capital, is the value of the assets and the amount of the liabilities to creditors and stockholders at the times the dividends were declared and paid."  *Id.* at 184-85.

(emphasis added); *see* 8 Del. Code § 173 ("No corporation shall *pay* dividends except in accordance with this chapter.") (emphasis added).  Plaintiff relies on *Vogtman v. Merchants' Mort. & Credit Co.*, 178 A. 99 (Del. Ch. 1935), but the court in that case also focused on whether the dividend "ha[d] been paid . . . out of surplus."  *Id.* at 102.  There, the Court of Chancery held that a corporation could not rely on the book value of various loans and real estate holdings in determining whether a surplus existed, because the book value did not accurately reflect the current value of an underperforming loan portfolio or of real estate that had depreciated.  *See id.* at 103.  Indeed, the *Vogtman* court repeatedly discussed the date the dividend was paid, *see id.* at 100-04, and did not even note the date on which the dividend was declared.

Finally, at the time he signed the resolution authorizing Idearc's officers to effectuate the Spin-Off, Mr. Diercksen had before him Houlihan Lokey's solvency opinion, as well as the analyses of his business development team and numerous investment banks, establishing that the value of Idearc's assets would significantly exceed its liabilities at the time of the Spin-Off. Under Delaware law, no additional analysis was necessary for Mr. Diercksen to authorize the transaction in his capacity as Idearc's sole director.  *See Morris*, 63 A.2d at 583-84.[34]

### 2. *The Court Correctly Ruled that Idearc Was a Wholly Owned Subsidiary of Verizon at All Times Before the Spin-Off*

In its summary judgment decision, the Court held that, although Plaintiff "dispute[d] the material fact of Idearc's ownership before the spin-off, no reasonabl[e] factfinder could conclude that Idearc was not a wholly owned subsidiary of Verizon up to and including November 16, 2006."  SJ Op. at 26-27.  That holding, coupled with the Court's solvency finding, brings this case squarely within *Anadarko*, which defeats Plaintiff's various breach of fiduciary duty claims

---

[34] Because the existence of a surplus renders a dividend lawful, Plaintiff's claim that Mr. Diercksen acted willfully or negligently in violating Delaware law necessarily fails.  *See* Resp. at 3, 8.

(Counts 3, 4, and 9).  To avoid *Anadarko*, Plaintiff contends (Mot. at 13, 15) that "Verizon was never an owner of Idearc stock" and that all of Mr. Diercksen's actions as a director of Idearc were "unauthorized," because the incorporator of Idearc "failed to 'perfect' the corporate formation" by not "appoint[ing] [a] second board member."  Plaintiff is wrong.

First, under Delaware law, where seats on a corporation's board are never filled — as occurred here — the unfilled seats *do not count* in determining the size of the board for purposes of determining the quorum.  *See Dillon v. Berg*, 326 F. Supp. 1214, 1227 n.18 (D. Del. 1971) (holding that, despite the background rule in Delaware that a quorum is "a majority of the entire Board, notwithstanding any vacancies which may exist," "newly created but never filled directorships are not counted in determining the number of directors constituting the entire board"); *accord* 2 *Fletcher Cyc. Corp*. § 421, at 278.  Thus, in *Belle Isle Corp. v. MacBean*, 61 A.2d 699 (Del. Ch. 1948), where the bylaws established a ten-member board, but only seven directors were initially appointed, the Chancery Court held that "four directors constituted a quorum."  *Id.* at 703.  Plaintiff is therefore simply wrong in asserting that, by appointing only a single director, the incorporator failed to perfect the corporate form, and that Mr. Diercksen lacked authority to act on his own as Idearc's board.  Plaintiff cites no authority to support its reading of Delaware law.

