IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. et al. Litigation Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-1842-G |
| VERIZON COMMUNICATIONS INC., et al., | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
ENTRY OF JUDGMENT ON ADMISSIONS AND STIPULATED FACTS**

Plaintiff files this Reply in Support of its Motion for Entry of Judgment on Admissions and Stipulated Facts as follows:

### I.    INTRODUCTION

Delaware law requires very little to erect a corporate shield that will protect a promoter from liabilities for corporate obligations.  He need only have his incorporator file the charter with the state and appoint the initial board of directors.  The incorporator may do both in a single step by identifying the board in the charter.  8 Del. C. § 102(a)(6).  If the charter identifies the board, the incorporator's role is at an end.  *Id.*  But Delaware law is flexible.  When the directors are not named in the charter, the powers of the incorporator live on past the filing of the charter, enabling the incorporator later to appoint the board and thereby "perfect" incorporation.  *See* 8 Del. C. § 107.  If the promoter, be he the prospective owner or a future business partner of the corporation, choses to do business in the name of the corporation before the corporation is fully "incorporated," he does so at his peril.  Neither the promoter nor his chosen incorporator can

supplant the board, and they have no authority to appoint officers, issue stock, or enter into any contracts in the name of the corporation. *See Kenyon v. Holbrook Microfilming Svc., Inc.*, 155 F.2d 913, 916 (2nd Cir. 1946); *Brandner Corp. v. Stelnick*, 1996 WL 82461 at *6 - *7 (Del. Ch. 1996).

The Delaware legislature chose its words carefully, and one must distinguish between corporate existence and the act of incorporation. Corporate existence "commences" upon the filing of the charter. 8 Del. C. § 106. However, corporate existence is not synonymous with the act of incorporation. Only after a corporation is fully formed or "incorporated" does the role of the "incorporator" come to an end. This cannot happen until there is a board. That is why Delaware law specifically provides that the role of incorporator is not over upon the filing of the charter unless the charter identifies the board. 8 Del. C. §§ 102(a)(6), 107. This is not rocket science; this is just common sense. Without a board the corporation cannot act. It is just a piece of paper. Here, the incorporator did not appoint the board in the charter. After the charter was filed, he passed bylaws establishing a two person board but never appointed two board members. The bylaws expressly required a majority of "the total authorized number of directors" to constitute a quorum. The incorporation failed.

The spin closed in New York, and under New York law, the promoter is jointly and severally liable for the contracts of an unincorporated Delaware corporation. *Clinton Investors Co., II v. Watkins*, 536 N.Y.S. 2d 270, 272 (N.Y. App. 3rd Dept. 1989). The notion of the promoter's liability is one of agency law. Where one purports to contract on behalf of a non-existent principal, he becomes liable as the maker of the contract. *Clinton*, 536 N.Y.S.2d at 272; *BCI Constr., Inc. v. Whelan*, 888 N.Y.S.2d 272, 273 (N.Y. App. 3rd Dept. 2009). Such a

promoter is the alter ego of the corporation because the corporation has no board—no ability to contract—or to use Mr. Rosen's more colorful language—no "brain." PX 528.

Count 11, the alter ego count, is nothing new, as Defendants contend. Plaintiff alleges in Count 11 that Idearc was a sham corporation. Plaintiff's Amended Complaint and Jury Demand, pp. 22-30 (ECF No. 216). Paragraph 130 under Count 11 specifically alleges that Verizon never paid for any stock, never caused Idearc to issue any stock, and failed to adhere to corporate formalities. All allegations in the Amended Complaint were expressly incorporated by reference into the Joint Pretrial Order signed by this Court. *See* Joint Pretrial Order, p. 2 (ECF No. 572). This Court has consistently held that the alter ego claim survives as a remedy. *See* Mem. Opinion and Order re: Motion to Dismiss, pp. 34-36 (ECF No. 469); Mem. Opinion and Order re: Motion for Summary Judgment, p. 51 (ECF No. 523). This remedy is needed to pay allowed claims totaling billions of dollars in the Idearc estate. Under well-established bankruptcy law, the remedy of alter ego vests in the Debtor, whose rights were assigned to the Trust. *See Schimmelpenninck v. Byrne (In re Schimmelpenninck),* 183 F.3d 347, 352 (5th Cir. 1999) (holding that where alter ego claims asserted by creditor plaintiff constituted a "general grievance of all of [debtor's] creditors (not a personal grievance exclusive to [creditor plaintiff])" standing to bring such claims belonged to the trustee); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1153 (5th Cir. 1987) (holding that alter ego causes of action belonged to debtor where injury alleged by creditor was a generalized injury and not personal to the creditor).

