UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-1842-G |
| VERIZON COMMUNICATIONS INC., *et al.*, | § § § § | **FILED UNDER SEAL** |
| Defendants. | § § | |

**PLAINTIFF'S APPENDIX IN SUPPORT OF ITS MOTION AND BRIEF
TO SUPPLEMENT PLAINTIFF'S BRIEFS IN SUPPORT OF
MOTION FOR JUDGMENT AND IN RESPONSE TO SHOW CAUSE ORDER**

U. S. Bank National Association, Litigation Trustee of the Idearc, Inc., *et al.* Litigation Trust files this Appendix containing the following documents in support of its Motion and Brief to Supplement Plaintiff's Briefs in Support of Motion for Judgment and in Response to Show Cause Order.

| EXHIBIT | APP. RANGE | DOCUMENT DESCRIPTION |
|---|---|---|
| 1 | 1 – 2 | Declaration Charles C. Keeble, Jr. |
| 1-A | 3 – 4 | Article entitled "The Equitable Case for Ratification" |
| 1-B | 5 – 8 | Article entitled "2013 Proposed Amendments to Delaware General Corporation Law" |
| 1-C | 9 – 28 | 2013 proposed amendments to Delaware General Corporation Law |

Respectfully Submitted,


/s/ Werner A. Powers
Werner A. Powers
State Bar No. 16218800
Robin Phelan
State Bar No. 15903000
Patrick Keating
State Bar No. 00794074
David Taubenfeld
State Bar No. 19679450

HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7673
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

Nicholas A. Foley
State Bar No. 07208620
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516

NELIGAN FOLEY LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Telephone:     (214) 840-5300
Telecopier:    (214) 840-5301

ATTORNEYS FOR U.S. BANK
NATIONAL ASSOCIATION
as Litigation Trustee on Behalf of the
Idearc Inc. et al. Litigation Trust

**CERTIFICATE OF SERVICE**

On April 2, 2013, the undersigned electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The undersigned hereby certifies that all counsel and/or *pro se* parties of record have been electronically served in accordance with Federal Rule of Civil Procedure 5(b)(2).

/s/ Werner A. Powers
Werner A. Powers

D-2155051_1

**1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, Litigation Trustee of the Idearc Inc. *et al.* Litigation Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. 3:10-CV-1842-G |
| VERIZON COMMUNICATIONS INC., *et al.*, | § § § | |
| Defendants. | § § | |

## DECLARATION OF CHARLES C. KEEBLE, JR.

1.    My name is Charles C. Keeble, Jr.. I am more than 21 years old, and I have never been convicted of a felony or of any crime involving moral turpitude. I am fully competent to make this declaration, and all of the facts set forth in this declaration are based on my personal knowledge and are true and correct.

2.    I am a lawyer with the law firm Haynes and Boone, LLP. I am one of the lawyers in the above-styled lawsuit representing Plaintiff U.S. Bank National Association, Litigation Trustee of the Idearc Inc. et al Litigation Trust (the "Trust").

3.    I make the following statements of fact based upon my personal knowledge and I am competent to testify in the matters set forth herein.

4.    I have attached documents behind this Declaration and designated each as a separate exhibit to the declaration. The exhibits are identified separately in the following format: "1-A," "1-B," "1-C." The exhibits attached to this declaration are true and correct copies of documents available from publicly available sources:

**APP. 1**

| Exhibit | App. Range | Document Description |
|---------|-----------|----------------------|
| 1-A | 3 – 4 | Article entitled "The Equitable Case for Ratification" |
| 1-B | 5 – 8 | Article entitled "2013 Proposed Amendments to Delaware General Corporation Law" |
| 1-C | 9 – 28 | 2013 proposed amendments to Delaware General Corporation Law |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 2nd day of April, 2013.

Charles C. Keeble, Jr.

D-2155042_1

2

APP. 2

**1-A**

# The Equitable Case for Ratification

Among the many significant proposed changes to Delaware's General Corporation Law that were submitted to the corporation law section of the Delaware State Bar Association this March for approval, the sections dealing with ratification of defective corporate acts stand out as particularly noteworthy.

John Mark Zeberkiewicz and Stephanie Norman

Delaware Business Court Insider,

2013-03-27 09:11:44 AM

Among the many significant proposed changes to Delaware's General Corporation Law that were submitted to the corporation law section of the Delaware State Bar Association this March for approval, the sections dealing with ratification of defective corporate acts stand out as particularly noteworthy. Although the proposed sections, which would become effective in April 2014 if enacted, are somewhat procedurally complex, the general idea of the proposed sections is that defective corporate acts may be subsequently validated through board (and, in some cases, stockholder) approval. The new sections would not provide the exclusive means of ratifying defective corporate acts, and acts that are susceptible to cure under the existing common law of ratification may still be effectively ratified through such means, regardless of compliance with the new ratification sections. While a properly ratified act would be given retroactive legal effect and would therefore be insulated from challenge on the grounds of the original defect in authorization after a specified period, it would not be immune from equitable attacks. Accordingly, despite ratification, these acts would remain subject to the "twice tested" rule mentioned in the Delaware Chancery Court's recent opinion in *Carsanaro v. Bloodhound Technologies*, -- A.3d --, C.A. No. 7301-VCL, (Del. Ch. Mar. 15, 2013).

If enacted, the new ratification sections would overturn the harsh precedent from the Delaware Supreme Court's opinion in *STAAR Surgical v. Waggoner*, 588 A.2d 1130 (Del. 1991), and applied in cases like *Liebermann v. Frangiosa*, 844 A.2d 992 (Del. Ch. 2002), and *Blades v. Wisehart*, C.A. No. 5317-VCS, (Del. Ch. Nov. 17, 2010), that stock not issued in strict compliance with statutory formalities may be found void or voidable. Without a statutory basis to hold otherwise, the Delaware courts have "refused to overlook the statutory invalidity of stock even in situations when that might generate an inequitable result," as the court held in *Liebermann,* and have declined to "ignore the statutory infirmity" in stock issuances simply because their "equitable heartstrings have been plucked," as the court held in *Blades*.

The underlying rationale for the principle in these cases is that certainty in a corporation's capital structure is so fundamentally important that it must be fixed with the type of clarity that can only come through strict conformity with the statutory procedures that transform offers, promises and payments into personal property imbued with specified characteristics. While not without some appeal, the consequences of this line of reasoning have, perversely, introduced uncertainty into capital structures that appeared otherwise sound. In at

1

least one opinion post-*STAAR*, the Chancery Court recognized this reality and permitted ratification of a defective stock issuance — in *Kalageorgi v. Victor Kamkin*, 750 A.2d 531 (Del. Ch. 1999). Despite reciting (albeit without express citation) *STAAR*'s basis for adhering to formalism, the *Kalageorgi* court was apparently troubled with the situation before it, which it described as a "counterexample" of the typical scenario where "the imperatives of law and the demands of equity pull in the same direction." The court stated that invalidating stock for "purely formalistic reasons would defeat not only the board's clear intent but also the purpose of the formal requirements themselves, which is to create indisputable evidence that the board intended to authorize the issuance of the securities."

Despite this tension in following form over equity, particularly in situations involving the validity of a stock issuance, *STAAR* remains controlling precedent, and its restrictions on remediating defective corporate acts often leave corporations and their counsel in a bind — frequently at an inopportune time, as in the periods leading up to an initial public offering or a significant new private placement, when counsel is charged with providing a valid issuance opinion and begins culling through years' worth of corporate records (or, worse yet, discovers that there are no records to cull through). Where serious problems or gaps are uncovered, the potential fixes are often either impracticable or, even if possible, costly and undesirable for other reasons, like tax or accounting. The new ratification sections would provide corporations (and their counsel) a practical means to address these problems, in ways that would give effect to the corporations' and its investors' intent and would enable counsel to confidently opine on the validity of the stock.

What the new sections would not do is circumscribe the court's power to invalidate stock or other corporate acts, whether or not validated under the new sections, on equitable grounds. Although not raised in the context of ratification, the Chancery Court's recent opinion in *Bloodhound* provides some insight into how the Delaware courts would likely treat equitable challenges to defective corporate acts ratified in accordance with the new sections (assuming their enactment). The *Bloodhound* court addressed alleged statutory defects in an amendment to the corporation's certificate of incorporation. While the court, ruling on a motion to dismiss, found that the complaint stated a claim with respect to certain aspects of the amendment, it found that an amendment resetting the economics of certain series of preferred stock was not statutorily invalid. Nevertheless, the statutory validity of the amendment did not end the analysis. As the court stated, "Corporate acts are 'twice-tested,' once for statutory compliance and again in equity." Thus, for example, a Delaware court would not be precluded from granting equitable relief for a stock issuance or other act, even if ratified under the new sections, on fiduciary duty grounds. The ratified act would be treated as any other "twice-tested" act that satisfies the technical, but not the equitable, part of the test, as was the case in *Johnston v. Pedersen*, 28 A.3d 1079 (Del. Ch. 2011), where the court declined to enforce a vote of the preferred stockholder's super-voting stock where the directors, despite issuing such super-voting preferred stock in compliance with statutory requirements, were found to have violated their fiduciary duties by issuing the stock to defeat an insurgent slate in a proxy contest.