Second, even if Plaintiff were correct about the method for determining the quorum for board meetings — and it is not — Plaintiff ignores other provisions of Idearc's bylaws that permit the *appointed* directors to act as Idearc's board, even if some board seats are vacant. Section 2.08 of the bylaws allows the board to act by unanimous written consent of "all members of the Board," without referencing authorized, but unfilled, seats on the board.  Mot. App. at 30. Mr. Diercksen acted pursuant to this provision.  *See id.* at 48, 49-53.  Furthermore, § 2.13 of the

bylaws allows the "Directors then in office" to act in the event of "any vacancies [that] shall occur in the Board of Directors by reason of death, resignation, removal or otherwise." *Id.* at 30. This section also authorized Mr. Diercksen to act as Idearc's board despite a vacancy.

Furthermore, this case is nothing like the two cases that Plaintiff asserts are "directly on point." Mot. at 14, 15. In *Kenyon v. Holbrook Microfilming Serv., Inc.*, 155 F.2d 913 (2d Cir. 1946), an employee sought to hold a company liable for allegedly breaching his employment contract. The Second Circuit held that, because the employment contract was allegedly entered into before the company had *any* directors, the company was not liable on the contract. *See id.* at 916; *see also id.* at 917 (denying the claim on the alternative ground that the employee had repudiated the contract). *Brandner Corporation v. Stelnick*, C.A. No. 14463, 1996 WL 82461 (Del. Ch. Feb. 22, 1996), is even further afield, as it involved a convicted felon who had persuaded plaintiffs to invest $1.5 million in a newly incorporated company, while he hid his felony conviction and made a series of additional fraudulent misrepresentations and omissions to the investors. Moreover, the challenged corporate actions in *Brandner Corporation* occurred before any "board of directors ever c[a]me into existence." *Id.* at *7. Thus, neither case Plaintiff cites provides support for its suggestion that Mr. Diercksen could not lawfully act as Idearc's board. Neither involved challenges to actions taken by a director, duly appointed by the incorporator, on the ground that additional seats on the board were never filled.

Finally, Plaintiff claims that, even if Mr. Diercksen as the sole director were authorized to act as Idearc's board, his resolution authorizing Kathy Harless to issue a share of stock to Verizon was insufficient because it "does not set a price" for the stock. Mot. at 13. Again, Plaintiff is wrong. When Mr. Diercksen authorized the issuance of a share of stock to Verizon, the implementing resolution stated that the share should have a "par value [of] $.01." Mot. App.

at 48.  That is the price for that share of stock in VDDC, the shell corporation that subsequently

became Idearc and into which Verizon would transfer its domestic directories business as part of

the corporate reorganization preceding the Spin-Off.[35]  Furthermore, consistent with Delaware

law, Idearc was expressly authorized to "accept in payment" for its stock any "labor or services

actually performed for the Corporation, for its benefit or its formation."  *Id.* at 47; 8 Del. C.

§ 152 (same).  It is undisputed that Verizon hired the law firm of Debevoise & Plimpton to form

Idearc, thereby satisfying this requirement.  *See* Mot. at 4; Tr. Vol. 8B, at 14:9-16:6 (testimony

of Jeffrey Rosen of Debevoise that the firm billed Verizon for that work, and that Verizon paid

all of Debevoise's bills).  No reasonable fact-finder could conclude that the value to Idearc of the

work Verizon paid Debevoise to perform was less than the par value of the stock.[36]

### 3.    The Court Correctly Dismissed Plaintiff's Alter Ego Claim

As shown above, the Court dismissed Count 11 of Plaintiff's Amended Complaint

because "[a]lter ego is not a claim or independent cause of action — it is a remedy to enforce a

claimed substantive right."  Dismissal Ruling at 35.  Plaintiff does not dispute this ruling or

contend that the Court erred.  On the contrary, Plaintiff quotes the Court's ruling dismissing its

alter ego claim approvingly.  *See* Resp. at 19.

Nonetheless, Plaintiff continues to treat its dismissed alter ego count as though it were an

independent cause of action:  namely, by claiming that Verizon "is liable on [Idearc's] debt as a

---

[35] *See* 8 Del. Code § 153(a) ("Shares of stock with par value may be issued for such consideration, having a value not less than the par value thereof, as determined from time to time by the board of directors, or by the stockholders if the certificate of incorporation so provides.").