It is natural for any court to be reluctant to impose liability because of a failure to file a charter, constitute a board, and adhere to corporate formalities. Sympathy, however, does not allow a court to turn a blind eye to the law.

Besides, Verizon does not deserve the Court's sympathy. The corporate problems could have been cured the week before the spin, when the problems with the minute book were discovered during due diligence. *See* Motion for Judgment at pp. 5-6 and supporting Appendix. (ECF No. 649). Verizon could have directed the incorporator, Feldman, to appoint a second board member, have the board appoint officers, and then have the board issue stock and set a price for the stock. Verizon could then have purchased the stock for nominal consideration. Instead, Verizon appears to have chosen deception over the truth. Stock certificates were created on November 15 or 16 and backdated to make it appear that Verizon had purchased its initial share in VDDC on June 22, 2006, two days after Verizon was formed. *See* Ex. A-1 (PX 1944[1]) (worksheet from Fulbright & Jaworski showing that Idearc stock certificates were created in November), Supp. App.[2] at 2; Ex. A-5 (Idearc stock certificate no. 1, part of PX 2018), Supp. App. at 27. This made the purchase of stock appear consistent with page 5 of the Private Letter Ruling ("PLR") that was the lynchpin of the spin. In relevant part, the PLR said:

> Controlled 2 [VDDC] is a corporation that was newly formed as a wholly-owned subsidiary of Distributing 2 [Verizon Communications Inc.] in order to facilitate the External Distribution. Controlled 2 [VDDC] has a single class of voting common stock outstanding (the "Controlled 2 Common Stock"). In connection with the formation of Controlled 2 [VDDC], Distributing 2 [Verizon Communications Inc.] received all of the shares of Controlled 2 Common Stock in exchange for a nominal cash contribution.

---

[1] Excluded by the Court in the trial of Phase One.
[2] All references to "Supp. App." are to the Supplemental Appendix In Support of Plaintiff's Motion for Entry of Judgment on Admissions and Stipulated Facts, filed contemporaneously with this reply. All references to "App." are to Plaintiff's Appendix to Motion and Brief for Entry of Judgment on Admissions and Stipulated Facts (ECF No. 649-1), filed Feb. 8, 2013.

Ex. A-2 (PX 659, Sep. 29, 2006 Private Letter Ruling), Supp. App. at 9.  Contrary to what was told to the IRS, Idearc never issued stock, and certainly Verizon never purchased any for cash on June 22.  Unable to prove a cash purchase in this Court, Verizon is now changing its story to tell the Court it purchased the stock for "services," not for "cash consideration."  *See* Defendants' Joint Consolidated Response, p. 21 (ECF No. 651).  Verizon's attempt to change stories fails because its prior sworn representations to the IRS estop it from taking contrary positions in this Court.  *See, e.g., Ginor v. Landsberg*, 159 F.3d 1346, 1998 WL 514304 at *1 (2nd Cir. 1998); *In re Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991).

Bill Mundy, a lawyer who was not a lawful officer of Idearc, falsely described himself as one in his November Certificate.  *See* Ex. A-2 (Secretary's Certificate, part of PX 2018), Supp. App. at 25.  Please look carefully at this Certificate.  He falsely said that Verizon owned 100 percent of the common stock of Idearc.  He then falsely said that this is evidenced by a stock certificate "issued" on October 18, 2006.[3]  Mundy knew this was untrue.  He signed both stock certificates on or after November 15.  *See* Ex. A-1 (PX 1944), Supp. App. at 2; Ex. A-3 (PX 799), Supp. App. at 23; Ex. A-4 (Secretary's Certificate), Supp. App. at 25; and Ex. A-5 (PX 2018), Supp. App. at 27.  He then goes on to say that there were no stock transfer records other than those contained in the official minute book, without disclosing that those stock transfer records did not reveal any stock ownership in Verizon.  Compare the Secretary Certificate with the blank stock transfer records in the Minute Book.  *See* Ex. A-2 (PX 2018), App. at 99-102 (blank stock transfer ledger in Idearc Minute Book).

---

[3] Allegedly this was "issued" in exchange for the surrender of the one share of VDDC stock "issued" June 22.  Neither were actually "issued," and both were created on November 15 or 16.