Simply put, the new ratification sections, if enacted, would help to minimize the circumstances in which equity and law pull in different directions, freeing the Delaware courts to decide cases with greater regard to the underlying equities and the parties' understandings and original intentions.

*__John Mark Zeberkiewicz__ is a director, and __Stephanie Norman__ is an associate, of Richards, Layton & Finger. They focus on transactional matters involving Delaware corporations, including mergers and acquisitions, corporate governance and corporate finance. The views expressed in this article are those of the authors and not necessarily those of the firm or its clients.*

**1-B**

# Pepper Hamilton LLP
Attorneys at Law

# Corporate and Securities Law

March 25, 2013

Berwyn | Boston | Detroit | Harrisburg | Los Angeles | New York | Orange County | Philadelphia | Pittsburgh | Princeton | Silicon Valley | Washington, D.C. | Wilmington

# 2013 Proposed Amendments to Delaware General Corporation Law

Matthew M. Greenberg | greenbergm@pepperlaw.com
Christopher B. Chuff | chuffc@pepperlaw.com

On March 20, 2013, legislation proposing to amend the Delaware General Corporation Law, 8 *Del. C.* §§ 1-101, *et. seq.* (DGCL) was submitted to the Corporation Law Section of the Delaware State Bar Association. If the proposed legislation is enacted, the amendments would make several significant changes to the DGCL. The proposed legislation seeks to: (1) clarify the board of directors' authority to determine the consideration for a stock issuance; (2) provide a safe harbor procedure for ratifying corporate acts that are void because authorization of those acts failed to comply with the DGCL or the corporation's organizational documents; (3) permit merger agreements to eliminate the vote requirement for certain second-step mergers; (4) add a new subchapter to the DGCL governing "public benefit corporations," which are defined as corporations organized to promote, *inter alia*, charitable, artistic, social, or educational goals; and (5) deter the formation of "shelf corporations," which are corporations formed with no directors or stockholders with the intent to use the entity several years in the future.

## Board's Power to Determine Consideration for Stock Issuance – Section 152

The proposed legislation amends Section 152 of the DGCL, which addresses the authorization and issuance of capital stock, to clarify that a board may determine the price of a stock issuance by reference to an approved formula that calculates the price. The proposed amendments clarify that the board may determine that consideration by utilizing a pre-approved formula, which could be useful in predetermining the consideration for stock and may utilize factors such as market price of the company's stock over some period of time.

## Ratification of Defective Corporate Acts - Proposed Sections 204 and 205

The proposed legislation adds two new sections to the DGCL to provide corporations a means of ratifying corporate acts that initially may not have been properly authorized. The proposed amendments are intended to overturn cases such as *STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130 (Del. 1991) and *Blades v. Wisehart*, 2010 WL 4638603 (Del. Ch. Nov. 17, 2010), which forbid validation of corporate acts, by ratification or on equitable grounds, that are void because of a failure to comply with the DGCL or the corporation's organizational documents. Proposed Section 204 provides a safe-harbor procedure for corporations to ratify corporate action that could be challenged as void or voidable because the authorization of that action did not comply with the DGCL, corporate organizational documents, or other corporate agreements. Section 205 would give the Court of Chancery jurisdiction to hear and determine cases regarding defective corporate acts, whether or not ratified under the self-help process.

Specifically, Section 204 provides the means to ratify "defective corporate acts." A defective corporate act is broadly defined as any act or transaction that is within the corporation's power, but is void or voidable due to a "failure of authorization." A failure of authorization occurs where a corporation fails to authorize an act or transaction in compliance with the DGCL, the corporation's certificate of incorporation or bylaws, or any other agreement to which the corporation is a party.

Under proposed Section 204, to ratify a defective corporate act, the board of directors must adopt a resolution that (1) describes the defective corporate act, (2) sets forth the date and time the defective corporate act occurred, (3) explain the nature of the failure of authorization; and (4) state that the board of directors

This publication may contain attorney advertising

This material in this publication was created as of the date set forth above and is based on laws, court decisions, administrative rulings and congressional materials existing at that time, and should not be construed as legal advice or legal opinions on specific facts. The information in this publication is not intended to create, and the transmission and receipt of it does not constitute, a lawyer-client relationship. Please send address corrections to phinfo@pepperlaw.com. ©2013 Pepper Hamilton LLP. All Rights Reserved.

Pepper Hamilton LLP
Attorneys at Law

approves the ratification of the defective corporate act. If the defective corporate act involved the over-issuance of "putative stock,"1 the resolution must also state the number and type of shares of putative stock issued and the dates that such putative stock were purported to have been issued. Section 204 also provides a mechanism for determining which shares constitute the "putative" shares. Ratification of a defective corporate act under this section will relate back to and retroactively validate the corporate act at the time it occurred.

Section 204 provides that the quorum and voting requirements applicable to a board resolution shall be the quorum and voting requirements that exist at the time of the initial adoption of the corporate act proposed to be ratified, even if the quorum and voting requirements that were in effect at the time of the defective corporate act would have required a greater vote. If directors were elected by specified classes or series of stock that are no longer in office because such classes or series of stock are no longer outstanding, Section 204 provides that the vote of such directors is not required.2

Within 60 days of board resolution, the corporation must provide a detailed notice to all current stockholders, including holders of putative stock, and both voting and non-voting stockholders as of the time of the defective act.3 The notice must (1) provide a copy of the resolution and (2) notify shareholders that challenges to the resolution must be brought within 120 days of the board's approval of such resolution.

If the defective corporate act would have required a stockholder vote, the board must submit its resolution to the stockholders for approval. In addition, to avoid circumvention of Section 203, the DGCL's principal anti-takeover provision, the board of directors must submit its resolution to a shareholder vote if the corporate act is defective because of a failure to comply with Section 203. Section 204 provides that the quorum and vote requirements necessary to ratify the act are those applicable at the time of such adoption for such defective corporate act unless the DGCL, the organizational documents of the corporation, or another plan or agreement in effect at the time of the defective corporate act would have required a greater vote. Similar to the board approval provisions, the stockholder and quorum provisions make exceptions for classes or series of stock that are no longer outstanding. To ratify the election of directors, holders of a majority of shares must vote for the ratification, unless a greater vote would

have been required at the time of election. As such, Delaware's default standard for electing directors, a "plurality," would not be sufficient to ratify an election. In addition, ratification of a corporate act that is defective because the corporation failed to comply with Section 203 must be approved by a two-thirds vote of the voting stock owned by holders other than the "interested stockholder," as required by Section 203.

If a resolution must be submitted for stockholder approval under this provision, the board must provide a detailed notice to all current holders of the corporation's stock, including holders of putative stock, as well as holders of valid and putative stock as of the time of the defective corporate act, whether or not such shares are voting or nonvoting, provided that the former holders of stock or putative stock can be identified from the corporation's records. The notice must be given 20 days before the stockholder meeting to approve the resolution and must provide the same information that would be provided to stockholders where a stockholders vote is not required, including a statement regarding the 120-day limitations period to challenge ratified acts. If the board gives notice under proposed Section 204(d), it satisfies its duty to give notice under proposed Section 204(h), as described above.

If the defective corporate act would have required filing a certificate with the Secretary of State, then, to ratify such act, the corporation must also file a "certificate of validation." The certificate of validation must provide: (1) a copy of the resolution; (2) the date of the resolution; (3) the provisions of the certificate that would have been required to initially authorize the defective corporate act; and (4) if a certificate had previously been filed in conjunction with the defective corporate act, the title and date of such certificate.

Section 204 specifically provides that, unless determined otherwise by the Court of Chancery pursuant to proposed Section 205, the ratification would relate back to the time of the original act. As a result, issuances of putative stock would be deemed to be issued as of the original date of issuance upon ratification.

Unless notice was previously provided to stockholders, the proposed amendments also require notice of the ratification be provided to all current holders of the corporation's valid and putative stock and also to holders of the corporation's valid and putative stock as of the time of the defective corporate act to be ratified to ensure that no party is prejudiced.

Another mechanism to address ratification is proposed Section 205, which empowers the Court of Chancery, upon application, to: (1) determine the validity of defective corporate action, whether or not ratified by the corporation; (2) hear challenges to a board's ratification under Section 204; and (3) modify or waive any of the procedures set forth in Section 204 to ratify a defective corporation act. Section 205 affords corporations the ability, through application for relief to the Court of Chancery, to ratify corporate acts that may not be ratified under Section 204, such as where there is no valid board. It also gives parties the power to challenge the defective corporate act or the board's ratification of that act. As noted, challenges to a defective corporate act or ratification of that act must be brought within 120 days of board resolution or, if required, stockholder approval.