[36] Plaintiff's remaining assertions about the share certificates are irrelevant as a matter of law.  *See Smith v. Universal Serv. Motors Co.*, 147 A. 247, 248 (Del. Ch. 1929) (the "status of stockholder in a corporation is not dependent on the issuance to him of a certificate of stock"); *Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc.*, 535 A.2d 1357, 1359 (Del. 1987) (entry in stock ledger is not necessary for ownership); *CAPM Corp. Advisors AB v. Protegrity, Inc.*, No. C.A. 18676-NC, 2001 WL 1360122, at *11 (Del. Ch. Oct. 30, 2001) (delivery of certificate is "ministerial").

principal."  Mot. at 19; *see also* Resp. at 20 (claiming that a disputed fact remaining for a Phase II trial is "[w]hether Idearc signed the debt instruments in the Spin-off as the alter ego of Verizon").  That is the same claim that Plaintiff pled in Count 11, where it alleged that the Court should "hold Verizon liable for all of Idearc's debts, including all debt and other obligations incurred by Idearc in connection with or because of the Spin-off."  Am. Compl. ¶ 133.  It is, therefore, the same claim that this Court already dismissed.  Plaintiff advances no reason why the Court's prior ruling is incorrect.  Nor could it.  The Fifth Circuit has squarely held that alter ego "is not a cause of action," but is only a "remedy" that may be available for a separate, "cognizable cause of action."  *Western Oil & Gas JV, Inc. v. Griffiths*, 91 F. App'x 901, 903-04 (5th Cir. 2003), *quoted in* Dismissal Ruling at 35.

### C.    Plaintiff's Challenges to Idearc's Corporate Actions Are Barred by Laches

Plaintiff's contention that its state law fiduciary duty and unlawful dividend claims can proceed because of supposed defects in Idearc's formation is barred for yet another reason:  it is far too late for Plaintiff to complain about flaws that occurred years ago.  Under Delaware law, laches bars such claims where, as here, there is "knowledge by the claimant," "unreasonable delay in bringing the claim," and "resulting prejudice to the defendant."  *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1162 (Del. 2010) (internal quotation marks omitted).[37]

### 1.    Plaintiff stands in the shoes of Idearc for purposes of its state law fiduciary duty and unlawful dividend claims.[38]  Idearc unquestionably had contemporaneous knowledge of all

---

[37] The Court previously ruled that Delaware law applies to Plaintiff's state law claims.  *See* SJ Op. at 36 n.5, 50 (citing Tex. Bus. Orgs. Code §§ 1.102, 1.103, 1.105).  Delaware law likewise provides the standards for laches that limits those claims, because Plaintiff's effort at this late date to unravel the creation of a standalone Delaware corporation means that the "corporation's internal affairs are implicated."  *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 69 (S.D. Tex. 2007).

[38] *See, e.g.*, Memorandum Opinion and Order at 13-14, ECF No. 483 (Aug. 6, 2012); Dismissal Ruling at 29-30; Memorandum Opinion and Order at 12, ECF No. 288 (Mar. 21, 2012).

the supposed corporate defects of which Plaintiff complains.  The contents of the bylaws, the

naming of a single director, the contents of Mr. Diercksen's resolutions as Idearc's board, and

the manner in which Idearc's officers carried them out were all known or knowable to the

company and to those Plaintiff now contends were, at most, *de facto* officers and directors.  All

of the documents Plaintiff references — the Certificate of Incorporation, the initial bylaws, the

appointment of Mr. Diercksen as director, and the resolutions by unanimous consent Mr.

Diercksen executed — are part of Idearc's corporate minute book, and therefore were within the

actual or constructive knowledge of Idearc and its officers and directors before and after the

Spin-Off.  *See* Mot. App. at 10-102.  Indeed, Plaintiff itself asserts that the supposed errors in

Idearc's formation and the actions of Mr. Diercksen as its sole director were self-evident from

the Idearc minute book.  *See* Mot. at 6.