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR**
**ENTRY OF JUDGMENT ON ADMISSIONS AND STIPULATED FACTS**                               **Page 5**

In its Response, Verizon does not dispute that Idearc records were backdated. Nor does Verizon renounce the stipulation. Verizon does not explain why it is telling this Court it purchased the stock for services when it told the IRS the stock was purchased for cash. Verizon does not try to explain anything at all. While one might like to know the truth, the Motion for Judgment does not require the Court to understand Verizon's thought processes. Liability is for breach of the implied warranty of authority—which sounds in contract, not tort. The promoter and its confederates simply had no authority to sign debt instruments, or any other contracts, on behalf of Idearc, because Idearc was not incorporated at the time. The promoter breached the implied warranty of authority and is liable as the maker of the contracts

## II.   ARGUMENT AND AUTHORITIES

### A. *Belle Isle* and *Dillon* Do Not Apply, And There Was Never A Quorum Of "Authorized" Idearc Directors.

Verizon relies on *Belle Isle* and *Dillon*[4] for the proposition that one does not count vacancies in arriving at a quorum. This reliance is misplaced for a number of reasons. Neither *Belle Isle* nor *Dillon* involve a failure to appoint the initial board of directors so as to incorporate a Delaware corporation. Nor were the bylaws in either case like the bylaws here.

In *Belle Isle*, there was a *de jure* board which, consistent with the bylaws, expanded the board, thereby leaving vacancies in the form of the newly created directorships. The court, construing the bylaws, which were identical to Article 2041 of the Delaware General Corporation Law, a precursor of Section 141(b) in the current Delaware Code, reasoned as a matter of contract construction that the vacancies caused by the newly created directorships did not count in determining whether there was a quorum at director meetings conducted subsequent

---

[4]   *Belle Isle Corp. v. MacBean,* 61 A.2d 699 (Del. Ch. 1948); *Dillon v. Berg,* 326 F.Supp.2d 1214 (D. Del. 1971).

to the expansion of the board but before the vacancies were filled. *Belle Isle*, 61 A.2d at 399. The *Dillon* court, in *dicta*, subsequently cited *Belle Isle* for this same proposition. *Dillon*, 326 F.Supp. at 1227 n. 18.

To apply the rationale of *Belle Isle* to a case where, as here, there never was an initial board appointed by the incorporator, would throw the baby out with the bathwater just to clean Verizon's sink. Under the facts of our case, there never was a vacancy in the board because there never was a board in the first place. *See, e.g., Automatic Steel Prods., Inc. v. Johnston*, 64 A.2d 416, 417-418 & n. 1 (Del. 1949) (recognizing that (a) incorporators elect the initial board of directors, (b) this "feature of the law" was not at issue in a case involving the construction of a Delaware statute authorizing the majority of the remaining directors to fill vacancies in the board of directors, (c) interpreting the term "vacancies" to imply a previous incumbency, and (d) concluding that the statute in question did not give the remaining directors power to fill newly created directorships resulting from the adoption of a board resolution increasing the number of directors from nine to twelve). Posit this: Promoter enters into hundreds of subscription contracts with investors to form ABC, Inc. Promoter tells Incorporator that future investors want a two person board but they have not yet decided who will be the second board member. Incorporator on Friday adopts bylaws requiring a two person board and appoints Joe as one of the directors. Incorporator plans to appoint a second board member the following week once the Promoter gets back with him. Over the weekend, Joe takes advantage of the Defendants' vacancy rule and amends the bylaws to create a one person board, thereby hijacking the company until at least the next annual meeting of shareholders. This is not Delaware law. To incorporate, the Incorporator must identify the original board members—not just one member of the original board—either in the charter or as permitted by Section 107.

The bylaws in *Belle Isle* and *Dillon* were also materially different from those at issue here. New Section 141(b) of the Delaware Code (*Belle Isle* involved a predecessor statute) expressly states that in all things the bylaws control how to count a quorum. 8 Del. Code § 141(b). VDDC's original bylaws state that the number of directors "shall be two." *See* Ex. A-2 (PX 2018), App. at 28. A quorum is defined as "the presence of a majority of the total authorized number of directors." *See* Ex. A-2 (PX 2018), App. at 29. Nothing could be clearer. One of the two "authorized number of directors" does not a quorum make. *See, e.g., Crown Emak Partners, LLC v. Kurz*, 992 A.2d 377, 400 (Del. 2010) (interpreting Section 141(b)'s "majority of the total number of directors" constituting a quorum language as referring to directorships, not directors actually in office). *See also In re Autumn Press, Inc.*, 20 B.R. 60, 62 (D. Mass. 1982) (invalidating a bankruptcy filing on the grounds that no quorum existed under a New York statute providing that a quorum consisted of "the majority of the entire number of authorized directors . . . notwithstanding the existence of vacancies on the board" where the corporation's bylaws provided for three directors and the bankruptcy filing had been authorized by the corporation's sole director at the time of the filing). Compare this with the bylaws analyzed in *Belle Isle* and *Dillon*. In both cases, the number of "directors" needed to constitute a "quorum" was a majority of the "directors" – not a "majority of the total authorized number of directors." *Belle Isle*, 61 A.2d at 378; *Dillon*, 326 F.Supp. at 1226. The *Belle Isle* and *Dillon* courts construed "directors" to mean those who actually were directors and not some future person who might later qualify as a director. *Belle Isle*, 61 A.2d at 378-379; *Dillon*, 326 F.Supp. at 1227 n. 18