Notably, although the proposed amendments provide a corporation with significant authority to ratify defective corporate acts, the amendments do not affect directors' fiduciary duties associated with approving such corporate acts or transactions.

PERMITTING ELIMINATION OF REQUIRED VOTE FOR PARTICULAR MERGERS – PROPOSED SECTION 251(H)

The proposed amendments include a new provision to Delaware's merger statute. New Section 251(h) would permit corporations satisfying certain requirements to include a provision in merger agreements that would eliminate the requirement of a stockholder vote for approval of a second-step merger following a public tender offer. The new subsection would only apply to target corporations whose stock is traded on a national stock exchange or held of record by more than 2,000 shareholders immediately prior to the execution of the merger agreement.

Under proposed Section 251(h), a target corporation's shareholders would not be required to vote on a second-step merger if: (1) the merger agreement contains a provision expressly subjecting the merger to Section 251(h); (2) the first-step tender or exchange offer is for any and all of the outstanding stock of the target corporation and on the terms provided by the merger agreement; (3) upon consummation of the tender or exchange offer, the acquiring corporation owns the amount of stock of the target corporation that would be otherwise necessary to approve the second-step merger; (4) no party to the merger agreement, at the time approved by the board, is an "interested stockholder," as defined in Section 203(c) of the DGCL; (5) the acquiring and

target corporation merge pursuant to the agreement; and (6) the holders of target shares that are not cancelled are paid identical consideration, in kind and amount, that was paid to the shareholders who tendered or exchanged their shares in the first step of the merger.

Proposed Section 251(h) also provides appraisal rights to the minority shareholders that are cashed-out under this section, unless the acquiring corporation owned all of the target corporation stock at the time of the merger. Notably, proposed Section 251(h) provides that a corporation may include a provision in its certificate of incorporation forbidding the corporation from using this subsection to circumvent a stockholder vote, even if the requirements of Section 251(h) are otherwise met. In addition, the proposed subsection does not alter directors' fiduciary duties associated with approving a merger.

The proposed legislation would also amend Section 252 of the DGCL to provide for the usage of this provision in the context of a Delaware corporation merging with a non-Delaware corporation.

PUBLIC BENEFIT CORPORATIONS – PROPOSED SUBCHAPTER XV (SECTIONS 361-368)

The 2013 proposed amendments would add a new subchapter XV to the DGCL (Sections 361-368). The new subchapter would authorize corporations to form as "public benefit corporations." Public benefit corporations are for-profit corporations that are managed to benefit not only of stockholders but also other persons, entities, communities, or interests. This form of corporation allows the stakeholders to invest in an entity that may sacrifice some profit in order to benefit other interests.

Public benefit corporations would be subject to all applicable provisions of the DGCL, except as modified by Section 361-368. The proposed subchapter most notably would alter the fiduciary duties of officers and directors of public benefit corporations by allowing officers and directors to consider and balance the interests of stockholders, persons and entities affected by the corporation's actions, and the public benefits that the corporation was formed to promote. Directors will be deemed to have satisfied their fiduciary duties with respect to balancing the interests of multiple parties, if their decisions are informed, disinterested, and not such that no person of ordinary judgment would approve.

Pepper Hamilton LLP
Attorneys at Law

Incorporators of every public benefit corporation would be required to specify, in the certificate of incorporation, their intent to form a public benefit corporation and the public benefits that the corporation is being formed to promote. The proposed legislation generally defines "public benefits" to include benefits that are artistic, charitable, cultural, economic, educational, literary, medical, religious, scientific, or technological in nature.

Proposed subchapter XV would require the corporation to provide periodic notices (at least every two years) to stockholders regarding the efforts taken to achieve the public benefits the corporation was formed to promote. Moreover, the proposed subchapter would authorize holders of at least 2 percent of the corporation's stock (or for publicly traded corporations, the lesser of 2 percent of the corporation's stock and stock having a market value of at least $2 million) to bring a derivative action to enforce, among other things, the corporation's promotion of the public benefits in its certificate.

The proposed subchapter also requires a public benefit corporation to obtain a two-thirds stockholder vote to amend their certificate of incorporation or merge with other corporations if those actions would delete or amend the public benefits the corporation was initially formed to promote. In addition, to convert an existing corporation into a public benefit corporation, the corporation would be required to obtain a 90 percent vote of each class of stock, and the conversion of an existing corporation into a public benefit corporation would entitle dissenting shareholders to appraisal rights.

By using a Delaware corporation, entrepreneurs and investors who wish to pursue public benefit goals in addition to pecuniary goals will be able to rely on Delaware corporate law, the DGCL and Delaware's judiciary to provide a measure of stability and predictability in an area of law that continues to evolve rapidly.

## Deterring 'Shelf Corporations' – Section 312(b)

The proposed amendments to Section 312(b) seek to restrict the ability to form "shelf corporations," which are corporations organized without stockholders and directors and are intended to be used several years from formation. The amendments accomplish this goal by (1) clarifying that only a corporation's directors or stockholders may authorize a renewal or revival of a corporation, (2) prohibiting an incorporator from signing an annual report,

other than the initial report, and (3) prohibiting annual reports to specify "no directors," other than the initial report or reports filed in conjunction with dissolution.

### Effective Dates

The amendments, other than the amendments dealing with ratification, would become effective on August 1, 2013. The amendments addressing ratification would become effective on April 1, 2014.

### Endnotes

1   Section 204 defines as shares of any class or series of stock that: (a) but for the failure of authorization, would constitute valid stock or (b) cannot be determined by the board of directors to be valid stock.

2   If, due to defects, a corporation does not have a validly elected board, the parties would need to seek relief from the Court of Chancery pursuant to either new Section 205 or existing Section 225.

3   The notice requirement is waived with respect to stockholders as of the time the invalid act was taken if the identity of those stockholders cannot be determined from the corporation's records.



RSS on www.pepperlaw.com

Subscribe to the latest Pepper articles via RSS feeds. Visit www.pepperlaw.com today and click on the RSS button on the publications page to subscribe to our latest articles in your news reader.

**1-C**

AN ACT TO AMEND TITLE 8 OF THE DELAWARE CODE RELATING TO THE GENERAL CORPORATION LAW.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE (Two-thirds of all members elected to each house thereof concurring therein):

Section 1.  Amend § 114(a), Title 8 of the Delaware Code by making insertions as shown by underlining as follows:

(a) Except as otherwise provided in subsections (b) and (c) of this section, the provisions of this chapter and of chapter 5 of this title shall apply to nonstock corporations in the manner specified in the following paragraphs (a)(1)-(4) of this section:

(1) All references to stockholders of the corporation shall be deemed to refer to members of the corporation;

(2) All references to the board of directors of the corporation shall be deemed to refer to the governing body of the corporation;

(3) All references to directors or to members of the board of directors of the corporation shall be deemed to refer to members of the governing body of the corporation; and

(4) All references to stock, capital stock, or shares thereof of a corporation authorized to issue capital stock shall be deemed to refer to memberships of a nonprofit nonstock corporation and to membership interests of any other nonstock corporation.

Section 2.  Amend § 114(b) Title 8 of the Delaware Code by making insertions as shown by underlining and deletions as shown by strike through as follows:

(b) Subsection (a) of this section shall not apply to:

(1) Sections 102(a)(4), (b)(1) and (2), 109(a), 114, 141, 154, 215, 228, 230(b), 241, 242, 253, 254, 255, 256, 257, 258, 271, 276, 311, 312, 313, and 390, and 503 of this title, which apply to nonstock corporations by their terms;

(2) Sections 151, 152, 153, 155, 156, 157(d), 158, 161, 162, 163, 164, 165, 166, 167, 168, 203, 211, 212, 213, 214, 216, 219, 222, 231, 243, 244, 251, 252, 267, 274, 275, 324, and 391, and 502(a)(5) of this title; and

(3) Subchapter XIV and subchapter XV of this chapter.

Section 3.  Amend § 152, Title 8 of the Delaware Code by making additions as shown by underlining as follows:

The consideration, as determined pursuant to § 153(a) and (b) of this title, for subscriptions to, or the purchase of, the capital stock to be issued by a corporation shall be paid in such form and in such manner as the board of directors shall determine. The board of directors may authorize capital stock to be issued for consideration consisting of cash, any tangible or

intangible property or any benefit to the corporation, or any combination thereof. <u>The board of directors may determine the amount of such consideration by approving a formula by which the amount of consideration is determined.</u> In the absence of actual fraud in the transaction, the judgment of the directors as to the value of such consideration shall be conclusive. The capital stock so issued shall be deemed to be fully paid and nonassessable stock upon receipt by the corporation of such consideration; provided, however, nothing contained herein shall prevent the board of directors from issuing partly paid shares under § 156 of this title.