For these reasons, Idearc, its officers, and directors were all on at least constructive notice

of any irregularity that Plaintiff alleges.  *See Nevins v. Bryan*, 885 A.2d 233, 253 (Del. Ch. 2005)

("As the founder, Chairman of the Board and Executive Director . . . Nevins had at least

constructive knowledge of [the company's] bylaws and his rights as a member."), *aff'd*, 884

A.2d 512 (Del. 2005).  "Constructive knowledge is sufficient to prove . . . that the doctrine of

laches is applicable." *Kerns v. Dukes*, No. Civ. A. 1999-S, 2004 WL 766529, at *4 n.31 (Del.

Ch. Apr. 2, 2004); *see In re ML/EQ Real Estate P'ship Litig.*, No. Civ. A. 15741, 1999 WL

1271885, at *2 (Del. Ch. Dec. 21, 1999) (finding action should be barred as untimely if "there is

no dispute that the information was provided or available to the plaintiffs and was sufficient to

put the plaintiffs on inquiry notice of their claims").

**2.**     When commercial transactions have occurred that are difficult — if not

impossible — to undo, or third parties have relied on a consummated transaction, Delaware

courts have enforced strict time limits for challenges.  *See*, *e.g.*, *CNL-AB LLC v. Eastern Prop.*

*Fund I SPE (MS Ref) LLC*, C.A. No. 6137-VCP, 2011 WL 353529, at *6-*7 (Del. Ch. Jan. 28,

2011) (delay of two weeks held barred by laches); *Danvir Corp. v. City of Wilmington*, Civ. A.

No. 3404-VCP, 2008 WL 4560903, at *7 (Del. Ch. Oct. 6, 2008) (six weeks); *Rankin v.*

*Interstate Equities Corp.*, 180 A. 541, 542-43 (Del. Ch. 1935) (two months); *Union Fin. Corp. of*

*Am. v. United Investors' Sec. Corp.*, 156 A. 220, 221 (Del. Ch. 1931) (six months).

   Plaintiff's claims of irregularities are long overdue and the delay cannot be excused.

Here, Verizon exchanged its domestic directories business, which the Court has found had a

value in excess of $12 billion, for cash, debt, and stock that Verizon then distributed to its

shareholders.  Those shareholders were free to trade that stock on the New York Stock

Exchange.  Idearc, and its post-Spin-Off officers and directors, accepted the benefits of the

transaction, but never suggested that there was any infirmity with respect to the corporate actions

Plaintiff now claims to be invalid.  Instead, for years, Idearc and Verizon carried on as separate

corporations.  Idearc serviced the creditors' debt, its officers and directors filed regular quarterly

and annual reports with the SEC in the name of Idearc, and the company issued dividends to its

shareholders.  It was incumbent on Idearc to raise any concerns about the validity of the Spin-

Off, and the underlying corporate actions, *before* it took the assets of the directories business, or

soon thereafter — not years after the fact.  *Cf. Elster v. American Airlines, Inc.*, 100 A.2d 219,

221 (Del. Ch. 1953) ("It is well established that a stockholder cannot complain of a corporate

action in which, with full knowledge of all the facts, he or she has concurred.").

   **3.**  Allowing Plaintiff to complain now of alleged improprieties in Idearc's formation

would cause enormous prejudice to Idearc, Verizon, its creditors, and innumerable public

stockholders, all of which took numerous actions in reliance on their (correct) understanding that