**B.     Verizon never owned any stock in Idearc.**

A promoter cannot issue itself stock. *See Brandner*, 1996 WL 82461 at *6 - *7. Only a board can issue stock, and when it does, there must be a price set for the stock. *See* 8 Del. Code §§ 152 and 153(a). Now analyze the resolution Diercksen passed to issue VDDC stock to Verizon. Ex. A-2 (PX 2018), App. at 48. First, there was no quorum. As an officer of the promoter, Diercksen had no power to appoint officers or issue stock to the promoter. *See Kenyon,* 155 F.2d at 914-916; *Brandner*, 1996 WL 82461 at *6 - *7. Second, even if there were a quorum, no price was set for the stock. The board must set a price. *See* 8 Del. Code § 153(a). Verizon's new story, and a much different story than told to the IRS, is it purchased the stock through services, not cash. Even if this *story de jour* is true, the board must specify the consideration (cash or services) and set a price. 8 Del. Code §§ 152 and 153(a). This did not happen here.[5]

Verizon argues that the Court has already decided that Verizon owned all the stock of Idearc. As an initial matter it is hard to understand how that ruling could exist since the issue was never tried, and there is no ruling anywhere that Idearc issued any stock to anyone. One would have to have that ruling before deciding that Verizon owned the stock. And it is hard to square that ruling with other rulings saying that Count 11 survives summary judgment and can be tried as a remedy. *See* Mem. Opinion and Order re: Motion for Summary Judgment, p. 51 (ECF No. 523). The minute book controls, and there is a stipulation covering the minute book. A court cannot disregard stipulated facts. *See Gandner v. Livoti*, 250 F.3d 606, 609 (8th Cir.

---

[5]      Defendants' argument that the par value of the stock constitutes the price of the stock is misplaced. A stock's "par value" is only the minimum amount for which a corporation's stock can be sold, not the actual price which the board determines to sell the stock. *See* Fletcher, *Cyclopedia of the Law of Corporations* § 5080.60 (2012) (citing 8 Del. Code § 153(a) for the proposition that "[i]f a Delaware corporation issues par value shares, the board . . . [is] to determine the price of the shares, subject to the restriction that they cannot sell the shares for less than par value.").

2001). The minute book establishes as a matter of law that Verizon was never a shareholder of Idearc. *See also* arguments made in Reply in Support of Response to Order to Show Cause at pp. 6-7. If the proposition that Verizon owns Idearc is a proposition of law, then that simply is not the law. It has never been the law that all corporations have shareholders at the moment of incorporation. Incorporation through filing a charter and election of directors always takes place before there are any shareholders. There is always a time lag.

C.  **Waiver and Laches Do Not Apply.**

Neither laches nor waiver are in the Pretrial Order. *See* Joint Pretrial Order (ECF No. 572). Even if they were, those defenses do not apply here. Both waiver and laches require that Idearc have a brain—here no board was ever installed. For further response *see* Reply in Support of Response to Order to Show Cause at pp. 6-8.

### III.  CONCLUSION

Plaintiff prays that the Court enter judgment in its favor, or alternatively, set for the case for trial.

Respectfully Submitted,

/s/ Werner A. Powers
Werner A. Powers
State Bar No. 16218800
Robin Phelan
State Bar No. 15903000
Patrick Keating
State Bar No. 00794074
David Taubenfeld
State Bar No. 19679450
HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7673
Telephone:    (214) 651-5000
Facsimile:    (214) 651-5940

Nicholas A. Foley
State Bar No. 07208620
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Telephone:    (214) 840-5300
Facsimile:    (214) 840-5301

ATTORNEYS FOR U.S. BANK
NATIONAL ASSOCIATION
as Litigation Trustee on Behalf of the
Idearc Inc. et al. Litigation Trust

## CERTIFICATE OF SERVICE

On March 15, 2013, the undersigned electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The undersigned hereby certifies that all counsel and/or pro se parties of record have been electronically served in accordance with Federal Rule of Civil Procedure 5(b)(2).

/s/ Werner A. Powers

D-2148528_1

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR**
**ENTRY OF JUDGMENT ON ADMISSIONS AND STIPULATED FACTS**          **Page 11**