Section 4.   Amend Title 8 of the Delaware Code by inserting a new § 204 as follows:

**"§ 204. Ratification of defective corporate acts and stock**

(a)      Subject to subsection (f) of this section, no defective corporate act or putative stock shall be void or voidable solely as a result of a failure of authorization if ratified as provided in this section or validated by the Court of Chancery in a proceeding brought under § 205 of this title.

(b)      In order to ratify a defective corporate act pursuant to this section, the board of directors of the corporation shall adopt a resolution stating:

(1) the defective corporate act to be ratified;

(2) the time of the defective corporate act;

(3) if such defective corporate act involved the issuance of shares of putative stock, the number and type of shares of putative stock issued and the date or dates upon which such putative shares were purported to have been issued;

(4) the nature of the failure of authorization in respect of the defective corporate act to be ratified; and

(5) that the board of directors approves the ratification of the defective corporate act.

The resolution may also provide that, at any time before the validation effective time, notwithstanding adoption of the resolution by stockholders, the board of directors may abandon the resolution without further action of the stockholders. The quorum and voting requirements applicable to the adoption of such resolution by the board of directors shall be the quorum and voting requirements applicable at the time of such adoption for the type of defective corporate act proposed to be ratified; provided that if the certificate of incorporation or bylaws of the corporation, any plan or agreement to which the corporation was a party or any provision of this title, in each case as in effect as of the time of the defective corporate act, would have required a larger number or portion of directors or of specified directors for a quorum to be present or to approve the defective corporate act, such larger number or portion of such directors or such specified directors shall be required for a quorum to be present or to adopt the resolution, as applicable, except that the presence or approval of any director elected, appointed or nominated

2

by holders of any class or series of which no shares are then outstanding, or by any person that is no longer a stockholder, shall not be required.

(c)     The resolution adopted pursuant to subsection (b) of this section shall be submitted to stockholders for adoption as provided in subsection (d) of this section, unless (1) no other provision of this title, and no provision of the certificate of incorporation or bylaws of the corporation, or of any plan or agreement to which the corporation is a party, would have required stockholder approval of the defective corporate act to be ratified, either at the time of the defective corporate act or at the time when the resolution required by subsection (b) of this section is adopted, and (2) the defective corporate act to be ratified did not result from a failure to comply with § 203 of this title.

(d)     If subsection (c) of this section requires that the resolution be submitted to stockholders, due notice of the time, place, if any, and purpose of the meeting shall be given at least 20 days before the date of the meeting to each holder of valid stock and putative stock, whether voting or nonvoting, at the address of such holder as it appears or most recently appeared, as appropriate, on the records of the corporation. The notice shall also be given to the holders of record of valid stock and putative stock, whether voting or nonvoting, as of the time of the defective corporate act, other than holders whose identities or addresses cannot be determined from the records of the corporation. The notice shall contain a copy of the resolution and a statement that any claim that the defective corporate act or putative stock ratified hereunder is void or voidable due to the identified failure of authorization, or that the Court of Chancery should declare in its discretion that a ratification in accordance with this section not be effective or be effective only on certain conditions must be brought within 120 days from the validation effective time. At such meeting the quorum and voting requirements applicable to the adoption of such resolution by the stockholders shall be the quorum and voting requirements applicable at the time of such adoption for the type of defective corporate act to be ratified, except that:

(1) if the certificate of incorporation or bylaws of the corporation, any plan or agreement to which the corporation was a party or any provision of this title in effect as of the time of the defective corporate act would have required a larger number or portion of stock or of any class or series thereof or of specified stockholders for a quorum to be present or to approve the defective corporate act, the presence or approval of such larger number or portion of stock or of such class or series thereof or of such specified stockholders shall be required for a quorum to be present or to adopt the resolution, as applicable, except that the presence or approval of shares of any class or series of which no shares are then outstanding, or of any person that is no longer a stockholder, shall not be required;

(2) the adoption of a resolution to ratify the election of a director shall require the affirmative vote of the majority of shares present at the meeting and entitled to vote on the election of such director, except that if the certificate of incorporation or bylaws of the corporation then in effect or in effect at the time of the defective election require or required a larger number or portion of stock to elect such director, the affirmative vote of such larger number or portion of stock shall be required to ratify the election of such director; and

(3) in the event of a failure of authorization resulting from failure to comply with the provisions of § 203 of this title, the ratification of the defective corporate act shall require the vote set forth in § 203(a)(3) of this title, regardless of whether such vote would have otherwise been required.

(e)     If the defective corporate act ratified pursuant to this section would have required under any other section of this title the filing of a certificate in accordance with § 103 of this title, then, whether or not a certificate was previously filed in respect of such defective corporate act and in lieu of filing the certificate otherwise required by this title, the corporation shall file a certificate of validation in accordance with § 103 of this title.  The certificate of validation shall set forth:

(1) the resolution adopted in accordance with subsection (b) of this section, the date of adoption of such resolution by the board of directors and, if applicable, by the stockholders and a statement that such resolution was duly adopted in accordance with this section;

(2) if a certificate was previously filed under § 103 of this title in respect of the defective corporate act, the title and date of filing of such prior certificate and any certificates of correction thereto; and

(3) such provisions as would be required under any other section of this title to be included in the certificate that otherwise would have been required to be filed pursuant to this title with respect to such defective corporate act.

(f)     From and after the validation effective time, unless otherwise determined in an action brought pursuant to § 205 of this title: (1) each defective corporate act set forth in the resolution adopted pursuant to subsection (b) of this section shall no longer be deemed void or voidable as a result of a failure of authorization identified in such resolution and such effect shall be retroactive to the time of the defective corporate act, and (2) each share or fraction of a share of putative stock issued or purportedly issued pursuant to such defective corporate act and identified in the resolution required by subsection (b) of this section shall no longer be deemed void or voidable as a result of a failure of authorization identified in such resolution and, in the absence of any failure of authorization not ratified, shall be deemed to be an identical share or fraction of a share of outstanding stock as of the time it was purportedly issued.

(g)     Prompt notice of the adoption of a resolution pursuant to this section shall be given to all holders of valid stock and putative stock, whether voting or nonvoting, as of the date of adoption of such resolution by the board of directors, or as of a date within 60 days after the date of adoption of such resolution, as established by the board of directors, at the address of such holder as it appears or most recently appeared, as appropriate, on the records of the corporation.  The notice shall also be given to the holders of record of valid stock and putative stock, whether voting or nonvoting, as of the time of the defective corporate act, other than holders whose identities or addresses cannot be determined from the records of the corporation. The notice shall contain a copy of the resolution and a statement that any claim that the defective corporate act or putative stock ratified hereunder is void or voidable due to the identified failure of authorization, or that the Court of Chancery should declare in its discretion that a ratification

4

in accordance with this section not be effective or be effective only on certain conditions must be brought within 120 days from the validation effective time. Notwithstanding the foregoing, no such notice shall be required if notice of the resolution is to be given in accordance with subsection (d) of this section. Solely for purposes of subsections (d) and (g) of this section, notice to holders of putative stock, and notice to holders of valid stock and putative stock as of the time of the defective corporate act, shall be treated as notice to holders of valid stock for purposes of § 222 and §§ 229, 230, 232 and 233 of this title.

(h)     As used in this section and in § 205 of this title only, the term:

(1)     "Defective corporate act" means an overissue, an election or appointment of directors that is void or voidable due to a failure of authorization, or any act or transaction purportedly taken by or on behalf of the corporation that is, and at the time such act or transaction was purportedly taken would have been, within the power of a corporation under subchapter II of this title, but is void or voidable due to a failure of authorization;

(2)     "Failure of authorization" means the failure to authorize or effect an act or transaction in compliance with the provisions of this title, the certificate of incorporation or bylaws of the corporation, or any plan or agreement to which the corporation is a party, if and to the extent such failure would render such act or transaction void or voidable;

(3)     "Overissue" means the purported issuance of (a) shares of capital stock of a class or series in excess of the number of shares of such class or series the corporation has the power to issue under § 161 of this title at the time of such issuance, or (b) shares of any class or series of capital stock that is not then authorized for issuance by the certificate of incorporation of the corporation;

(4)     "Putative stock" means the shares of any class or series of capital stock of the corporation (including shares issued upon exercise of options, rights, warrants or other securities convertible into shares of capital stock of the corporation, or interests with respect thereto that were created or issued pursuant to a defective corporate act) that: (a) but for any failure of authorization, would constitute valid stock, or (b) cannot be determined by the board of directors to be valid stock;

(5)     "Time of the defective corporate act" means the date and time the defective corporate act was purported to have been taken;

(6)     "Valid stock" means the shares of any class or series of capital stock of the corporation that have been duly authorized and validly issued in accordance with this title;

(7)     "Validation effective time" with respect to any defective corporate act ratified pursuant to this section means the later of (a) the time at which the resolution submitted to the stockholders for adoption pursuant to subsection (c) of this section is adopted by such stockholders, or if no such vote of stockholders is required to adopt the resolution, the time at which the notice required by subsection (g) of this section is given,

and (b) the time at which any certificate of validation filed pursuant to subsection (e) of this section shall become effective in accordance with § 103 of this title.