Idearc was a properly formed, public company.  "[W]here rights and interests of third parties come into existence during the time of the plaintiff's delay, the requirement of prejudice will be satisfied."  Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 11.06[b][3], at 11-70 (2012 Supp.); *see, e.g.*, *Stengel v. Rotman*, No. Civ. A. 18109, 2001 WL 221512, at *7 (Del. Ch. Feb. 26, 2001), *aff'd sub nom. Stengel v. Sales Online Direct, Inc.*, 783 A.2d 124 (Del. 2001) (finding prejudice from plaintiff's delay in challenging the validity of a special stockholder meeting that removed plaintiff from office because holding another meeting would force the corporation to "bear the risk of an additional period of managerial uncertainty"); *Flerlage v. KDI Corp.*, No. Civ. A. 8007, 1986 WL 4278, at *6 (Del. Ch. Apr. 10, 1986) ("In the case of a challenge to the adoption of a corporate charter amendment where the stock is widely held, however, the existence of prejudice . . . may be presumed.  This is so because it is essential for the proper management of a corporation and for the investment decisions of its stockholders . . . that the provisions in the Certificate of Incorporation of a corporation be free from doubt.").[39]

For all of these reasons, laches provides a further, independent ground barring Plaintiff from seeking reconsideration of the Court's prior decisions.

## CONCLUSION

The Court should enter judgment on all remaining counts in favor of Defendants, consistent with the foregoing arguments and Defendants' Proposed Conclusions of Law.  The Court should also deny Plaintiff's motion for judgment.

---

[39] *See also Shanik v. White Sewing Mach. Corp.*, 19 A.2d 831 (Del. 1941) (applying laches to protect shareholders who purchased new securities issued pursuant to amended certificate of incorporation); *Danvir Corp.*, 2008 WL 4560903, at *7 (burden of re-bidding executed contract provided "colorable showing of prejudice").

Dated:  March 1, 2013

   s/ J. Robert Arnett, II
E. Leon Carter
Texas Bar No. 03914300
*lcarter@carterstafford.com*
J. Robert Arnett, II
Texas Bar No. 01332900
*barnett@carterstafford.com*
CARTER STAFFORD ARNETT HAMADA
  & MOCKLER, PLLC
8150 N. Central Expressway, Suite 1950
Dallas, Texas 75206
Telephone:  (214) 550-8188
Facsimile:  (214) 550-8185

*Attorneys for Defendant*
*John W. Diercksen*

Respectfully submitted,

   s/ T. Ray Guy
T. Ray Guy
Texas Bar No. 08648500
*ray.guy@weil.com*
WEIL, GOTSHAL & MANGES, LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone:  (214) 746-7700
Facsimile:  (214) 746-7777

Reid M. Figel
Admitted *Pro Hac Vice*
*rfigel@khhte.com*
Scott H. Angstreich
Admitted *Pro Hac Vice*
*sangstreich@khhte.com*
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999

Philip D. Anker (NY Bar No. 4345567)
Admitted *Pro Hac Vice*
*philip.anker@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888

*Attorneys for Defendants*
*Verizon Communications Inc.,*
*Verizon Financial Services LLC,*
*and GTE Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system pursuant to the Court's Local Rules this 1st day of March 2013.

<table>
<tr><td>Werner A. Powers</td><td>Nicholas A. Foley</td></tr>
<tr><td><i>werner.powers@haynesboone.com</i></td><td><i>nfoley@neliganlaw.com</i></td></tr>
<tr><td>Robin Phelan</td><td>Douglas J. Buncher</td></tr>
<tr><td><i>robin.phelan@haynesboone.com</i></td><td><i>dbuncher@neliganlaw.com</i></td></tr>
<tr><td>Patrick D. Keating</td><td>John D. Gaither</td></tr>
<tr><td><i>patrick.keating@haynesboone.com</i></td><td><i>jgaither@neliganlaw.com</i></td></tr>
<tr><td>HAYNES & BOONE, LLP</td><td>NELIGAN FOLEY, LLP</td></tr>
<tr><td>2323 Victory Avenue, Suite 700</td><td>325 N. St. Paul, Suite 3600</td></tr>
<tr><td>Dallas, Texas 75219</td><td>Dallas, Texas 75201</td></tr>
<tr><td>Telephone:  (214) 651-5000</td><td>Telephone:  (214) 840-5300</td></tr>
<tr><td>Facsimile:  (214) 651-5940</td><td>Facsimile:  (214) 840-5301</td></tr>
</table>

                                                ___s/ T. Ray Guy_____
                                                T. Ray Guy