In the absence of actual fraud in the transaction, the judgment of the board of directors that shares of stock are valid stock or putative stock shall be conclusive, unless otherwise determined by the Court of Chancery in a proceeding brought pursuant to § 205 of this title.

(i)      Ratification under this section or validation under § 205 of this title shall not be deemed to be the exclusive means of ratifying or validating any act or transaction taken by or on behalf of the corporation, including any defective corporate act, or any issuance of stock, including any putative stock, and the absence or failure of ratification in accordance with either this section or validation under § 205 of this title shall not, of itself, affect the validity or effectiveness of any act or transaction or the issuance of any stock properly ratified under common law or otherwise, nor shall it create a presumption that any such act or transaction is or was a defective corporate act or that such stock is void or voidable."

Section 5.  Amend Title 8 of the Delaware Code by inserting a new § 205 as follows:

**"§ 205.  Proceedings regarding validity of defective corporate acts and stock**

(a)      Subject to subsection (f) of this section, upon application by the corporation, any successor entity to the corporation, any member of the board of directors, any record or beneficial holder of valid stock or putative stock, any record or beneficial holder of valid or putative stock as of the time of a defective corporate act ratified pursuant to § 204 of this title, or any other person claiming to be substantially and adversely affected by a ratification pursuant to § 204 of this title, the Court of Chancery may:

(1)      Determine the validity and effectiveness of any defective corporate act ratified pursuant to § 204 of this title;

(2)      Determine the validity and effectiveness of the ratification of any defective corporate act pursuant to § 204 of this title;

(3)      Determine the validity and effectiveness of any defective corporate act not ratified or not ratified effectively pursuant to § 204 of this title;

(4)      Determine the validity of any corporate act or transaction and any stock, rights or options to acquire stock; and

(5)      Modify or waive any of the procedures set forth in § 204 of this title to ratify a defective corporate act.

(b)      In connection with an action under this section, the Court of Chancery may:

(1)     Declare that a ratification in accordance with and pursuant to § 204 of this title is not effective or shall only be effective at a time or upon conditions established by the Court;

(2)     Validate and declare effective any defective corporate act or putative stock and impose conditions upon such validation by the Court;

(3)     Require measures to remedy or avoid harm to any person substantially and adversely affected by a ratification pursuant to § 204 of this title or from any order of the Court pursuant to this section, excluding any harm that would have resulted if the defective corporate act had been valid when approved or effectuated;

(4)     Order the Secretary of State to accept an instrument for filing with an effective time specified by the Court, which effective time may be prior or subsequent to the time of such order, provided that the filing date of such instrument shall be determined in accordance with § 103(c)(3) of this title;

(5)     Approve a stock ledger for the corporation that includes any stock ratified or validated in accordance with this section or with § 204 of this title;

(6)     Declare that shares of putative stock are shares of valid stock or require a corporation to issue and deliver shares of valid stock in place of any shares of putative stock;

(7)     Order that a meeting of holders of valid stock or putative stock be held and exercise the powers provided to the Court under § 227 of this title with respect to such a meeting;

(8)     Declare that a defective corporate act validated by the Court shall be effective as of the time of the defective corporate act or at such other time as the Court shall determine;

(9)     Declare that putative stock validated by the Court shall be deemed to be an identical share or fraction of a share of valid stock as of the time originally issued or purportedly issued or at such other time as the Court shall determine; and

(10)     Make such other orders regarding such matters as it deems proper under the circumstances.

(c)     Service of the application under subsection (a) of this section upon the registered agent of the corporation shall be deemed to be service upon the corporation, and no other party need be joined in order for the Court of Chancery to adjudicate the matter.  In an action filed by the corporation, the Court may require notice of the action be provided to other persons specified by the Court and permit such other persons to intervene in the action.

(d)     In connection with the resolution of matters pursuant to subsections (a) and (b) of this section, the Court of Chancery may consider the following:

(1)     Whether the defective corporate act was originally approved or effectuated with the belief that the approval or effectuation was in compliance with the provisions of this title, the certificate of incorporation or bylaws of the corporation;

(2)     Whether the corporation and board of directors has treated the defective corporate act as a valid act or transaction and whether any person has acted in reliance on the public record that such defective corporate act was valid;

(3)     Whether any  person will be or was harmed by the ratification or validation of the defective corporate act, excluding any harm that would have resulted if the defective corporate act had been valid when approved or effectuated;

(4)     Whether any person will be harmed by the failure to ratify or validate the defective corporate act; and

(5)     Any other factors or considerations the Court deems just and equitable.

(e)     The Court of Chancery is hereby vested with exclusive jurisdiction to hear and determine all actions brought under this section.

(f)     Notwithstanding any other provision of this section, no action asserting (1) that a defective corporate act or putative stock ratified in accordance with § 204 of this title is void or voidable due to a failure of authorization identified in the resolution adopted in accordance with §204(b) or (2) that the Court of Chancery should declare in its discretion that a ratification in accordance with § 204 not be effective or be effective only on certain conditions, may be brought after the expiration of 120 days from the validation effective time, except that this subsection shall not apply to an action asserting that a ratification was not accomplished in accordance with § 204 of this title or to any person to whom notice of the ratification was required to have been given pursuant to § 204(d) or § 204(g) of this title, but to whom such notice was not given."

Section 6.  Amend § 251, Title 8 of the Delaware Code by inserting a new § 251(h) as follows:

(h) Notwithstanding the requirements of subsection (c) of this section, unless expressly required by its certificate of incorporation, no vote of stockholders of a constituent corporation whose shares are listed on a national securities exchange or held of record by more than 2,000 holders immediately prior to the execution of the agreement of merger by such constituent corporation shall be necessary to authorize a merger if: (1) the agreement of merger, which must be entered into on or after August 1, 2013, expressly provides that such merger shall be governed by this subsection and shall be effected as soon as practicable following the consummation of the offer referred to in clause (2) of this subsection; (2) a corporation consummates a tender or exchange offer for any and all of the outstanding stock of such constituent corporation on the terms provided in such agreement of merger that, absent this subsection, would be entitled to vote on the adoption or rejection of the agreement of merger; (3) following the consummation of such offer, the consummating corporation owns at least such percentage of the stock, and of each class

8

or series thereof, of such constituent corporation that, absent this subsection, would be required to adopt the agreement of merger by this chapter and by the certificate of incorporation of such constituent corporation; (4) at the time such constituent corporation's board of directors approves the agreement of merger, no other party to such agreement is an "interested stockholder" (as defined in § 203(c) of this title) of such constituent corporation; (5) the corporation consummating the offer described in clause (2) of this subsection merges with or into such constituent corporation pursuant to such agreement; and (6) the outstanding shares of each class or series of stock of the constituent corporation not to be cancelled in the merger are to be converted in such merger into, or into the right to receive, the same amount and kind of cash, property, rights or securities paid for shares of such class or series of stock of such constituent corporation upon consummation of the offer referred to in clause (2) of this subsection.  If an agreement of merger is adopted without the vote of stockholders of a corporation pursuant to this subsection, the secretary or assistant secretary of the surviving corporation shall certify on the agreement that the agreement has been adopted pursuant to this subsection and that the conditions specified in this subsection (other than the condition listed in clause (5) of this subsection) have been satisfied; provided that such certification on the agreement shall not be required if a certificate of merger is filed in lieu of filing the agreement. The agreement so adopted and certified shall then be filed and shall become effective, in accordance with § 103 of this title.  Such filing shall constitute a representation by the person who executes the agreement that the facts stated in the certificate remain true immediately prior to such filing.

Section 7.  Amend § 252(e), Title 8 of the Delaware Code by making insertions as shown by underlining and deletions as shown by strike through as follows:

(c) Subsection (d) of § 251 and the second sentence of § 251(e) of this title shall apply to any merger or consolidation under this section; § 251(e) of this title shall apply to a merger under this section in which the surviving corporation is a corporation of this State; and § 251(f) and § 251(h) of this title shall apply to any merger under this section.

Section 8.  Amend § 254(e), Title 8 of the Delaware Code by making deletions as shown by strike through as follows:

(e) Sections 251(d), 251(e), 251(f), 252(d), 259 through 262 and 328 of this title shall, insofar as they are applicable, apply to mergers or consolidations between corporations and joint-stock associations; the word "corporation" where applicable, as used in those sections, being deemed to include joint-stock associations as defined herein. The second sentence of § 251(e) of this title shall be applicable to any merger or consolidation under this section. Where the surviving or resulting entity is a corporation, the personal liability, if any, of any stockholder of a joint-stock association existing at the time of such merger or consolidation shall not thereby be extinguished, shall remain personal to such stockholder and shall not become the liability of any subsequent transferee of any share of stock in such surviving or resulting corporation or of any other stockholder of such surviving or resulting corporation.

9

Section 9.  Amend § 257(d), Title 8 of the Delaware Code by making deletions as shown by strike through as follows:

(d) Section 251(e) of this title shall apply to a merger under this section, if the surviving corporation is a corporation of this State; § 251(d) of this title and the second sentence of § 251(e) of this title shall apply to any constituent stock corporation participating in a merger or consolidation under this section; and § 251(f) of this title shall apply to any constituent stock corporation participating in a merger under this section.

Section 10.  Amend § 262(b), Title 8 of the Delaware Code by making insertions as shown by underlining as follows:

(b) Appraisal rights shall be available for the shares of any class or series of stock of a constituent corporation in a merger or consolidation to be effected pursuant to § 251 (other than a merger effected pursuant to § 251(g) of this title and, subject to paragraph (3) of this subsection, § 251(h) of this title), § 252, § 254, § 255, § 256, § 257, § 258, § 263 or § 264 of this title:

(1) Provided, however, that no appraisal rights under this section shall be available for the shares of any class or series of stock, which stock, or depository receipts in respect thereof, at the record date fixed to determine the stockholders entitled to receive notice of the meeting of stockholders to act upon the agreement of merger or consolidation, were either (i) listed on a national securities exchange or (ii) held of record by more than 2,000 holders; and further provided that no appraisal rights shall be available for any shares of stock of the constituent corporation surviving a merger if the merger did not require for its approval the vote of the stockholders of the surviving corporation as provided in § 251(f) of this title.

(2) Notwithstanding paragraph (b)(1) of this section, appraisal rights under this section shall be available for the shares of any class or series of stock of a constituent corporation if the holders thereof are required by the terms of an agreement of merger or consolidation pursuant to §§ 251, 252, 254, 255, 256, 257, 258, 263 and 264 of this title to accept for such stock anything except:

a. Shares of stock of the corporation surviving or resulting from such merger or consolidation, or depository receipts in respect thereof;

b. Shares of stock of any other corporation, or depository receipts in respect thereof, which shares of stock (or depository receipts in respect thereof) or depository receipts at the effective date of the merger or consolidation will be either listed on a national securities exchange or held of record by more than 2,000 holders;

c. Cash in lieu of fractional shares or fractional depository receipts described in the foregoing paragraphs (b)(2)a. and b. of this section; or

10

d. Any combination of the shares of stock, depository receipts and cash in lieu of fractional shares or fractional depository receipts described in the foregoing paragraphs (b)(2)a., b. and c. of this section.

(3) In the event all of the stock of a subsidiary Delaware corporation party to a merger effected under § 251(h), § 253 or § 267 of this title is not owned by the parent immediately prior to the merger, appraisal rights shall be available for the shares of the subsidiary Delaware corporation.

Section 11.   Amend § 262(d), Title 8 of the Delaware Code by making insertions as shown by underlining as follows:

(d) Appraisal rights shall be perfected as follows:

(2) If the merger or consolidation was approved pursuant to § 228, § 251(h) § 253, or § 267 of this title, then either a constituent corporation before the effective date of the merger or consolidation or the surviving or resulting corporation within 10 days thereafter shall notify each of the holders of any class or series of stock of such constituent corporation who are entitled to appraisal rights of the approval of the merger or consolidation and that appraisal rights are available for any or all shares of such class or series of stock of such constituent corporation, and shall include in such notice a copy of this section and, if 1 of the constituent corporations is a nonstock corporation, a copy of § 114 of this title. Such notice may, and, if given on or after the effective date of the merger or consolidation, shall, also notify such stockholders of the effective date of the merger or consolidation. Any stockholder entitled to appraisal rights may, within 20 days after the date of mailing of such notice or, in the case of a merger approved pursuant to Section 251(h) of this title, within the later of the consummation of the tender or exchange offer contemplated by Section 251(h) of this title and 20 days after the date of mailing of such notice, demand in writing from the surviving or resulting corporation the appraisal of such holder's shares. Such demand will be sufficient if it reasonably informs the corporation of the identity of the stockholder and that the stockholder intends thereby to demand the appraisal of such holder's shares. If such notice did not notify stockholders of the effective date of the merger or consolidation, either (i) each such constituent corporation shall send a second notice before the effective date of the merger or consolidation notifying each of the holders of any class or series of stock of such constituent corporation that are entitled to appraisal rights of the effective date of the merger or consolidation or (ii) the surviving or resulting corporation shall send such a second notice to all such holders on or within 10 days after such effective date; provided, however, that if such second notice is sent more than 20 days following the sending of the first notice or, in the case of a merger approved pursuant to Section 251(h) of this title, later than the later of the consummation of the tender or exchange offer contemplated by Section 251(h) of this title and 20 days following the sending of the first notice, such second notice need only be sent to each stockholder who is entitled to appraisal rights and who has demanded appraisal of such holder's shares in accordance with this subsection. An affidavit of the secretary or assistant secretary or of the transfer

11

agent of the corporation that is required to give either notice that such notice has been given shall, in the absence of fraud, be prima facie evidence of the facts stated therein. For purposes of determining the stockholders entitled to receive either notice, each constituent corporation may fix, in advance, a record date that shall be not more than 10 days prior to the date the notice is given, provided, that if the notice is given on or after the effective date of the merger or consolidation, the record date shall be such effective date. If no record date is fixed and the notice is given prior to the effective date, the record date shall be the close of business on the day next preceding the day on which the notice is given.

Section 12.   Amend § 263(e), Title 8 of the Delaware Code by making deletions as shown by strike through as follows:

(e) Sections 251~~(e) (second sentence) and~~ (d)-(f), 255(c) (second sentence) and (d)-(f), 259-261 and 328 of this title shall, insofar as they are applicable, apply to mergers or consolidations between corporations and partnerships.

Section 13.   Amend § 264(e), Title 8 of the Delaware Code by making deletions as shown by strike through as follows:

(e) Sections 251~~(e) (second sentence) and~~ (d)-(f), 255(c) (second sentence) and (d)-(f), 259-261 and 328 of this title shall, insofar as they are applicable, apply to mergers or consolidations between corporations and limited liability companies.

Section 14.   Amend § 312(b), Title 8 of the Delaware Code by making insertions as shown by underlining as follows:

§312 (b) Any corporation may, at any time before the expiration of the time limited for its existence and any corporation whose certificate of incorporation has become forfeited or void pursuant to this title and any corporation whose certificate of incorporation has expired by reason of failure to renew it or whose certificate of incorporation has been renewed, but, through failure to comply strictly with the provisions of this chapter, the validity of whose renewal has been brought into question, may at any time procure an extension, restoration, renewal or revival of its certificate of incorporation, together with all the rights, franchises, privileges and immunities and subject to all of its duties, debts and liabilities which had been secured or imposed by its original certificate of incorporation and all amendments thereto, <u>by complying with the requirements of this Section.</u>

Section 15.  Amend §382(a), Title 8 of the Delaware Code by making insertions as shown by underlining and deletions as shown by strike through as follows:

(a)     Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State.  If any foreign corporation consents in writing to be subject to the jurisdiction of any state or federal court in this State for any civil action, suit or proceeding against it arising or growing out of any business or matter, and if the agreement or instrument setting forth such consent does not otherwise provide a manner of service of legal process in any such civil action, suit or proceeding against it, such foreign corporation shall be deemed to have thereby appointed and constituted the Secretary of State of this State its agent for the acceptance of legal process in any such civil action, suit or proceeding against it.  The transaction of business in this State by such corporation and/or such consent by such corporation to the jurisdiction of any state or federal court in this State without provision for a manner of service of legal process shall be a signification of the agreement of such corporation that any such process served upon the Secretary of State when so served shall be of the same legal force and validity as if served upon an authorized officer or agent personally within this State.  Process may be served upon the Secretary of State under this subsection by means of electronic transmission but only as prescribed by the Secretary of State.  The Secretary of State is authorized to issue such rules and regulations with respect to such service as the Secretary of State deems necessary or appropriate.


Section 16.   Amend § 391(a), Title 8 of the Delaware Code by adding a new subparagraph (28) as follows:

(28)   For receiving and filing and/or indexing by the Secretary of State of a certificate of validation prescribed in § 204 of this title, a fee of $2,500 shall be paid; provided, that if the certificate of validation has the effect of increasing the authorized capital stock of a corporation, an additional fee, calculated in accordance with paragraph (a)(2) of this section, shall also be paid.


Section 17.  Amend § 391(b)(1), Title 8 of the Delaware Code by making insertions as shown by underlining and deletions as shown by strike through as follows:

(1) For the purpose of computing the fee prescribed in paragraphs (a)(1), (2), and (4) and (28) of this section the authorized capital stock of a corporation shall be considered to be the total number of shares which the corporation is authorized to issue, whether or not the total number of shares that may be outstanding at any 1 time be limited to a less number.

13

Section 18.   Amend § 391(b)(2), Title 8 of the Delaware Code by making insertions as shown by underlining and deletions as shown by strike through as follows:

(2) For the purpose of computing the fee prescribed in paragraphs (a)(2), ~~and~~ (3) and (28) of this section, a certificate of amendment of certificate of incorporation, or an amended certificate of incorporation before payment of capital, or a restated certificate of incorporation, or a certificate of validation, shall be considered as increasing the authorized capital stock of a corporation provided it involves an increase in the number of shares, or an increase in the par value of shares, or a change of shares with par value into shares without par value, or a change of shares without par value into shares with par value, or any combination of 2 or more of the above changes, and provided further that the fee computed at the rates set forth in paragraph (a)(1) of this section upon the total authorized capital stock of the corporation including the proposed change or changes exceeds the fee so computed upon the total authorized stock of the corporation excluding such change or changes.

Section 19.   Amend § 502(a), Title 8 of the Delaware Code by making insertions as shown by underlining as follows:

§ 502. Annual franchise tax report; contents; failure to file and pay tax; duties of Secretary of State.

(a) Annually on or before March 1, every corporation now existing or hereafter incorporated under Chapter 1 of this title or which has accepted the Constitution of this State, shall make an annual franchise tax report to the Secretary of State. The report shall be made on a form designated by the Secretary of State and shall be signed by the corporation's president, secretary, treasurer or other proper officer duly authorized so to act, or by any of its directors, or if filing an initial report by any incorporator in the event its board of directors shall not have been elected. The fact that an individual's name is signed on the report shall be prima facie evidence that such individual is authorized to certify the report on behalf of the corporation; however, the official title or position of the individual signing the corporate report shall be designated. The report shall contain the following information:

(1) The location of its registered office in this State, stated with the degree of particularity required by § 102(a)(2) of this title;

(2) The name of the agent upon whom service of process against the corporation may be served;

(3) The location (city, town, street and number of same, if number there be) of the principal place of business of the corporation;

(4) The names and addresses of all the directors as of the filing date of the report and the name and address of the officer who signs the report; provided, that other than an initial report, all reports shall list a director or directors excepting any report filed in conjunction with a certificate of dissolution filed by an incorporator pursuant to § 274 of this title or a certificate of dissolution filed pursuant to § 275(c) of this title;

(5) The number of shares and the par value per share of each class of capital stock having a par value and the number of shares of each class of stock without par value which the corporation is authorized to issue;

(6) If exempt from taxation for any cause, the specific facts entitling the corporation to exemption from taxation; and

14

APP. 22

(7) Such additional information, schedules and attachments as the Secretary shall require to ascertain the franchise tax due to the State.

Section 20.   Amend § 503(e), Title 8 of the Delaware Code by making insertions as shown by underlining as follows:

(e) In case a corporation shall have changed during the taxable year the amount of its authorized capital stock, the total annual franchise tax payable at the foregoing rates shall be arrived at by adding together the franchise taxes calculated as above set forth as prorated for the several periods of the year during which each distinct authorized amount of capital stock was in effect. The filing of a certificate of validation pursuant to § 204 of this title shall not reduce the annual franchise tax due for any period prior to the filing of such certificate of validation and any calculation of additional annual franchise tax due for any period prior to the filing of such certificate of validation shall be calculated at the current rates in effect pursuant to this section.

Section 21.   Amend § 13, chapter 273, Volume 78 of the Delaware Laws by making insertions as shown by underlining and deletions as shown by strike through as follows:

Section 13. Sections 1 through 7 and 9 through 12 shall be effective August 1, 2012.
Section 8 shall be effective ~~August 1, 2013~~ April 1, 2014.

Section 22.   Sections 4, 5, 16, 17, 18 and 20 of this Act shall become effective April 1, 2014, and the other sections of this Act shall become effective August 1, 2013.

## SYNOPSIS

Sections 1 and 2 amend § 114 to reflect the amendments to § 312(b) and § 502(a) in Sections 14 and 19.

Section 3 amends § 152 of the DGCL.  The added language in § 152 clarifies that a board may determine the price or prices for which stock will be issued by approving a formula by which such price or prices will be determined.

Section 4 amends the DGCL to add a new § 204, which provides a safe harbor procedure for ratifying corporate acts or transactions and stock that, due to a "failure of authorization", would be void or voidable.  The safe harbor procedure is available only if there is a valid board of directors to adopt the ratifying resolution.  If there is no valid board of directors, relief would need to be sought under § 205 or, if available, § 225.  If such ratification would require stockholder approval and the board of directors determines that some or all of the outstanding shares are putative shares, and thus not entitled to vote on the ratification pursuant to § 204, the board of directors or the holders of putative stock could seek a determination of the validity of such putative shares and the rights, if any, of the holders thereof in a proceeding under § 205 or, if available, §§ 225 and 227.

15

§ 204(a) provides that "defective corporate acts" and "putative stock" shall not be void or voidable solely due to a "failure of authorization", if ratified as provided in § 204 or if validated by the Court of Chancery in a proceeding pursuant to new § 205. § 204 is intended to overturn the holdings in case law, such as *STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130 (Del. 1991) and *Blades v. Wisehart*, 2010 WL 4638603 (Del. Ch. Nov. 17, 2010), that corporate acts or transactions and stock found to be "void" due to a failure to comply with the applicable provisions of the General Corporation Law or the corporation's organizational documents may not be ratified or otherwise validated on equitable grounds. The term "defective corporate act" is intended to include all corporate acts and transactions, including elections or appointments of directors,  purportedly taken that were within the power granted to a corporation under this title but are subsequently determined not to have been effected in accordance with the applicable provisions of the General Corporation Law, the corporation's certificate of incorporation or bylaws, or any plan or other agreement to which the corporation is a party, where the failure to comply with such provisions, documents or instruments would render such act void or voidable. The term "defective corporate act" includes an "overissue" of stock and other defects in stock issuances that could cause stock to be treated as void or voidable. § 204 thus provides a means of cure, as contemplated by Section 8-210 of the Delaware Uniform Commercial Code, for stock issued in excess of the number of shares the corporation is authorized to issue. § 204 also provides a means to give effect to the provisions of Section 8-202(b) of the Delaware Uniform Commercial Code, which provides, *inter alia*, that stock in the hands of a purchaser for value without notice of the defect is generally valid in the hands of such purchaser even if issued with a defect going to its validity, to address the suggestion of the Court of Chancery in *Noe v. Kropf*, C.A. No. 4050-CC (Del. Ch. Jan. 15, 2009) (Transcript), that the provisions of the Delaware Uniform Commercial Code cannot validate stock that under the General Corporation Law is void. For purposes of § 204 and also new § 205, overissued shares are those issued in excess of the number permitted by § 161 at the time the shares in question are issued, and "putative stock" is shares of stock that but for a failure of authorization would have been validly issued and any other shares that the board of directors cannot determine to be valid stock.  For purposes of determining which shares are overissued or putative shares, in the case of an overissue, it is intended that only those shares issued in excess of the number of shares permitted to be issued under § 161 would be deemed overissued shares, unless it cannot be determined from the records of the corporation which of such shares were issued prior to others, in which case all shares included in the issuance resulting in an overissue would be deemed to be overissued shares. Similarly, where a single issuance includes both valid stock and putative stock, or where trading in valid stock and putative stock precludes tracing of specific shares as valid stock or putative stock, and it therefore cannot be determined from the records of the corporation which of the shares so issued are valid stock and which are putative stock, all the shares issued in such issuance would be deemed to be putative stock. Ratification of a defective corporate act under § 204 is designed to remedy the technical validity of the act or transaction; it is not intended to modify the fiduciary duties applicable to either the approval or effectuation of a defective corporate act or transaction or any ratification of such act or transaction. Defective corporate acts, even if ratified under this section, are subject to traditional fiduciary and equitable review.

Subsections (b)-(d) set forth the procedures for ratification of defective corporate acts by the board of directors and, if required, the stockholders. In general, ratification requires approval of a resolution to ratify the defective corporate act by the board of directors. The resolution must contain the information set forth in subsection (b). Stockholders must ratify the defective

16

corporate act if a stockholder vote would have been required to authorize the defective corporate act at either the time of the defective corporate act or at the time of ratification. In addition, any defective corporate act resulting from a failure to comply with § 203 must be submitted to stockholders for ratification, regardless of whether a stockholder vote would have been required at the time of the defective corporate act. The quorum and voting requirements applicable to the adoption of such resolution by the board of directors are the quorum and voting requirements applicable at the time of such adoption for the type of defective corporate act proposed to be ratified, unless the certificate of incorporation or bylaws of the corporation, any plan or agreement to which the corporation was a party or any provision of this title in effect as of the time of the defective corporate act to be ratified would have required a larger number or portion of directors or of specified directors for a quorum to be present or to approve the defective corporate act, in which case the presence or approval of such larger number or portion of such directors or of such specified directors is required, unless such director was elected, appointed or nominated by holders of any class or series of stock that is no longer outstanding or by any person that is no longer a stockholder.

In the event stockholder approval is required, notice must be given to all current holders of the corporation's valid stock and putative stock, whether voting or nonvoting, and also to the holders of valid stock and putative stock, whether voting or nonvoting, as of the time of the defective corporate act, unless such holders cannot be determined from the corporation's records. The notice must contain a copy of the ratifying resolution and a statement that any claim that the defective corporate act or putative stock to be ratified is void or voidable due to the identified failure of authorization, or that the Court of Chancery should declare in its discretion that a ratification in accordance with § 204 not be effective or be effective only on certain conditions, must be brought within 120 days from the validation effective time. Except in the case of the ratification of an election of directors, and except in the case of a defective corporate act resulting from a failure to comply with § 203, the quorum and voting requirements applicable to the adoption of such resolution by the stockholders are the quorum and voting requirements applicable at the time of such adoption for the type of defective corporate act to be ratified, unless the certificate of incorporation or bylaws of the corporation, any plan or agreement to which the corporation was a party or any provision of this title in effect as of the time of the defective corporate act would have required a larger number or portion of stockholders or of a class or series of stock or of specified stockholders for a quorum to be present or to approve the defective corporate act to be ratified, in which case the presence or approval of such larger number or portion of stockholders or of such class or series or of the specified stockholders is required, unless such class or series of stock is no longer outstanding or a specified stockholder is no longer a stockholder. Ratification of the election of a director requires the affirmative vote of the majority of shares present at the meeting and entitled to vote on the election of the director, except that if the certificate of incorporation or bylaws of the corporation then in effect or in effect at the time of the defective election require or required a larger number or portion of stock to elect the director, the affirmative vote of such larger number or portion of stock is required. Ratification of a failure to comply with § 203 requires the vote required under § 203(a)(3).

Subsection (e) provides that if the act being ratified pursuant to § 204 would have required a filing with the Delaware Secretary of State, the corporation is required to file a certificate of validation that sets forth a copy of the ratifying resolution, the date of its adoption

APP. 25

by the board of directors and, if applicable, the stockholders, the information that would have been specified in the filing that would otherwise be required, and if a certificate was previously filed with respect to the defective corporate act being ratified, the title and the date of the filing of such previously filed certificate and any certificate of correction thereto.

Subsection (f) provides that unless otherwise determined by the Court of Chancery in an action pursuant to new § 205, each defective corporate act ratified pursuant to § 204 shall no longer be deemed void or voidable as a result of a failure of authorization identified in the ratification resolution and that such effect shall be retroactive to the time of the defective corporate act, and each share or fraction of a share of putative stock issued or purportedly issued pursuant to such defective corporate act and identified in the ratification resolution shall no longer be deemed void or voidable as a result of a failure of authorization identified in such resolution and, unless void or voidable due to some other failure of authorization not identified in the ratification resolution, shall be deemed to be an identical share or fraction of a share of outstanding stock as of the time it was purportedly issued.

Unless notice has previously been given to stockholders pursuant to subsection (d), subsection (g) requires the corporation to provide notice of the adoption of the ratifying resolution by the board of directors to all current holders of the corporation's valid stock and putative stock, whether voting or nonvoting, and also to all holders of the corporation's valid stock and putative stock, whether voting or nonvoting, as of the time of the defective corporate act to be ratified, unless such holders cannot be determined from the corporation's records. The notice must contain a copy of the ratifying resolution and a statement that no judicial proceeding challenging the validity of any defective corporate act ratified pursuant to such resolution, the validity of the ratification of such defective corporate act or the validity of any stock issued pursuant to such defective corporate act may be brought after the expiration of 120 days from the validation effective time. Subsection (g) also provides, for the avoidance of doubt, that notices given to holders of putative stock or to holders of valid stock as of the time of a defective corporate act, if given in accordance with the provisions of the General Corporation Law applicable to notice to stockholders, will be entitled to the same presumptions and have the same effects as if such holders were holders of valid stock.

Subsection (i) provides that the procedures in §§ 204 and 205 are not intended to preempt or restrict other valid means of ratifying any corporate act or transaction, including any defective corporate act, that would otherwise be voidable but not void. Thus, for example, the general doctrine of ratification, as recognized by the Court of Chancery in *Klig v. Deloitte LLP*, 36 A.3d 785 (Del. Ch. 2011), and *Kalegeorgi v. Victor Kamkin, Inc.*, 750 A.2d 531(Del. Ch. 1999), *aff'd* 748 A.2d 913 (Del. 2000) (unpublished table decision), and applied to a board's adoption of acts taken by officers who may not have had the actual authority to take such acts, would continue to be an effective mode of ratification and there is no obligation to follow the procedures set forth in § 204 to ratify such matters. Likewise, the doctrine of "shareholder ratification" described in *Gantler v. Stephens*, 965 A.2d 695 (Del. 2009), *i.e.*, a fully informed vote of stockholders to approve director action that does not legally require stockholder approval to become effective, would continue to be an effective mode of ratification and there is no obligation to follow the procedures set forth in § 204 to ratify such matters. Accordingly, the corporation's decision to ratify an act or transaction or any stock that is voidable but not void using common law methods of ratification rather than under § 204 will not, standing alone, affect the validity of the act or

18

transaction or of such stock or imply that the act or transaction is not valid or that such stock is void or voidable.

Section 5 amends the DGCL to add a new § 205 which confers jurisdiction on the Court of Chancery to hear and determine the validity of any ratification effected pursuant to § 204, the validity of any corporate act or transaction and any stock or rights or options to acquire stock, and to modify or waive any of the procedures set forth in § 204. § 205 also confers jurisdiction on the Court of Chancery to hear and determine the validity of any defective corporate act that has not been ratified or ratified effectively pursuant to § 204, regardless of whether such defective corporate act would have been capable of ratification pursuant to § 204. If a defective corporate act or putative stock is ratified in accordance with § 204, then no person to whom notice of the ratification was given may assert any claim that the defective corporate act or putative stock is void or voidable due to the failure of authorization identified in the ratifying resolution, or that the Court of Chancery should determine that the ratification should not be effective or should be effective only on certain conditions, unless that claim is brought within 120 days from the validation effective time of the defective corporate act or putative stock in question. After such time a defective corporate act ratified pursuant to § 204 may not be invalidated or subject to the imposition of conditions in an action under § 205, a ratification pursuant to § 204 may not be invalidated or subject to the imposition of conditions in an action under § 205, and any putative stock validated under § 204 may not be invalidated or subject to the imposition of conditions in an action under § 205. The factors enumerated in subsection (d) are not mandatory and need not be considered in every instance.

Section 6 amends § 251(h) to permit a merger agreement to include a provision eliminating the requirement of a stockholder vote to approve certain mergers if a statutorily defined minimum number of shares is tendered in a tender or exchange offer consummated by an arms'-length third-party acquiror. The subsection does not change the fiduciary duties of directors in connection with such mergers or the level of judicial scrutiny that will apply to the decision to enter into such a merger agreement, each of which will be determined based on the common law of fiduciary duty, including the duty of loyalty.

Sections 7, 8, 9, 12 and 13 amend § 252(e), § 254(e), § 257(d), § 263(e) and § 264(e), respectively to delete the reference to the second sentence of § 251(c) in order to reflect the 2003 amendments to the DGCL which (i) deleted the second sentence of § 251(c), and (ii) added § 146 to the DGCL. Section 7 also includes an amendment to reflect new § 251(h).

Sections 10 and 11 amend § 262 to reflect new § 251(h).

Sections 14 and 19 amend § 312(b) and § 502(a) to deter the practice of forming "shelf" corporations with no stockholders or directors with the intent of renewing or "aging" the entity for use several years in the future. The amendments confirm the limited powers of the incorporator by clarifying that only a corporation's directors or stockholders may authorize a renewal or revival, prohibiting an incorporator from signing an annual report after the initial report, and prohibiting annual reports from listing "no directors" except in the case of an initial report or certain reports filed in conjunction with a dissolution.

Section 15 amends §382(a) to provide a means of service of process on a foreign corporation that consents in writing to be subject to the jurisdiction of any state or federal court in this State for purposes of a civil action, but does not specify a manner of service of legal process in the writing expressing such consent.

Sections 16 through 18 amend § 391 of the DGCL. The addition of subsection (a)(28) to § 391 and amendments to subsections § 391(b)(1) and (2) provide the applicable fees in connection with filings under new § 204.

Section 20 amends § 503(e) of the DGCL. The addition of the second sentence of § 503(e) clarifies that the filing of a certificate of validation pursuant to new § 204 will not reduce the amount of franchise taxes due for any period prior to the filing of such certificate of validation or serve as the basis for a refund of franchise taxes paid or due for prior calendar years.

Section 21 extends the effective date of certain changes to 8 *Del. C.* § 377 from August 1, 2013 to April 1, 2014.

Section 22 provides that the effective date of Sections 4, 5, 16, 17, 18 and 20 of this Act shall become effective April 1, 2014, and the other sections shall become effective August 1, 2013.

**APP. 28**